IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MIDTOWN SCOUTS SQUARE** | § | **CASE NO.  13-32920** |
| **PROPERTY, LP** | § | |
| | § | |
| **MIDTOWN SCOUTS SQUARE, LLC** | § | **CASE NO. 13-32924** |
| | § | |
| | § | **(Chapter 11)** |
| **DEBTORS.** | § | **Joint  Administration Requested** |
| | § | **Judge Brown** |

**EMERGENCY MOTION (I) FOR INTERIM AUTHORITY TO
USE CASH COLLATERAL (II) TO INCUR POST PETITION
INDEBTEDNESS UNDER 11 U.S.C. §363, §364, §502(b) AND §105 AND
(III) REQUEST FOR PRELIMINARY AND FINAL HEARINGS**

**\*\*AN EMERGENCY HEARING ON THIS MATTER WILL BE
CONDUCTED ON_____, _____, 2013 AT \_\_\_\_\_A.M.
IN COURTROOM \_\_\_, \_\_\_\_ FLOOR, 515 RUSK, HOUSTON TX, 77002.\*\***

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF
YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE
MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY
CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE
MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14
DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST
STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A
TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER
NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN
AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES
AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Midtown Scouts Square Property, LP ("MSSP" or "Debtor MSSP") and Midtown Scouts

Square, LLC ("Debtor MSS") (collectively "Debtors"), file this *Emergency Motion (I) for Order*

*Granting Interim Authority to Use Cash Collateral (II) to Incur Post Petition Indebtedness*

*Under 11 U.S.C. §363, §364, §503(b)and §105 and (III) for Preliminary and Final Hearings* (the "Motion") and in support thereof, respectfully states as follows:

### Summary and Emergency Basis

1.     These Chapter 11 cases were each filed on May 9, 2013.  By this Motion, Debtors seek authority to use Cash Collateral in order to fund operations while they formulate a Chapter 11 plan.  MSSP owns two commercial properties located in Midtown Houston, Texas.  The first property is a mixed use office/restaurant building totaling approximately 36,472 sq. feet located at 1911 Babgy Street, Houston, Texas (the "Office Building").  The second building is approximately 104,188 sq. foot eight story parking garage with ground floor retail space located at 1910 Bagby Street, Houston, Texas (the "Parking Garage").

2.     Upon approval of this Motion, Bank of Houston, which holds liens on the Debtors' assets, will be given replacement liens on MSSP's post-petition rents from the Parking Garage and Office Building for use of its cash collateral.  Mercantile Capital Corporation, which holds a second lien on MSSP's assets, will be given replacement liens on MSSP's rents from the Office Building.

3.     However, the rental income received in connection with the two properties is currently insufficient to fund ongoing operations.  Accordingly, the Debtors will require an infusion of funds to pay ongoing expenses in the near term.  Midtown Scouts Square Property's limited partner will provide an unsecured DIP Financing Agreement up to $1,000,000 to cover the projected shortfall.  The DIP Financing Agreement shall be allowed as an administrative expense pursuant to 11 U.S.C. §503(b)(1).

4.     Debtors have moved this Court on an emergency basis for (i) authorization to use cash collateral; (ii) approval of the DIP Financing Agreement; and (iii) a preliminary hearing

regarding these matters in order to satisfy the ordinary and necessary expenses of operation. An emergency preliminary hearing is necessary since some of these expenses need to be paid before expiration of the fourteen (14) day notice period provided for in Bankruptcy Rule 4001 and for use of cash collateral. Debtors also request the Court set a final hearing so that final cash collateral and DIP financing orders can be approved.

## I. Jurisdiction and Venue

5. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § § 157, 1334.

6. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

7. Venue of the Debtors' Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1409.

## II. Background Information

### A. Overview of the Debtors

8. These cases were filed on May 9, 2013 (the "Petition Date") under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §101 et sq. (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their property as a debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

9. No trustee or examiner has been appointed in these bankruptcy cases and no official committee of unsecured creditors has yet been established.

10. Debtor MSSP is a limited partnership that owns the mixed use Office Building located 1911 Bagby Street, Houston, Texas 770002 and the eight story Parking Garage located at 1910 Bagby Street. Debtor MSS is the general partner of MSSP. The properties are located at the east corner of Bagby and Pierce Avenue in Houston. This location is an area of the city known as Midtown. Midtown is Houston's pedestrian oriented urban

community uniquely positioned on the near/southwest side of the Houston central business district.

