UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **MIDTOWN SCOUTS SQUARE** | § | Case 13-32920 (Docket Here) |
| **PROPERTY, LP, et. al.** | § | Case 13-32924 |
| *Debtor* | § | (Chapter 11) |
| | § | Jointly Administered |

# OBJECTION OF RICHEY FAMILY LIMITED PARTNERSHIP, LTD. TO CONFIRMATION OF PLAN
[*Refers to Docket #147*]

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COME NOW, **Richey Family Limited Partnership, LTD, LE Richey and Todd Richey ("Richey")** and files this Objection to the Joint Chapter 11 Plan of Reorganization Filed by Midtown Scouts Square Property, LP, and Midtown Scouts Square, LLC ("Plan") and for cause would show as follows:

## BACKGROUND FACTS

1. On May 9, 2013, Midtown Scouts Square Property, L.P. and Midtown Scouts Square Property, LLC ("Debtors") filed Chapter 11 cases.

2. On or about May 24, 2013 Debtors filed a Notice of Removal [Doc. No. 1 in Adversary No. 13-03108] of the pending lawsuit styled: *Richey Family Limited Partnership, LTD et al vs. Midtown Scouts Square Property, L.P.; Midtown Scouts Square Property, LLC; Atul Lucky Chopra and Bank of Houston, Cause 2011-32275, 268th District Court of Fort Bend County, Texas* (the "State Court Lawsuit").

3. On or about May 30, 2013, the Richeys filed a Motion to Remand and Request for Modification of the Automatic Stay [Doc. No. 2 in Adversary Proceeding 13-03108]. Both Debtors and Bank of Houston filed objections to such motion on June 20, 2013 [Doc. Nos. 6 and 7 in Adversary Proceeding 13-03108].

4. On June 24, 2013, Debtors filed a Motion to Estimate [Doc. No. 50] ("Estimation"), although only Richey Family Partnership, LTD has filed a claim in the bankruptcy cases.

5. Hearing was had on the Richeys' Motion to Remand and Request for

Modification of the Automatic Stay on June 25, 2013.  This Court denied that motion.  The Richeys filed a Motion for Reconsideration of that denial on July 16, 2013 [Doc. No. 28 in Adversary Proceeding 13-03108].  The Richeys also filed a Motion to Withdraw Reference relating to the adversary proceeding on July 15, 2013 [Doc. No. 26 in Adversary Proceeding 13-03108].

6. After trial on the Estimation, the Court entered its order on April 21, 2014 allowing the claim of Richey in the amount of $1,400,000 and finding that the Debtors failed to prove entitlement to any offset.  [Docket #142] ("Estimation Order").

7. In the same Estimation Order, the Court denied the Debtors attempt to estimate the equity claims of the Richey Family Limited Partnership, Ltd., LE Richey and Todd Richey.

8. On May 13, 2014 the Debtors filed the Joint Chapter 11 Plan of Reorganization. [Docket #147].

9. On May 30, 2014 the Court entered its order remanding the Adversary Proceeding to the 268th District Court of Fort Bend County, Texas to the extent required for the parties to prosecute such case to final judgment. [Docket #61].  The Debtors are no longer parties to such State Court Litigation.

**The Richeys' Advance of $1,400,000 at Direction of Chopra**

10. On or about July 30, 2004, Advanced Diagnostic Management, LLP, an entity associated with Atul Lucky Chopra ("Chopra"), the principal of Debtors, purchased certain real estate located at 1910.5 and 1911 Bagby in Midtown, Houston, Texas.  The real estate was later transferred to Debtor Midtown Scouts Square Property, LP ("Midtown, LP"). Midtown, LP wished to build a new structure on 1910 Bagby and remodel and add to an existing structure at 1911 Bagby.  To that end, in or about August 2010, Chopra approached the Richeys about investing in what he referred to as the "Scouts Square Project" (the "Project").  On August 18, 2010, Chopra emailed Karnani, the Project Developer hired by Chopra, stating he had met with the Richeys who committed to invest $1,400,000.00 in the Project in exchange for transfer from Chopra's 100% ownership, a cumulative total of 27% ownership.  On August 26, 2010, Chopra sent a "Private Placement Memorandum" to the Richeys relating to the Project. The "Private Placement Memorandum" indicated that investors in the Project would **not** guarantee bank loans and all bank loans would be non-recourse as to them.  Bank of Houston, who was added as a Defendant in the state court action, received a copy of a document entitled "Confidential Information Memorandum," dated August 20, 2010, and placed this document in its credit files.