11.    The Office Building was originally constructed in 1975 and consisted of a two story 25,549 square foot building.  In 2011, the Debtor purchased and began renovations of the building to include a third floor containing an additional 10,923 square feet of additional office space.  The ground floor has been renovated as a restaurant space and the second floor is banquet and event center space.  Mr. Peeples Seafood + Steaks currently occupies the ground floor and the second floor space and is expected to open for business this month.  The third floor of the Office Building is currently unoccupied and is in the final stages of the construction process. The Office Building also has a basement that contains approximately 7,606 of usable space.  The basement is currently unfinished.

12.    In 2011, the Debtor purchased .0359 acres of unimproved raw land at 1910 Bagby for the purposes of constructing the eight story parking structure with retail on the first floor. The construction of the Parking Garage is complete and the retail space is occupied by Blackfinn American Grille, an upscale restaurant that offers several distinct grill/lounge environments.  The Parking Garage has approximately 238 total spaces.  There is very little parking in the immediate area to serve the local restaurants and businesses and the garage is favorably located.  The Parking Garage generates approximately $22,000 a month in rent and parking charges. Market rate in the area for parking is approximately $6.00 per day per spot.

### B.  Financing History

<u>Bank of Houston</u>

13.    On or about January 31, 2011, MSSP entered into a promissory note (the "First BH Note") with Bank of Houston which provided, among other things, that Bank of Houston loan MSSP $4,188,000.00 (the "First Loan") for the renovation of the Office Building to a mixed-use office/restaurant building, including adding a third floor to the Office Building.

14.    The First BH Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), which  covers the Office Building.  The First BH Note is further evidenced by a Loan Agreement dated January 4, 2011 between the Debtor, certain affiliated guarantors, and Bank of Houston, which, among other things, provided for the terms relating to the disbursements of the First Loan proceeds.  The First Loan proceeds were fully funded by Bank of Houston.

15.    On or about January 31, 2012, MSSP and Bank of Houston entered into a Modification, Renewal and Extension Agreement related to the First BH Note, which among other things, modified and renewed the First BH Note, carried forward all liens, and provided that MSSP would commence interest and principal payment on August 31, 2012 in equally monthly installments until July 31, 2037, when the remaining principal and unpaid interest is due and owing (the "Modified First BH Note").  MSSP is current on its payments under the Modified First BH Note.  Certain guarantors have been advancing the monthly payments to the Bank of Houston.

16.    On or about January 31, 2011, MSSP entered into a promissory note  with Bank of Houston (the "Second BH Note")which provided, among other things, that Bank of

Houston loan MSSP $4,252,500 (the "Second Loan") for the for the acquisition, construction, development and operation of the Parking Garage.

17.     The Second BH Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), which covers the Parking Garage. The Second BH Note is further evidenced by a Loan Agreement dated January 4, 2011 between the Debtor, certain affiliated guarantors, and Bank of Houston, which, among other things, provided for the terms relating to the disbursements of the Second Loan proceeds. The Second Loan proceeds were fully funded by Bank of Houston and the construction of the Parking Garage is complete.

18.     On or about January 31, 2012, MSSP and Bank of Houston entered into a Modification, Renewal and Extension Agreement related to the Second BH Note, which among other things, modified and renewed the Second BH Note, carried forward all liens, and provided that MSSP would commence interest and principal payment on July 4, 2012 in equal monthly installments of $30,332.56 until June 4, 2015, when the remaining principal and unpaid interest is due and owing (the "Modified Second BH Note"). MSSP is current on its payments under the Modified Second BH Note. Certain guarantors have been advancing the monthly Second BH Note payments to the Bank of Houston.

Mercantile Capital Corporation

19.     On or about January 31, 2011, MSSP entered into a promissory note ("Interim Note") with Mercantile Capital Corporation (the "Interim Lender") which provides, among other things, that the Interim Lender loan MSSP $3,350,400.000 (the "Interim Loan") for the renovation of the Office Building (as described above).

20.     The Interim Note is secured by a second Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Second Deed of Trust"), which covers the Office Building. The Interim Note is further evidenced by a Construction Coordination Agreement dated January 31, 2011 between the Debtor, the Bank of Houston and the Interim Lender, which, among other things, provides that the Interim Lender will advance funds pursuant to a construction draw agreement only after Bank of Houston has fully funded the First Loan.

21.     In furtherance of the Interim Loan, the Debtor entered into an agreement regarding conversion of the Interim Loan from a construction loan to a permanent loan that would result in twenty year debenture guaranteed by the SBA at 4% interest. The Interim Loan matured in January 2012. However, MSSP (through loans from its affiliates) has continued making interest only payments to the Interim Lender. The final construction draw on the Interim Note was made within the previous 30 days. The Debtor and Mercantile entered into an extension agreement extending the terms Interim Loan up through September 15, 2013. However, certain ongoing litigation is preventing the Debtor from converting the Interim Loan to the permanent SBA debenture.