The terms in the August 20, 2010 "Confidential Information Memorandum" are virtually identical to the terms in the "Private Placement Memorandum" dated August 26, 2010. The August 20, 2010 "Confidential Information Memorandum" also contained representations that investors in the Project would not guarantee bank loans and all bank loans would be non-recourse as to investors.

11.  Despite discussing the investment with the Richeys as early as August 2010, it was not until mid-December 2010, when Chopra, Midtown LP, and Midtown Scouts Square, LLC ("Midtown, LLC") were attempting to quickly close construction loans with Bank of Houston on the Project that Chopra again began diligently pursuing the Richeys' investment. The Richeys and Chopra met on or about December 8, 2010 to discuss the investment.

12.  On December 14, 2010, the Richeys provided the names of the persons and entity which were to purchase the limited partnership interests of Midtown, LP. The deal was structured to have three investors because Chopra had informed the Richeys that if any one person or entity owned 20% or more that limited partner would be required to guarantee the loans. Because the Richeys did not want to be guarantors, they divided the interest so that no one person or entity would own 20% or more.

13.  Chopra refused to transfer the agreed 27% of the equity in the Debtors to the Richeys after the advance of the $1,400,000 consideration. As a result, the Richeys filed the State Court Lawsuit asking the State District Court to require Chopra to comply with the agreement and transfer the 27% of the equity from him to the Richeys. Additionally, the Richeys sought further and alternative recovery against the Bank of Houston.

14.  In its order on the Estimation, the bankruptcy Court ruled that:

> The Court finds that to the extent the Richeys do not prevail in their causes of action based on the facts alleged in the removed state court lawsuit, proof of claim number 7 filed by the Richey Family Limited Partnership is allowed in the amount filed, $1,400,000.00.

**The Richeys' State Law Claims**

15.  The Sixth Amended Complaint in Adversary No. 13-03108, filed on October 4, 2013 [Doc. No. 42 in Adversary No. 13-03108] ("State Court Lawsuit"), that has now been remanded contains the following claims **against Chopra and Bank of Houston**[1]:

---

[1] Upon remand, the Richeys filed a Seventh Amended Complaint. Such complaint was identical in substance to the Sixth Amended Complaint filed in the adversary proceeding and was filed to ensure that Debtors were not considered parties in the state court case

a. Declaratory Judgment that the LOI is still in effect;

b. **Specific Performance of the LOI relating to conveyance of limited partnership interests of Midtown, LP from Chopra to the Richeys**;

c. Damages for breach of the LOI relating to conveyance of the membership interests of Midtown, LLC;

d. String-Along Fraud;

e. Fraud;

f. Conspiracy to Commit Fraud.

g. Additionally, the Richeys have asserted the following causes of action against Bank of Houston:

h. Conspiracy to Commit Fraud; and

i. Aiding and Abetting Fraud.

16. On May 29, 2014 the Bankruptcy Court remanded the State Court Litigation ruling that:

> **ORDERED** that this Adversary Proceeding styled *Richey Family Limited Partnership, LTD et al vs. Midtown Scouts Square Property, L.P.; Midtown Scouts Square Property, LLC; Atul Lucky Chopra and Bank of Houston,* previously removed to this Court is hereby this day remanded back to the *268th District Court of Fort Bend County, Texas*; and it is further
>
> **ORDERED** that the automatic stay is modified to the extent required for the parties to the remanded case to prosecute such case to final judgment.
>
> DATED:
>
> Signed:  May 29, 2014
>
> Karen K. Brown
> United States Bankruptcy Judge

17. After losing on their attempt to drag the claims of the Richeys against Chopra into the bankruptcy case, the Debtors have now filed a Plan that further attempts to destroy the claims asserted in the pending State Court Lawsuit pending against Chopra and remanded by this Court.