### C. Reasons for Filing Bankruptcy

22.     These bankruptcy cases were filed for two primary reasons. First, the Interim Loan has matured and the Debtor has been unable to convert it into permanent financing. The construction process was delayed when the City of Houston separately began to perform substantial infrastructure work on Bagby Street, which substantially limited the Debtors' access to the properties. As a result, the Debtors' general contractor was unable to maintain the construction schedule. Nevertheless, the construction of the Parking Garage is complete and the

first floor retail space is occupied and generating monthly rental income.  Mr. Peeples Seafood + Steaks is now occupying the first and second floors of the Office Building and will be an additional source of rental income (beginning June 1, 2013).  Second, a dispute between a prospective limited partner resulted in the commencement of a lawsuit. The Debtor has been unable to resolve the litigation.  Further, the lawsuit has prevented the Debtor from converting the Interim Loan into the permanent SBA debenture.

23.     MSSP's current cash situation is desperate.  Without an immediate infusion of cash, MSSP will be unable to meet current expenses or fund the loan payments to its secured lenders.

24.     The Debtors intend to utilize these Chapter 11 proceedings to restructure the Interim Loan into permanent financing or refinance the Interim Loan, and resolve the pending litigation.

### IV. BASIS FOR REQUESTED RELIEF

A.      **Cash Collateral and Authority to Use**

25.     As stated above, prior to the Petition Date, the Debtors entered into the loan documents with Bank of Houston and the Interim Lender, whereby the MSSP granted the Bank of Houston an alleged first lien and security interest in substantially all of its assets, including rents (collectively "Collateral").  The Interim Lender has a second lien on the Office Building.

26.     The current principal balance on the First and Second Note is approximately $4.1 million and $4.2 million, respectively. While the terms of an agreed order have not been finalized, the Debtors expects that it will include, among others, the following:

A.      MSSP may use cash collateral pursuant to an approved budget attached as Exhibit "A," with a 10% variance per line item and the ability to apply any un-used budgeted funds at its discretion.

B.      Bank of Houston and Mercantile's prepetition liens will be adequately protected by replacement liens to the same extent and priority as their respective prepetition liens.

C.      Approval of the DIP Financing Agreement described below.

27.      The only viable source of funding for post-petition operations is cash collateral made available to the Debtors and DIP financing described herein.

28.      The importance in cases like these of access to cash was recognized in *In re George Ruggieri Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). The court in that case noted: "A debtor, attempting to reorganize in business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *Id.* at 1019. 31. The Debtors are hopeful that the secured creditors will consent to the proposed use of cash collateral, subject to receiving replacement liens and perhaps other protections as provided in an agreed order. To the extent it does not consent, however, the Court may authorize the use of cash collateral by the Debtors provided that the Court determines that any objecting entity's interest is adequately protected. 11 U.S.C. § 363(c)(2)(B) and (e).

29.      Section 361 sets forth three non-exclusive examples of what may constitute adequate protection.  They include "providing the secured creditor with "additional or replacement liens" and other relief that provides the secured creditor with the "indubitable equivalent" of the secured creditor's interest in the cash collateral.  Legislative history indicates that Congress intended to provide courts with flexibility to grant relief on a case-by-case basis.

30.     Pursuant to the Motion, the Debtors propose to grant the secured creditors replacement liens on post-petition accounts receivable and rents, a recognized method for providing adequate protection as specified under sections 361 and 363.

31.     Without access to cash collateral, operations will cease. The going concern of the Debtors' assets will plummet, receivable collections will dry up and the property manager will quit.  From that standpoint, the overall collateral position of secured creditors will deteriorate markedly, more than offsetting any erosion of the cash collateral.

32.     Bankruptcy Rule 4001(b)(2) states that 14 days' notice must be given before final approval of such cash collateral use is given.  With this Motion, the Debtors are also seeking an emergency hearing upon expiration of the 14 day notice period.

### A.  DIP Financing and Legal Standard

33.     Atul Lucky Chopra, M.D.,  the limited partner of MSSP ("Dr. Chopra") is willing to provide DIP financing to the Debtors, during the pendency of this case.  Subject to court approval, Dr. Chopra has agreed to provide unsecured DIP financing ("DIP Financing Agreement") to the Debtor Midtown Scout Square Property, LP in the amount up to $1,000,000 ("DIP Promissory Note"). The DIP Financing Agreement shall be allowed as an administrative expense pursuant to 11 U.S.C. §503(b).