# RELEVANT PLAN PROVISIONS

**Section 4.6, Page 11 of Plan**

> 4.6  Class 6.  Allowed General Non-Insider Unsecured Claims Greater than $5,000.
>
> 4.6.1  <u>Classification.</u>  Class 6 consists of Allowed Non-Insider General Unsecured Claims Greater than $5,000.
>
> 4.6.2  <u>Treatment.</u>  Allowed Class 6 Claims shall be paid in full, with simple interest accruing from the Effective Date at the rate of 5% per annum, payable in

> 4.7  Class 7 Claims of Unsecured Claims of Insiders.
>
> 4.7.1  <u>Classification.</u>  Class 7 consists of the Allowed Claims of Insiders, including any unsecured claim of the Richey Parties.
>
> 4.7.2  <u>Treatment.</u>  Allowed Class 7 Claims shall be paid in full, with simple interest accruing from the Effective Date at the rate of 5% per annum, unless such party agrees to accept a lesser amount or defer payment until all other Plan payments have been completed.  For Plan purposes, the Richey Family Limited Partnership has a Class 7 claim of $1.4 million.  The Plan payment to the Richey Family Limited Partnership will be deposited into the Disputed Claim Reserve until a final resolution of the Richey Parties disputed ownership interest in Midtown Scouts Square Property, LP, is resolved by agreement or by final court order/judgment.
>
> If a court enters a final non-appealable judgment that the Richey Parties are entitled to a 27% equity interest in Midtown Scouts Square Property, LP, ==then upon satisfaction of the conditions set forth in Article 6.5, the $1.4 Class 7 claim shall be converted thereto and the funds in the Disputed Claim Reserve will be returned to the Reorganized Debtor.==  The Richey Parties have stipulated that they are no longer seeking a 50% ownership interest in Midtown Scouts Square, LLC.
>
> The Allowed Class 7 Claims of Advanced Diagnostics Management, LLP, Chopra Imaging Centers, Inc., L. Chopra M.D., P.A., Sosa, Inc., and X-Ray X-Press Corporation, have agreed to defer payment on their Allowed Claims until Classes 1, 2 and Class 6 Claims are paid in full, and as long as there is no default in Plan payments to Classes 3 and 4 and such payments do not violate any covenants of the SBA loan documents.
>
> 4.7.3  The Class 7 Claims are impaired.

6.5    If a court having jurisdiction over the Richey Litigation issues a final non-appealable judgment that the Richey Parties own a 27% equity interest in Midtown Scouts Square Property, LP, the Reorganized Debtors shall cause to be issued limited partnership interest to the Richey Parties as follows:

| Name | Equity Percentage |
|---|---|
| Richey Family Limited Partnership, Ltd: | 17% |
| L.E. Richey | 5% |
| Todd Richey | 5% |

The conditions precedents for issuance of the foregoing 27% limited partnership interest are as follows:

i. The Richey Parties shall execute personal guarantees of the SBA Loan in a form substantially similar to the guarantee agreements executed by the Guarantors on January 31, 2011 for the benefit of Mercantile Capital Corporation, and acceptable to the SBA;
ii. To the extent required by the Bank of Houston, the Richey Parties shall execute personal guarantees of the two Bank of Houston promissory notes in a form substantially similar to the guarantee agreements executed by the Guarantors.
iii. The Richey Parties shall provide the SBA personal financial statements, tax returns, and other financial reporting as required by the SBA for guarantors.
iv. To the extent required by the Bank of Houston, the Richey Parties shall provide the Bank of Houston personal financial statements, tax returns, and other financial reporting as required by Bank of Houston for guarantors
v. The Richey Parties waive all ownership rights to Midtown GP.
vi. The Richey Parties shall contribute on a pro-rata basis cash to Midtown Scouts Square Property, LP, in an amount totaling 27% of the total Equity Infusion contributed by Lucky Chopra as described in Article 6.4.
vii. To the extent the Richey Parties fail to contribute additional equity as described herein, their 27% equity interest may be treated as set forth in Section 4.2(c) of the Agreement of Limited Partnership of Midtown Scouts Square Property, LP, dated December 13, 2010.[1] Service of the Confirmation Order by US Mail upon the Richey Parties shall constitute the required notice for additional capital contributions required by the Richey Parties.
viii. The SBA approves the inclusion of the Richey Parties as equity holders.

To be clear, if Article 6.5 is implemented, the Class 7 unsecured Claim of the Richey Family Limited Partnership, Ltd., in the amount of $1.4 million will be converted to equity.

If Article 6. 5 is implemented, the Agreement of Limited Partnership will be Amended and Restated. The proposed Amended and Restated Partnership Agreement is attached hereto as Exhibit B.[2] The Richey Parties shall be required to sign the Amended and Restated Partnership Agreement ("Restated LP Agreement)".

# OBJECTIONS

**The Plan Improperly Seeks to Release Chopra From State Court Claims**

18. This court has remanded the Adversary Proceeding that seeks transfer of a part of Chopra's membership interest in Midtown Scouts Square Property, LP ("Midtown LP") to the Richeys in compliance with the contract between Chopra (non-debtor) and the Richeys (non-debtors). Rather than defend the State Court Lawsuit, Chopra has used his fiduciary position with the Debtors to construct a Plan provision that would virtually neuter the rights of the Richey Parties to force Chopra to comply with his agreement to convey 27% of his 100% equity to the Richey Parties.

19. The Fifth Circuit has held that membership interest such as those owned by Chopra, are **not** property of the bankruptcy estate. It is widely recognized that a business entity, even if a debtor in bankruptcy, has no property interest in the shares of its stock **owned** by members or shareholders. *In re Texas Consumer Finance Corp., 480 F.2d 1261, 1266 (5th Cir.1973); see also In re Journal-News Corp., 193 F.2d 492, 492 (2nd Cir.1951). Matter of Paso Del Norte Oil Co., 755 F.2d 421, 424 (5th Cir. 1985).* Further, Bankruptcy courts lack jurisdiction over controversies not involving claims against the debtor or its property and controversies in which the bankrupt and its unsecured creditors have no interest. *Matter of Paso Del Norte Oil Co., 755 F.2d 421, 425 (5th Cir. 1985).*

20. What Chopra is attempting to accomplish in the Plan is to use the Bankruptcy Court to effectively provide relief, **not to the Debtors**, but to Chopra individually. It is Chopra that is required to transfer a portion of **his** 99% membership (not property of the estate) to the Richeys under the LOI. The LOI recites the fact that Chopra is the seller and the Richeys are the buyers:

> Midtown Scouts Square Property, LP
> Dr. Lucky Chopra
> December 17, 2010
> Page 2
>
> agreed that all of the limited partnership interests will be purchased from Lucky Chopra ("Chopra") or originally issued by Midtown LP. The aggregate purchase price in the Midtown LP Acquisition shall be One Million Three Hundred Ninety-Nine Thousand Nine Hundred Fifty and No/100 Dollars ($1,399,950.00), which shall be paid in cash at the closing of the Midtown

21. There being no jurisdiction over the membership interest in question, it appears that Chopra is attempting to invoke *11 U.S.C.§105* to accomplish his sinister goal. By formulating a Plan that directs and conditions the rights sought to be enforced by the Richeys in the State Court Lawsuit, he is attempting to create an injunction to the action that this Court has authorized to proceed in State Court. This Court should not use a §105 injunction, if it effectively discharges a nondebtor. *See In re Vitek, 51 F.3d at 536 n. 27 ("[N]on-debtor property thus should not ordinarily be shielded by the powers of the bankruptcy court.") Matter of Zale Corp., 62 F.3d 746, 760 (5th Cir. 1995).*