34.     The DIP Financing Agreement will be used to help fund MSSP's operations for the next six months, including making monthly principal and interest payments on the First and Second Notes, and fund the completion of the construction on the Office Building.   Debtors anticipate confirming a plan of reorganization prior to the maturity of the DIP Promissory Note.

35.     If the DIP Financing Agreement is not approved, Debtor will be unable to continue operations and manage the Property.

36.     The material terms of the DIP Promissory Note are as follows:

*Amount:*          up to $1,000,000.00 USD

*Interest Rate:*   7.00 %

*Maturity Date:*   Note comes due on the earlier (a) December 31, 2013; (b) the effective date of a plan of reorganization or arrangement in the Chapter 11 Case; or (c) conversion of the case to a Chapter 7.

*Collateral/lien:*  None

*Treatment/priority:*  Administrative expense under 11 U.S.C. § 503(b) or 507(b), subject only to administrative fees and expenses of professionals allowed under Section 327 of the Bankruptcy Code.

*Additional Adequate*
*Protection:*      None

*Releases or waivers*:  None

*Indemnifications:*  None

37.     A copy of the DIP Promissory Note is attached as Exhibit "B." Debtors request that this credit facility be allowed under 11 U.S.C. § 503(b) or 507(b) as an administrative expense, subject only to administrative fees and expenses of professionals allowed under Section 327 of the Bankruptcy Code.

38.     The Debtors believes that they have business justification for entering into the DIP Promissory Note in order to ensure that future operations are funded, certain property tax escrows are made, and to the extent necessary, monthly principal and interest payments (at the non-default rate) can be made to Bank of Houston.

39.     Thus, the Debtors ask for this Court to authorize the Debtors to enter into the DIP Promissory Note with Dr. Chopra, in an amount up to $1,000,000 which will be entitled to administrative expense priority under 11 U.S.C. § 503(b) or 507(b).

40.     The Debtors are unable to obtain alternative financing on reasonable terms with such short notice.  Further, the proposed terms of the DIP Financing Agreement are favorable and it is unlikely that better terms could otherwise be negotiated.

41.     Bankruptcy Rule 4001(c)(2) states that 14 days' notice must be given before final approval of such cash collateral use is given.  With this Motion, the Debtor is providing Bank of Houston and Mercantile Capital Corporation with 14 days notice between the time of the filing of this Motion and request that the Court set the matter for an interim hearing immediately, and final hearing upon expiration of the 14 notice period.  The Debtors require court approval to enter into the DIP Financing Agreement and that the Court conduct an immediate hearing on this Motion.  The Debtors will suffer irreparable harm if the Motion is not immediately considered as they do not have the funds to continue operations.  There is little harm to general unsecured creditors under this agreement since the secured lenders already has a first (or second) liens on substantially all of the Debtors' assets.  Thus, if the Debtors cannot fund operations, they will have to cease operating and Bank of Houston and/or Mercantile Capital Corporation will foreclose on the properties, leaving nothing for unsecured creditors.  Accordingly, emergency consideration of this motion is required.

## IV. Conclusion

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court:

1)     Set an emergency preliminary hearing on this Motion;

2)     Enter a preliminary order authorizing the use of cash collateral pursuant to the attached budget for 14 days;

3)     Enter a preliminary order authorizing the Debtors to incur post-petition indebtedness as an administrative claim on an interim basis;

4)     Set a final hearing on this Motion after expiration of fourteen (14) days notice period required by Bankruptcy Rule 4001; and

5)    Granting all such other and further relief as is just and proper.


Respectfully submitted,

HOOVER SLOVACEK LLP

*/s/ T. Josh Judd*

By:_____
        EDWARD L. ROTHBERG
        State Bar No. 17313990
        T. JOSH JUDD
        State Bar No. 24036866
        5847 San Felipe, Suite 2200
        Houston, Texas 77057
        Telephone: 713.977.8686
        Facsimile:  713.977.5395

ATTORNEYS FOR DEBTOR


## Verification

The factual statements in paragraphs 1-4 are true and correct within my own personal knowledge.  In my opinion, a genuine emergency exists that requires consideration of this matter at to avoid hardship to the bankruptcy estate, and so that the Debtors can maintain their property. I certify under penalty of perjury that the foregoing is true and correct.


/s/ T. Josh Judd_____
T. Josh Judd

## **CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing motion were forwarded via facsimile, e-mail, and/or U.S. first class mail, postage prepaid, on May 9, 2013, to the parties listed on the attached Service List.