22. Since the membership interest owned by Chopra is truly not property of the Estate, then the bankruptcy court has no authority to enjoin suits against Chopra. Confirmation of the Plan is in effect an injunction on the Richeys right to property that is not included in the bankruptcy estate. The bankruptcy court's injunctive powers exist only to ensure the preservation and fair division of Estate assets and should not be used to affect third party rights. *Matter of Vitek, Inc., 51 F.3d 530, 536 (5th Cir. 1995).* Section 6.5 of the Plan has no place in a good faith proposal for reorganization and is a bad faith attempt by Chopra to push this Court beyond its jurisdiction, prohibited by *Matter of Zale Corp., 62 F.3d 746, 760 (5th Cir. 1995)* . In this case, the Richeys' claim to the limited partnership interests, which are currently owned by non-debtor Dr. Chopra, have no impact upon the estate or the distribution to creditors. Chopra has injected conditions precedent found under Plan *Section 6.5* as a personal benefit to his personal estate, not the bankruptcy estate.

23. The Plan does not comply with the provisions of *11 U.S.C.§1129(a)* for the reason that it has not been proposed in good faith and further that it has proposed treatment forbidden by law, to-wit: attempts to alter rights of non-debtor third parties and property interest that do not belong to the estate.

**The Proposed Plan Treatment Has Been Rejected by This Court in Prior Ruling**

24. The Plan in effect is attempting to produce the same result that is (i) subject to the ongoing State Court Litigation that this Court has remanded to the State District Court; and (ii) further, was the subject of the Debtors' Motion to Estimate that was previously considered and rejected by the Court. *See Docket #50, Motion to Estimate for Purpose of Allowance, Distribution and Voting Pursuant to 11 U.S.C.§502(c) and Docket #142, Order Regarding Motion to Estimate Claim and Objection to Claim.*

25. In remanding the State Court Litigation, [Adversary 13-03108, Docket #61], the

Court was aware of the issues in the State Court Litigation that the Debtor is attempting to supplant with the proposed Plan. Specifically, estate in bankruptcy has no property interest in the shares of its stock **owned** by members or shareholders. *Matter of Paso Del Norte Oil Co., 755 F.2d 421, 424 (5th Cir. 1985).*

26. The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case. " *United States v. Castillo, 179 F.3d 321, 326 (5th Cir.1999)  Med. Ctr. Pharmacy v. Holder, 634 F.3d 830, 834 (5th Cir. 2011).* In this bankruptcy, the Court has previously decided that *"...the debtors' motion to estimate the equity interests of the Richey Family Limited Partnership, Ltd., LE Richey, and Todd Richey is DENIED" [See Docket #142]* and that the *"Adversary Proceeding...previously removed to this Court is hereby this day remanded back to the 268th district Court of Fort Bend county, Texas." [See Adversary 13-03108 Docket #61]*

27. Further, the State Court Litigation seeks relief on the same issues that the Debtor proposes by fiat in its Plan, effectively insulting the ruling that is the subject of the remand. The Proposed Plan Section 6.5 frustrates both the Motion to Estimate ruling as well as the entry of the order remanding the State Court Litigation. Since the same issues are subject to the State Court Litigation, that proceeding should determine this issue between the non-debtor parties.

**The Plan Improperly Classifies Richey Family Limited Partnership, LTD**

28. The Plan provides that the "unsecured claim of the Richey Parties" shall be separately classified with Claims of Insiders.

> 4.7    Class 7 Claims of Unsecured Claims of Insiders.
>
>    4.7.1    <u>Classification.</u>   Class 7 consists of the Allowed Claims of Insiders, including any unsecured claim of the Richey Parties.