/s/ T. Josh Judd
T. Josh Judd

# EXHIBIT A


# BUDGET

Midtown Scouts Square Property, LP                                            **EXHIBIT A**
Case No. 13-32920

|  | May 10 -24 | June | July | August | September |
|---|---|---|---|---|---|
| Beginning Cash | - | 240 | (40,179) | (134,598) | (229,017) |
| | | | | | |
| REVENUE | | | | | |
| Rental from Office Building | | | | | |
| Parking garage revenue | 10,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| Rent - other | | 82,174 | 82,174 | 82,174 | 82,174 |
| | | | | | |
| TOTAL REVENUE | 10,000 | 104,174 | 104,174 | 104,174 | 104,174 |
| | | | | | |
| OPERATING EXPENSES | | | | | |
| | | | | | |
| Administrative | | | | | |
| Bank & Credit card fees | 466 | 466 | 466 | 466 | 466 |
| Communications | 730 | 730 | 730 | 730 | 730 |
| Dues & subscriptions | - | - | - | - | - |
| Licenses & permits | - | - | - | - | - |
| Office Supplies | 150 | 50 | 50 | 50 | 50 |
| Postage & delivery | - | - | - | - | - |
| Printing and reproduction | - | - | - | - | - |
| Repairs & maintenance | 750 | 1,500 | 1,500 | 1,500 | 1,500 |
| Landscaping & grounds keeping | 200 | 200 | 200 | 200 | 200 |
| Security/Alarm - HPD | 368 | 200 | 200 | 200 | 200 |
| Parking & valet service | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Miscellaneous | 1,500 | 3,000 | 3,000 | 3,000 | 3,000 |
| Total Admin | 6,664 | 8,646 | 8,646 | 8,646 | 8,646 |
| | | | | | |
| Management Fee | - | 2,083 | 6,083 | 6,083 | 6,083 |
| | | | | | |
| | | | | | |
| Insurance & Taxes | | | | | |
| Ad valorem monthly escrow | | 32,163 | 32,163 | 32,163 | 32,163 |
| Liability/Casualty | | 6,243 | 6,243 | 6,243 | 6,243 |
| | | | | | |
| Utilities | | | | | |
| Electricity | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Water | 1,551 | 1,551 | 1,551 | 1,551 | 1,551 |
| Gas | 20 | 20 | 20 | 20 | 20 |
| | | | | | |
| TOTAL OPERATING EXPENSES | 9,435 | 51,907 | 55,906 | 55,906 | 55,906 |

NON-OPERATING EXPENSE

| | | | | | |
|---|---|---|---|---|---|
| Bank of Houston - Building | - | 29,600 | 29,600 | 29,600 | 29,600 |
| Bank of Houston - Parking garage | - | 30,333 | 30,333 | 30,333 | 30,333 |
| Mercantile Capital - Building | - | 31,779 | 31,779 | 31,779 | 31,779 |
| | | | | | |
| Legal Fees | | | | | |
| Bnky Counsel | - | | 25,000 | 25,000 | 15,000 |
| Special Litigation Counsel | - | | 25,000 | 25,000 | 25,000 |
| Accounting Fees | - | | | | |
| US Trustee Fees | 325 | 975 | 975 | 975 | 975 |
| | | | | | |
| Capital Expenditures | - | - | - | - | |
| | | | | | |
| Total Non-operating Expenses | 325 | 92,687 | 142,687 | 142,687 | 132,687 |
| | | | | | |
| Net Operating Cash Flow | 240 | (40,419) | (94,419) | (94,419) | (84,419) |
| | | | | | |
| Ending Cash | 240.05 | (40,179.19) | (134,597.95) | (229,016.71) | (313,435.47) |

# EXHIBIT B

# PROMISSORY NOTE

# PROMISSORY NOTE

Up to $1,000,000.00                                              May __, 2013

**FOR VALUE RECEIVED,** on or before the earlier (a) November 30, 2013; or (b) the effective date of a Chapter 11 plan or arrangement in the Chapter 11 Case (the "Maturity Date"), the undersigned (hereinafter referred to as "Borrower"), promises to pay to the order of Atul Lucky Chopra, M.D. (the "DIP Lender") the principal amount of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) ("Total Principal Amount"), or such amount less than the Total Principal Amount which is outstanding from time to time if the total amount outstanding under this Promissory Note ("Note"), together with interest at the rate set forth below on such portion of the Total Principal Amount which has been advanced to Borrower from the date advanced until paid.

**Interest Rate.** The unpaid principal amount of this Note shall bear interest at the rate of seven (7.0) % per annum compounded semi-annually based on a year of 365; provided, however, that under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**Repayment Terms.** The outstanding principal balance of this Note, together with all accrued but unpaid interest, shall be due and payable on or before the Maturity Date.