29. First, the Plan defines the "Richey Parties" as Richey Family Limited Partnership, LTD., L.E. Richey, and Todd Richey (See Section 2.1.44 of the Plan). Neither L.E. Richey nor Todd Richey has appeared or filed a claim in these cases[2]. The problem is that "insiders" are defined in 11 USC §101(31) as follows:

---

[2] It is correct that LE Richey and Todd Richey are a party to the Adversary Proceeding that has been remanded. But neither voluntary subjected themselves to the jurisdiction of the bankruptcy court.

      (C) if the debtor is a partnership—

          (i) general partner in the debtor;

          (ii) relative of a general partner in, general partner of, or person in control of the debtor;

          (iii) partnership in which the debtor is a general partner;

          (iv) general partner of the debtor; or

          (v) person in control of the debtor;

30.    At this time, none of the Richey Family Limited Partnership, LTD., L.E. Richey, or Todd Richey fit within the definitions of Insider in 11 USC §101(31). Rather, since only the Richey Family Partnership, LTD has filed a proof of claim in the case, which has been allowed by the Court, it rightfully is entitled to cast its vote under Class 6, defined in Section 4.6 as:

> 4.6    **Class 6.** Allowed General Non-Insider Unsecured Claims Greater than $5,000.
>
>     4.6.1    <u>Classification.</u>  Class 6 consists of Allowed Non-Insider General Unsecured Claims Greater than $5,000.

31.    While Richey Family Limited Partnership, Ltd. seeks to become a limited partner in Debtor Midtown Scouts Square Property, LP, if it is successful in the state court action and becomes a limited partner, its claim will not be paid.[3] If it is unsuccessful, the claim will be paid, but it will not be a limited partner and will not, therefore, be an insider.

32.    *11 U.S.C.§1123(a)* requires that the plan shall comply with *§1122(a)* and place substantially similar claims in the same class. The Richey Family Partnership, LTD has been misclassified and such attempt is fatal to confirmation under *11 U.S.C.§1129(a)*.

**The Plan Violates Good Faith Requirement**

33.    This court has remanded the Adversary Proceeding that seeks transfer of Chopra's equity to the Richeys in compliance with the contract between Chopra (non-debtor) and the Richeys (non-debtors). Chopra's violation of his fiduciary position with the Debtors to construct a Plan provision to defeat Richeys' rights in the membership interest that is not property of the estate, is evidence of bad faith.

34.    "The good faith standard requires that the plan be 'proposed with honesty, good

---

[3] This Court will recall that its order allowing the claim was contingent upon Richey Family Limited Partnership, Ltd. being unsuccessful in its suit against Dr. Chopra and the Bank of Houston.

intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Zenith Electronics Corp., 241 B.R. 92, 107 (Bankr.D.Del.1999) (quoting In re Sound Radio, Inc., 93 B.R. 849, 853 (Bankr.D.N.J.1988))*. In evaluating the totality of circumstances surrounding a plan a court has "considerable judicial discretion' in finding good faith, with the most important feature being an inquiry into the *'fundamental fairness'* of the plan." *In re American Family Enterprises, 256 B.R. 377, 401 (D.N.J.2000)(quoting In re New Valley Corp., 168 B.R. 73, 80–81 (Bankr.D.N.J.1994))In re Coram Healthcare Corp., 271 B.R. 228, 234 (Bankr. D. Del. 2001)*.

35. The bare language of the Plan that states that "…Chopra shall retain 100% of the equity interest in the Reorganized Debtors…." [Plan at §4.8.2] and then adds gratuitous provisions:

> 4.8.2   Treatment: Article 6.4 provides that Chopra shall retain 100% of the equity interest in the Reorganized Debtors in exchange for (i) contributing $550,000 to the Reorganized Debtors on or before the Effective Date, (ii) contributing an additional $150,000 to the Reorganized Debtors within sixth months of the Effective Date, (iii) converting to equity his pre-petition unsecured claim of $260,624.36, and (iv) agreeing to convert to equity all amounts advanced to the Reorganized Debtor under the DIP Facility. In consideration Chopra shall retain his interests in the Reorganized Debtors but shall receive

36. A review of the proposed treatment reveals its nonsensical logic. If Chopra is to retain 100% of the equity, what practical difference exists for the inclusion of the additional language, since all creditors must be paid before Chopra effectively receives any value? The Richeys suppose that the structure of the Plan is simply a vehicle to frustrate the relief that Chopra knows will be granted to the Richeys in the State Court Lawsuit.