All payments of principal or interest on this Note shall be made in lawful money of the United States of America in immediately available funds as the holder of this Note shall designate in writing to Borrowers. If any payment of principal of or interest on this Note shall become due on a day which is not a Business Day (as hereinafter defined), such payment shall be made on the next succeeding Business Day and any such extension of time shall be included in computing interest in connection with such payment. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which nationally chartered banking associations are ordinarily closed. All regularly scheduled payments of the indebtedness evidenced by this Note shall be applied first to any accrued but unpaid interest then due and payable hereunder and then to the principal amount then due and payable. To the extent that any interest is not paid on or before the fifth (5th) day after it becomes due and payable, the holder of this Note may, at its option, add such accrued interest to the principal of this Note. Notwithstanding anything herein to the contrary, upon an Event of Default (as hereinafter defined) or at maturity, whether by acceleration or otherwise, all principal of this Note shall, at the option of the holder of this Note, bear interest at a rate equal to prime plus 7% per annum until paid, subject to the provisions of this Note entitled "Compliance with Usury Laws."

**Prepayment without Penalty.** Borrower may from time to time prepay all or any portion of the outstanding principal balance of this Note without premium or penalty in accordance with an appropriate order of the bankruptcy court in the Borrower's bankruptcy case styled *In re Midtown Scouts Square Property, LP,* Case No. 13-32920 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").



EXHIBIT

B

**Advances.** At the discretion of the DIP Lender, advances under the Note shall be made at the request of the Borrower pursuant written request to the DIP Lender.  Requests must be submitted at least three (3) days prior to distribution of funds and there must be no Event of Default.  The request for advance shall contain a line item allocation of how the funds shall be used in the course of the Bankruptcy Case.

**Purpose.** Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all advances hereunder shall be used solely for maintaining the assets of the Borrower and continuing operation of the business.

**Administrative Claim.** DIP Lender shall be allowed an administrative expense claim as provided by 11 U.S.C. § 503(B) of the United States Bankruptcy Code, subject to administrative fees and expenses of professionals allowed under Section 327 of the Bankruptcy Code.

**Security.** None.

**Event of Default.** Any one or more of the following occurrence shall be deemed an event of default (an "Event of Default"):

  (a)    The Borrower fails to pay when due any installment of principal or interest on this Note owing by Borrower to Lender;

  (b)    The Bankruptcy Case is dismissed, a Chapter 11 Trustee is appointed, or converted to a case or cases under Chapter 7 of the Bankruptcy Code.

  (c)    A Chapter 11 plan is proposed or confirmed in the Bankruptcy Case or an order approving sale or transfer of substantially all of the Debtor's assets without the consent and approval of the DIP Lender, unless such plan or order proposes payment of this Note in full in cash on the sale closing date or the plan's effective date as the case may be;

  (d)    The Bankruptcy Court grants relief from the automatic stay as to the Borrower's property;

  (e)    The Borrower defaults under the terms of any final order in the Bankruptcy Case approving, *inter alia,* this Note and/or the other Loan Documents.

Upon the occurrence of an Event of Default, the holder of this Note may, at its option, without further notice or demand, (i) declare the outstanding principal balance of and accrued but unpaid interest on this Note at once due and payable, (ii) refuse to advance any additional amounts under the Note, (iii) pursue any and all other rights, remedies and recourse available to the holder hereof, at law or in equity, or (iv) pursue any combination of the foregoing; provided however, that when exercising such rights, the holder of this Note shall obtain a lifting or modification of the automatic stay under Section 362 of the Bankruptcy Code against the Borrower's property from the Bankruptcy Court, if necessary. The failure to exercise the option to accelerate the maturity of this Note or any other right, remedy or recourse available to the holder hereof upon the occurrence of an Event of Default hereunder shall not waive the right of

the holder of this Note to exercise the same at that time or at any subsequent time with respect to such Event of Default or any other Event of Default. The rights, remedies and recourse of the holder hereof, as provided in this Note, shall be cumulative and concurrent and may be pursued separately, successively or together as often as occasion therefore shall arise, at the sole discretion of the holder hereof. The acceptance by the holder hereof of any payment under this Note which is less than the payment in full of all amounts due and payable at the time of such payment shall not (i) constitute a waiver of or impair, reduce, release or extinguish any right, remedy or recourse of the holder hereof, or nullify any prior exercise of any such right, remedy or recourse, or (ii) impair, reduce, release or extinguish the obligations of any party liable herein.