37. First, this Court should leave it to the State District Court to sort out what interest owned by Chopra is subject to the State Court Litigation. The contribution by Chopra and the conversion of his purported claims make no difference, since he purports to be the 100% owner of the Debtors (99% of Midtown Scouts Square Property, LP and 100% of Midtown Scouts Square, LLC, which owns the other 1% of the limited partnership). He in effect gets paid in full for all contributions without the inclusion of the additional language.

38. Second, the equity class is the lowest class to be treated under the Plan and notwithstanding the gratuitous inclusion of guaranty and financial contributions by the equity, if the Plan meets other requirements of §1129(a), it provides no impairment to confirmation, since

11 U.S.C.§1129(b) provides that equity can cramdown by just maintaining its prior ownership interest because it is deemed "fair and equitable" when, as here, **there is no junior class** of equity:

> (C) With respect to a class of interests—
>
> (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or
>
> **(ii)** the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.11 U.S.C.A. § 1129 (West)

39. Finally, neither Class 2, 3 or 4 requires the guaranty that Chopra has included in Section 6.5 of the Plan. For the reason that this is a solvent case and that neither the Bank of Houston nor the Mercantile Capital Corporation claims included the conditions dictated by Section 6.5 of the Plan prior to the bankruptcy filing, cramdown is easily available to a negative vote from either or both of those two classes of claims.

40. Chopra believes that Chapter 11 bankruptcy provides a means for unilaterally achieving what he has failed to achieve by negotiation. It perverts the wholesome economic objective of Chapter 11 from an instrument for the rehabilitation of troubled businesses, to one to nakedly allow the remaking of a bilateral contract by one of the parties thereto. *In re Woolley's Parkway Center, Inc., 147 B.R. 996 (Bankr.M.D.Fla.1992) (plan not proposed in good faith where its sole purpose was to relieve debtor's principal of guarantee obligation). In re Albrechts Ohio Inns, Inc., 152 B.R. 496, 501 (Bankr. S.D. Ohio 1993).*

41. This court can confirm the proposed Plan only if it is found that it has been proposed in good faith. *11 U.S.C. § 1129(a)(3).* The history of this case presented by the parties in both the Estimation, Motion to Remand as well as the terms of the proposed Plan makes it absolutely clear that, as a matter of fact, these bankruptcies were filed only for the purpose of settlement benefiting Chopra. Such facts defeat the Debtors burden to good faith and the Court should decline confirmation of the Plan. *In re Albrechts at 501.* The Court should not use its equity powers to assist the Chopra in this manipulative endeavor. *In re Southern California Sound Systems, Inc., 69 B.R. 893, 898 (Bankr.S.D.Cal.1987).*

**The Proposed Treatment is Contrary to Texas Law**

42. To confirm the Plan, 11 U.S.C.§1129(a) requires that the Plan not contain provisions that are "forbidden by law." The Plan before the Court attempts to create guaranty obligations where none exist. Section 6.5 of the Plan would interfere with the State Court Remedy and introduce a guaranty requirement on the Richey Parties. Texas law limits such liability when no written consensual obligation exists:

(a) A limited partner is not liable for the obligations of a limited partnership unless:

(1) the limited partner is also a general partner; or

(2) in addition to the exercise of the limited partner's rights and powers as a limited partner, the limited partner participates in the control of the business. *Tex. Bus. Orgs. Code Ann. § 153.102 (Vernon).*