**Compliance With Usury Laws**. This Note is intended to be performed in accordance with, and only to the extent permitted by, all applicable usury laws. Accordingly, notwithstanding any provision to the contrary in this Note, in no event whatsoever shall this Note require the payment or permit the payment, taking, reserving, receiving, collection or charging of any sums constituting interest under applicable laws which exceed the maximum amount permitted by such laws. If any such excess interest is called for, contracted for, charged, taken, reserved, or received in connection with this Note, or in any communication by any person to Borrower or any other person, or in the event all or part of the principal or interest shall be prepaid or accelerated, so that under any of such circumstances or under any other circumstance whatsoever the amount of interest contracted for, charged, taken, reserved, or received on the amount of principal actually outstanding from time to time under this Note shall exceed the maximum amount of interest permitted by applicable usury laws, then in any such event it is agreed as follows: (i) the provisions of this Section shall govern and control; (ii) neither Borrower nor any other person or entity now or hereafter liable for payments under this Note shall be obligated to pay the amount of such interest to the extent such interest is in excess of the maximum amount of interest permitted by applicable usury laws; (iii) any such excess which is or has been received notwithstanding this Section shall be credited against the then unpaid principal balance of this Note or, if this Note has been or would be paid in full by such credit, refunded to Borrower, and (iv) the provisions of this Note, and any communication to Borrower, shall immediately be deemed reformed and such excess interest reduced, without the necessity of executing any other document, to the maximum lawful rate allowed under applicable laws as now or hereafter construed by courts having jurisdiction hereof or thereof. Without limiting the foregoing, all calculations of the rate of interest contracted for, charged, taken, reserved, or received in connection herewith which are made for the purpose of determining whether such rate exceeds the maximum lawful rate shall be made to the extent permitted by applicable laws by amortizing, prorating, allocating and spreading during the period of the full term of this Note, including all prior and subsequent renewals and extensions, all interest at any time contracted for, charged, taken, reserved, or received..

**Costs of Collection: Waivers.** Borrower agrees to pay, in addition to all other sums payable hereunder, all costs and expenses of collection of this Note, including but not limited to reasonable attorneys' fees. Borrower and any and all endorsers and guarantors of this Note severally waive presentment for payment, notice of nonpayment, protest, demand, notice of protest, notice of intent to accelerate, notice of acceleration and dishonor, diligence in enforcement and indulgences of every kind and without further notice hereby agree to renewals, extensions, exchanges or releases of collateral, taking of additional collateral indulgences or partial payments, either before or after maturity.

**GOVERNING LAW; VENUE; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.** THIS NOTE SHALL BE GOVERNED BY AND BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF. BORROWER AGREES THAT THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, SHALL BE THE EXCLUSIVE VENUE FOR LITIGATION OF ANY DISPUTE OR CLAIM ARISING UNDER OR RELATING TO THIS NOTE. BORROWER CONSENTS TO THE PERSONAL JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, FOR THE LITIGATION OF ANY SUCH DISPUTE OR CLAIM. BORROWER IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

**WAIVER OF JURY TRIAL.** BORROWER HEREBYS IRREVOCABLY WAIVE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY TRANSACTION CONTEMPLATED HEREBY OR ASSOCIATED HEREWITH.

**FINAL AGREEMENT.** THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE DIP LENDER AND BORROWER WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BORROWER:

MIDTOWN SCOUTS SQUARE PROPERTY, LP

By: Midtown Scouts Square, LLC,
Its General Partner

By: _____

Name: Erich Mundinger _____

Title: _President_____

**Midtown Scouts Square Property, LP**
**SERVICE LIST**

Midtown Scouts Square Property, LP
8305 Knight Road
Houston, TX 77054

Office of the United States Trustee
515 Rusk Room 3516
Houston, TX 77002

002 Magazine
1824 Spring Street, Studio #002
Houston, TX 77007

1911 Entertainment
8305 Knight Road
Houston, TX 77054

Advanced Diagnostic Management, LLP
8305 Knight Road
Houston, TX 77054

Allied Waste Services
P O Box 78829
Phoenix, AZ 85062-8829

AmeriPower, LLC
PO Box 4977
Houston, TX 77210

Associated Time & Parking Controls
904 Diplomacy Row
Dallas, TX 75247

AWP Services
11410 Larkdale Drive
Houston, TX 77099

Bank of Houston
750 Bering Drive, Suite 100
Houston, TX 77057

Belknap Concrete Cutting and Drilling
9030 Solon Road
Houston, TX 77064

BlackFinn
c/o 1910 Bagby, LLC
6300 Carmel Road, Suite 110B
Charlotte, NC 28226

Boss and Hughes
7525 South Freeway
Houston, TX 77021-5928

Business FlooringSpecialists
1234 N. Post Oak, Suite 190
Houston, TX 77055

Chopra & Associates
8305 Knight Road
Houston, TX 77054

Chopra Imaging Centers, Inc.
8305 Knight Road
Houston, TX 77054

City of Houston
PO Box 1562
Houston, TX 77251

City of Houston Mechl Section - Boilers
P O Box 61167
Houston, TX 77208-1167

Cueto, James
2500 Summer Street
Houston, TX 77007

Daniel D. Horowitz, III
Abraham, Watkins, Nichols,
Sorrels, Agosto & Friend
800 Commerce Street
Houston, TX 77002-1776