43. When determining the obligations of contracting parties, courts generally look only to the written agreement. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A., 121 S.W.3d 742, 747 (Tex.2003).* Nothing in the Limited Partnership Agreement requires the Limited Partners to guaranty the debt of the partnership. *Daniels v. Empty Eye, Inc., 368 S.W.3d 743, 751 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).* Furthermore, nothing in the Letter of Intent signed by the parties requires the Richeys to guarantee the debt. *Section 105* certainly "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity," *In re Richardson, 07-42881, 2008 WL 270263 (Bankr. E.D. Tex. Jan. 30, 2008).*

44. The creation of guaranty obligations in the Plan are forbidden by Texas law, when no written obligation exists and therefore impair the Debtors ability to confirm the Plan before the Court pursuant to 11 U.S.C.§1129(a).

WHEREFORE, Richey Family Limited Partnership, LTD, LE Richey and Todd Richey respectfully prays that the Court sustain the objections to confirmation and deny or condition confirmation of the Debtor's Plan, and for such other and further relief as this Court deems just and proper

Dated: September 3, 2014.

                                    **LAW OFFICE OF PETER JOHNSON**
                                    */s/ Peter Johnson*

By: _____
        Peter Johnson
        State Bar No. 10778400
        Eleven Greenway Plaza, Suite 2820
        Houston, Texas 77046
        pjohnson@pjlaw.com
        Telephone (713) 961-1200
        Facsimile (713) 961-0941
        Attorney for Richey Family Limited Partnership, LTD, LE Richey and Todd Richey

**TATE MOERER & KING, LLP**
Richard L. Tate
State Bar No. 19664460
Kristin K. Reis
State Bar No. 24060478
206 South Second Street
Richmond, Texas 77469
Telephone (281) 341-0077
Facsimile (281) 341-1003
Of Counsel For Richey Family Limited Partnership, LTD,
LE Richey and Todd Richey

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the above and foregoing Objection to Confirmation was served the parties required by Local Bankruptcy Rule in this case, either by mailing a copy of the same to all parties entitled to notice on the attached service listing by regular U.S. mail postage prepaid or by electronic notice pursuant to the Local Bankruptcy Rules on September 3, 2014.

                                            */s/ Peter Johnson*
                                      _____
                                      PETER JOHNSON

# SERVICE LIST PURSUANT TO LOCAL RULE 9013

*indicates electronic service-LBR 1001(b)- (Admin Proc CMF/ECF- III-E)

T. Josh Judd on behalf of Defendant Midtown Scouts Square, LLC and Midtown Scouts Square Property, LP
judd@hooverslovacek.com, bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com
Edward L Rothberg on behalf of Defendant Midtown Scouts Square, LLC
rothberg@hooverslovacek.com, mayle@hooverslovacek.com,welborn@hooverslovacek.com;hsllpbankruptcy@gmail.com

**ALL OTHER PARTIES REQUESTING NOTICE:**

Ellen Maresh Hickman on behalf of U.S. Trustee US Trustee
ellen.hickman@usdoj.gov
Jennine Hovell-Cox on behalf of Creditor AmeriPower, LLC
hovellcoxlaw@hotmail.com, hovellcox@aol.com
Yolanda M Humphrey on behalf of Creditor Midtown Management District
houbank@pbfcm.com, tpope@pbfcm.com
Carl O Sandin on behalf of Creditor Midtown Management District
csandin@pbfcm.com, tpope@pbfcm.com
Owen Mark Sonik on behalf of Creditor Midtown Management District
osonik@pbfcm.com, tpope@pbfcm.com
US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV
Lisa M Hedrick on behalf of Defendant Bank Of Houston
lisa.hedrick@arlaw.com, vicki.owens@arlaw.com;craig.wilcox@arlaw.com
D. John Neese, Jr. on behalf of Defendant Midtown Scouts Square, LLC, Defendant Atul Lucky Chopra, M.D and Midtown Scouts Square Property, LP
jneese@hmgllp.com

Objection to Confirmation of Plan
Page 15 of 15