Director of Public Works & Engineering
City of Houston
Attn: Richard P. Smith, Managing Eng.
PO Box 1562
Houston, TX 77251

Discovery Construction
701 N. Post Oak Rd. Suite 34
Houston, TX 77024

Enterprise Commercial Paving
10 Stokes Street
Houston, TX 77002

Greenberg Traurig
1000 Louisiana Street
Suite 1700
Houston, TX 77002

Grille 5115
8305 Knight Road
Houston, TX 77054

Harrell Architects
9575 Katy Freeway, Suite 200
Houston, TX 77024

Harris County, et al.
Tax Assessor-Collector
P O Box 4622
Houston, TX 77210-4622

Harris County, et al.
c/o John P. Dillman
Linebarger Goggan Blair & Sampson
P O Box 3064
Houston, TX 77253-3503

Hearsay
8305 Knight Road
Houston, TX 77054

Hicham Nafaa, Ali Bendella, and
Neptunes Restaurant, LLC
c/o Daniel D. Horowitz, III
800 Commerce Street
Houston, TX 77002-1776

Houston Technology Center
410 Pierce Street
Houston, TX 77002

Internal Revenue Service
P O Box 7346
Philadelphia, PA 19101-7346

Interventional  Vascular Diagnostics
8305 Knight Road
Houston, TX 77054

Krenek Architects, Inc.
7115 S Mason Road, Suite 314
Suite 314
Richmond, TX 77407

Krenek Architects, Inc.
7115 S. Mason Road, Suite 314
Richmond, TX 77407

L. Chopra M.D. P.A.
8305 Knight Road
Houston, TX 77054

Lone Star Advantage
5222 FM 1960 West, Suite 175
Houston, TX 77069

Lucky A. Chopra
8305 Knight Road
Houston, TX 77054

Mercantile Capital Corporation
60 North Court Avenue
Suite 200
Orlando, FL 32801

Midtown Scouts Square, LLC
8305 Knight Road
Houston, TX 77054

Mighty Works Signage
7016 Hemlock
Houston, TX 77087

MLN Service Company
3931 Ann Arbor Drive
Houston, TX 77083

Mr. Peeples Steak + Seafood
1911 Bagby
Houston, TX 77002

New High End Finishes
2500 Summer Street
Houston, TX 77007

Newbart Products
10424 Rockley Road
Houston, TX 77099

Nova Vision
525 East Woodland Circle
Bowling Green, OH 43402

Pyrotex Systems, Inc.
P O Box 1639
Alvin, TX 77512

Richey Family Limited Partnership
PO Box 2569
Stafford, TX 77497

Scott Youngblood CPA
4512 Broadway Road
Pearland, TX 77581

Securities & Exchange Commission
Attn: Angela Dodd
175 W. Jackson Blvd.
Suite 900
Chicago, IL 60604-2908

Smith Mackinnon, PA
Attn Robert O. Marks
255 South Orange Ave. Suite 800
Orlando, FL 32801

SOSA, Inc.
8305 Knight Road
Houston, TX 77054

Southeast Fire Protection, LP
PO Box 87728
Houston, TX 77287

State Parking Services, Inc.
1001 Texas Avenue
Houston, TX 77002

Summit Landscaping Services, Inc.
12452 Cutten Road
Houston, TX 77002

Texas Comptroller of Public Accounts
Revenue Accounting Division
Bankruptcy Section
P O Box 12548
Austin, TX 78711-2548

Trio Electric Ltd.
P O Box 925473
Houston, TX 77292

Twenty Two Global Transport LP
P O Box 62588
Houston, TX 77205

US Canvas & Awning Corporation
8331 Northern Street
Houston, TX 77071

Wholesale Restaurant Supply
1949 Bingle Road
Houston, TX 77055

X-Ray X-Press Corporation
8305 Knight Road
Houston, TX 77054

Xray Xpress Corporation
8305 Knight Road
Houston, TX 77054

Texas Workforce Commission
Bankruptcy Section
P O Box 149080
Austin, TX 78714-9080

Internal Revenue Service
Insolvency Section
1919 Smith MAIL STOP HOU 5022
Houston, TX 77002