# Exhibit 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MIDTOWN SCOUTS SQUARE** | § | **CASE NO. 13-32920** |
| **PROPERTY, LP** | § | **(Chapter 11)** |
| | § | |
| **MIDTOWN SCOUTS SQUARE, LLC** | § | |
| | § | |
| | § | |
| **DEBTORS.** | § | **Jointly Administered** |
| | § | **Judge Brown** |

## MIDTOWN SCOUTS SQUARE PROPERTY, LP, AND MIDTOWN SCOUTS SQUARE, LLC,'S JOINT CHAPTER 11 PLAN OF REORGANIZATION

**HOOVER SLOVACEK LLP**
EDWARD L. ROTHBERG
State Bar No. 17313990
T. JOSH JUDD
State Bar No. 24036866
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile: 713.977.5395
Email: rothberg@hooverslovacek.com
        judd@hooverslovacek.com

ATTORNEYS FOR DEBTORS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MIDTOWN SCOUTS SQUARE** | § | CASE NO. 13-32920 |
| **PROPERTY, LP** | § | (Chapter 11) |
| | § | |
| **MIDTOWN SCOUTS SQUARE, LLC** | § | |
| | § | |
| | § | |
| DEBTORS. | § | Jointly Administered |
| | § | Judge Brown |

## CHAPTER 11 JOINT PLAN OF REORGANIZATION

The Debtors Midtown Scouts Square Property, LP, and Midtown Scouts Square, LLC (the "Debtors" or "Plan Proponents"), submit this Chapter 11 Joint Plan of Reorganization (the "Plan") for the treatment of all outstanding creditor claims and equity interests pursuant to Chapter 11 of the Bankruptcy Code. All holders of claims against and equity interests in the Debtors are encouraged to read the Plan and accompanying Disclosure Statement in their entirety before voting on the Plan.

## ARTICLE 1
### INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

Midtown Scouts Square Property ("MSSP") is a limited partnership that owns the mixed use Office Building located 1911 Bagby Street, Houston, Texas 77002 (the "Office Building") and the eight story Parking Garage located at 1910 Bagby Street (the "Parking Garage"). Midtown Scouts Square, LLC, is the general partner of MSSP. The properties are located at the east corner of Bagby and Pierce Avenue in Houston. This location is an area of the city known as Midtown.

The Plan provides for the restructuring of the existing debts such that payment to Creditors will be made by the Reorganized Debtors over time from cash on hand operational cash flow as follows: (1) Allowed Administrative Claims and Priority Non-Tax Claims will be paid in cash in full; (2) Allowed Ad Valorem Claims of Taxing Authorities will be paid in full in cash full without penalty, with interest at the statutory rate of 12% per annum within 30 days of the Effective Date; (3) Allowed Non-Tax Priority Claims, if any, will be paid in cash in full within 30 days of the Effective Date; (4) Allowed Priority Tax Claims, if any, will be paid in full within 30 days of the Effective Date with interest at the statutory rate from the Effective Date; (5) Allowed Secured Claim of Bank of Houston secured by liens on the Office Building will be paid by pursuant to the terms of the pre-petition promissory note, with the unpaid pre-petition amount due added on to the end of the respective note; (6) Allowed Secured Claim of Bank of Houston secured by liens on the Parking Garage will be paid by pursuant to the terms of the pre-petition promissory note, with the exception that the term of the note will be extended by 60 months with the unpaid pre-petition amount due added on to the end of the respective note; (7) Allowed Secured Claim of the Debtors' second lien lender (Mercantile Capital Corporation) will be converted to the permanent SBA Debenture (504 loan) and will be paid pursuant to terms of the pre-approved SBA note; (7) Allowed Non-Insider Unsecured Claims will be paid in full with interest at 5% over 60 months beginning on the Effective Date with quarterly distributions thereafter; (7) the Allowed Claims of Insiders, including any Allowed Claim of Richey Family Limited Partnership, Todd Richey and L.E. Richey, will be paid in full with interest at 5% over 60 months, or in the event the Court determines that the Richey's hold an equity interest in the Debtors, such claim shall be converted to equity as more fully described herein; (8) in exchange for converting the post-petition financing claim entitled to priority under §503(b)(1), his pre-

petition claim of $260,624.38, and the Equity Infusion, Atul Lucky Chopra shall retain his 100% equity interest in the Reorganized Debtors, or a reduced equity percentage if the Court determines that the Richeys hold an equity interest in the Debtors. The means for the implementation of the Plan are set forth below.

## ARTICLE 2
DEFINITIONS

2.1 For purposes of the Plan the following terms shall have the respective meanings specified as follows:

2.1.1 <u>Administrative Claim</u> shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses Allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code.

2.1.2 <u>Allowed Claim or Allowed Interest</u> shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

2.1.3 <u>Avoidance Actions</u> shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

2.1.4 <u>Bankruptcy Code</u> shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date.

2.1.5 <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.6 <u>Bankruptcy Estate</u> shall mean all of the assets owned by the Debtor and its estate.

2.1.7 <u>Bankruptcy Rules</u> shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.8 <u>Bar Date</u> shall mean September 9, 2013, established by the Bankruptcy Court as the dates by which proofs of claim have to be filed.

2.1.9 <u>Cash</u> shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.10 <u>CDC</u> shall mean the Community Certified Development Corporation, located at 8590 Highway 6 North, Houston, Texas 77095.

2.1.11 <u>Claim</u> shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, legal, secured or unsecured whether or not asserted.

2.1.12 <u>Class</u> shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.13 <u>Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims and Class 7 Claims</u> shall mean the Claims so classified in Section 4.

2.1.14 <u>Class 8 Interests</u> shall mean the Allowed Interests so classified in Section 4.

2.1.15 <u>Confirmation Date</u> shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

2.1.16    Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.17    Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.18    Creditor shall mean any entity holding a Claim.

2.1.19    Debtors shall mean Midtown Scouts Square Property, LP, and Midtown Scouts Square, LLC, collectively.

2.1.20    DIP Facility shall mean that certain post-petition loan and Promissory Note with Lucky Chopra in the amount up to $1,000,000 approved by the Court on a final basis on May 29, 2014.

2.1.21    Disbursing Agent shall mean the Reorganized Debtor.

2.1.22    Disclosure Statement shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.23    Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

2.1.24    Disputed Claim shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in the Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

2.1.25    Effective Date shall mean the first business day 30 days after the Confirmation Order is entered by the Court.

2.1.26    Equity Infusion shall mean the sum of the funds contributed by Lucky Chopra in Article 6.4 and to be used for the purposes defined herein.

2.1.27    Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

2.1.28     <u>Executory Contract(s)</u> shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

2.1.29     <u>Filing Date</u> shall mean May 9, 2013, the date the Debtors filed their voluntary petitions under Chapter 11 of the Bankruptcy Code.

2.1.30     <u>Final Order</u> shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

2.1.31     <u>General Unsecured Claim</u> shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

2.1.32     <u>Guarantors</u> with respect to the debt owed to Bank of Houston and Mercantile Capital Corporation shall mean the Guarantees executed by Atul Lucky Chopra, Advanced Diagnostics Management, LLP, Chopra Imaging Centers, Inc., L. Chopra M.D., P.A., Sosa, Inc., and X-Ray X-Press Corporation.

2.1.33     <u>Holder</u> shall mean the owner or Holder of any Claim or Interest.

2.1.34     <u>Interest</u> shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.35     <u>Insider</u> has the definition ascribed to it under the Bankruptcy Code.

2.1.36     <u>Lien</u> shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.1.37     <u>Non-Tax Priority Claims</u> shall mean any Claim that is defined in Section 507(a)(2)-(7) of the Bankruptcy Code.

2.1.38     <u>Person</u> shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.1.39 <u>Plan</u> shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

2.1.40 <u>Priority Tax Claims</u> shall mean any Claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

2.1.41 <u>Professionals</u> shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.42 <u>Pro-Rata</u> shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.43 <u>Reorganized Debtor</u> shall mean Midtown Scouts Square Property, LP, and Midtown Scouts Property, LLC, immediately after the Effective Date.

2.1.44 <u>Richey Parties</u> shall mean Richey Family Limited Partnership, LTD., L.E. Richey, and Todd Richey.

2.1.45 <u>SBA</u> shall mean the U.S. Small Business Administration.

2.1.46 <u>Secured Claim</u> shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtors have an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.47 <u>Small Claim</u> shall mean an Allowed Claim, (a) the amount of which (prior to any subdivision or assignment thereof after the Petition Date) is not more than $5,000.00, or (b) the Holder of which irrevocably elected prior to the Confirmation Date to reduce the amount thereof to $5,000.00 and to have such Allowed Claim included in Class 5 by indicating such election on the form utilized for purposes of acceptance or rejection of the Plan.

2.1.48 <u>Substantial Consummation</u> shall occur on the Effective Date.

2.2 <u>Interpretation</u>. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time. The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

2.3     Application of Definitions and Rules of Construction Contained in the Bankruptcy Code. Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## ARTICLE 3
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified and are treated and described in this section.

3.1     Administrative Claims Bar Date. Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan, including Lease Claims) against the Debtors, except for administrative expenses incurred in the ordinary course of operating the Debtors' business, shall file an application for payment of such Administrative Claim on or within sixty(60) days after entry of the Confirmation Order with actual service upon counsel for the Debtors, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices. The Debtors shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date. U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtor.

3.2     Payment of Administrative Claims. Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

3.3     Payment of Non-Tax Priority Claims. Each Holder of an unpaid Allowed Non-Tax Priority Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment. No Non-Tax Priority Claims are expected.

## ARTICLE 4
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below. The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental. The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

4.1    Class 1.  Allowed Secured Claim of Taxing Authorities.

    4.1.1 Classification.  Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for the year 2012 and 2013 any prior years secured by a lien on all of the Debtors' assets.

    4.1.2 Treatment.  Allowed Secured Class 1 Claims shall be paid in cash in full with interest at the statutory rate within 30 days of the Effective Date, without penalty.  The Allowed Secured Class 1 Claims Holders shall retain their liens until such time as they are paid in full.  The Property Taxing authorities shall retain all liens they currently holds for the 2012 and 2013 tax year on any property of the Debtors until they receive payment in full of all taxes.  Ad valorem taxes for the 2014 tax year are to be timely paid in the ordinary course without the necessity of the filing of administrative expense claims or requests for payment, and if not so timely paid, will be subject to state court collection procedures without the necessity of further recourse to the Bankruptcy Court.

    4.1.3    The Class 1 Claims are not impaired.

4.2    Class 2 Allowed Secured Claim of Bank of Houston on Office Building.

    4.2.1 Classification:  Class 2 consists of the Allowed Secured Claim of Bank of Houston, secured by liens on the Office Building.

    4.2.2 Treatment.  The Secured Class 2 Claim of Bank of Houston shall be Allowed and paid by the Reorganized Debtor pursuant to the terms of the pre-petition loan documents.  The pre-petition arrearage of $29,599.51 will be added to the principal amount owed on the note and will be paid upon maturity of the pre-petition note.  Bank of Houston shall retain its liens pursuant to the terms of the pre-petition loan documents.  The monthly payment on the Class 3 Claim will be $29,599.51.

    4.2.3    The Class 2 Claim is impaired.

4.3    Class 3.    Allowed Secured Claim of Bank of Houston on Parking Garage.

    4.3.1 Classification:  Class 3 consists of the Allowed Secured Claim of Bank of Houston, secured by liens on the Parking Garage.

    4.3.2 Treatment.  The Secured Class 3 Claim of Bank of Houston shall be Allowed and paid by the Reorganized Debtor pursuant to the terms of the pre-petition loan documents, with the exception that the maturity date of the Modified Second BH Note will be extended by sixty (60) months.  Accordingly, the Modified Second BH Note will mature on June 4, 2020.  The pre-petition arrearage will be added to the principal amount owed on the note and will be paid upon maturity of the note on June 4, 2020. Bank of Houston shall retain its liens pursuant to the terms of the pre-petition loan documents.  The Debtors and Bank of Houston shall execute all documents reasonably required to reflect the

extension of the Modified Second BH Note. The monthly payment on the Class 3 Claim will be $30,332.56.

    4.3.3    The Class 3 Claim is impaired.

4.4    Class 4 Allowed Claim of Mercantile Capital Corporation / 504 SBA Loan.

    4.4.1 <u>Classification</u>: Class 4 consists of the Allowed Secured Claim of Mercantile Capital Corporation (the "Interim Lender") in the amount of $3,350,400.00, which is eligible to be converted to a permanent SBA financing (504 loan).

    4.4.2 <u>Treatment</u>. Either before or as soon as practical after the Effective Date, the Reorganized Debtors, together with the cooperation of the CDC, shall attempt to secure funding of the 504 SBA loan (the "504 Loan") in the amount of no less than $3,376,000, the proceeds of which shall be used to pay the Interim Lender in full. Subject to approval by the SBA and Interim Lender, the 504 Loan shall be reflected by a promissory note payable over 20 years with interest to accrue at 4% (or the rate determined for an SBA debenture), and shall be secured by a second lien and deed of trust on the Office Building pursuant to the terms of the pre-petition Authorization for Debenture Guarantee between the Debtors and the SBA. Until such time as the 504 Loan is approved and funded and the Interim Lender is paid in full, the Debtors shall make all regular payments and otherwise comply with the applicable loan documents.

    4.4.3    Class 4 Claim is unimpaired.

4.5    Class 5. Allowed General Unsecured Claims of $5,000 or Less

    4.5.1 <u>Classification</u>: Class 5 consists of the Allowed Unsecured Claims of $5,000 or less.

    4.5.2    <u>Treatment</u>: The Holders of Allowed Small Claims shall be paid 100% of their Allowed Claim, without interest, on the Effective Date or the date such Claims become Allowed Claims. If a creditor with an Allowed Unsecured Non-Insider Claim in excess of $5,000 wishes to have their claim treated as a Class 5 claim and paid accordingly, then the creditor will make that election on the ballot when voting, and the Allowed Claim will be limited to $5,000.

    4.5.3    Class 5 Claims are impaired.

4.6    Class 6. Allowed General Non-Insider Unsecured Claims Greater than $5,000.

    4.6.1    <u>Classification</u>. Class 6 consists of Allowed Non-Insider General Unsecured Claims Greater than $5,000.

    4.6.2    <u>Treatment</u>. Allowed Class 6 Claims shall be paid in full, with simple interest accruing from the Effective Date at the rate of 5% per annum, payable in

equal quarterly installments, beginning on the first day of the first calendar quarter following the Effective Date, and continuing on the same day of each succeeding calendar quarter for a period of twenty (20) quarters. Allowed Class 6 General Unsecured Claims shall each receive a Pro Rata share of the quarterly payments until such Allowed Claims are paid in full. The Debtors shall be allowed to offset any balance owed the Debtor by a Class 6 creditor and reduce the allowed claim accordingly prior to any payment contemplated herein. The total amount of Class 6 claims is approximately 284,495.

4.6.3    The Class 6 Claims are impaired.

4.7    Class 7 Claims of Unsecured Claims of Insiders.

4.7.1    Classification.    Class 7 consists of the Allowed Claims of Insiders, including any unsecured claim of the Richey Parties.

4.7.2    Treatment.    Allowed Class 7 Claims shall be paid in full, with simple interest accruing from the Effective Date at the rate of 5% per annum, unless such party agrees to accept a lesser amount or defer payment until all other Plan payments have been completed. For Plan purposes, the Richey Family Limited Partnership has a Class 7 claim of $1.4 million. The Plan payment to the Richey Family Limited Partnership will be deposited into the Disputed Claim Reserve until a final resolution of the Richey Parties disputed ownership interest in Midtown Scouts Square Property, LP, is resolved by agreement or by final court order/judgment.

If a court enters a final non-appealable judgment that the Richey Parties are entitled to a 27% equity interest in Midtown Scouts Square Property, LP, then upon satisfaction of the conditions set forth in Article 6.5, the $1.4 Class 7 claim shall be converted thereto and the funds in the Disputed Claim Reserve will be returned to the Reorganized Debtor. The Richey Parties have stipulated that they are no longer seeking a 50% ownership interest in Midtown Scouts Square, LLC.

The Allowed Class 7 Claims of Advanced Diagnostics Management, LLP, Chopra Imaging Centers, Inc., L. Chopra M.D., P.A., Sosa, Inc., and X-Ray X-Press Corporation, have agreed to defer payment on their Allowed Claims until Classes 1, 2 and Class 6 Claims are paid in full, and as long as there is no default in Plan payments to Classes 3 and 4 and such payments do not violate any covenants of the SBA loan documents.

4.7.3    The Class 7 Claims are impaired.

4.8    Class 8.    Allowed Interests of Equity Holders.

4.8.1    Classification:    Class 8 consists of the Allowed Equity Interests in the Debtors. Article 6.4 provides that Atul Lucky Chopra ("Chopra") is and will continue to be the sole equity holder of the Debtors.

4.8.2    <u>Treatment:</u> Article 6.4  provides that Chopra shall retain 100% of the equity interest in the Reorganized Debtors in exchange for (i) contributing $550,000 to the Reorganized Debtors on or before the Effective Date, (ii) contributing an additional $150,000 to the Reorganized Debtors within sixth months of the Effective Date, (iii) converting to equity his pre-petition unsecured claim of $260,624.36, and (iv) agreeing to convert to equity all amounts advanced to the Reorganized Debtor under the DIP Facility.  In consideration Chopra shall retain his interests in the Reorganized Debtors but shall receive no distributions until such time as the creditors in Classes 1, 3, 5 and 6 are paid in full according to the terms of the Plan, and as long as there is no default on the payments to Classes 2, 4 and 7, and such payments do not violate covenants of any SBA loan documents.

Article 6.5 provides that if a court enters a final non-appealable judgment that the Richey Parties are entitled to a 27% equity interest of Midtown Scouts Square Property, LP, then the Richey Parties shall be issued a 27% limited partnership interest in the Reorganized Debtor Midtown Scouts Square Property, LP, upon satisfaction of the terms and conditions contained within Article 6.5 herein.

4.8.3    <u>Impairment:</u>  Class 8 is impaired under the Plan.


## ARTICLE 5
## VOTING OF CLAIMS AND INTERESTS

5.1    Classes 2, 3, 5, 6 and 7 are impaired and therefore are entitled to vote on this Plan. Classes 1 and 4 are unimpaired and not entitled to vote.  Accordingly, the acceptances of Class 2, 3, 5, 6 and 7 Claims must be solicited.

5.2    The Class 8 Equity Interest Holders are impaired and therefore are also entitled to vote.

5.3    The draft form of ballot for voting on the Plan is attached hereto as Exhibit C.

## ARTICLE 6
## MEANS FOR EXECUTION OF PLAN

6.1    <u>Vesting of Property of the Estate in Reorganized Debtors</u>. On the Effective Date of the Plan, all property of the Debtors and of the Estates shall vest in the Reorganized Debtors free and clear of liens, claims and encumbrances, except as otherwise provided in the provisions of this Plan.

6.2    <u>Continuation of Business Operations.</u>  From and after the Effective Date of the Plan, the Reorganized Debtors are authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed

under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan. The cash flow of the operations and the Equity Infusion shall be used to fund payments required by the Plan. The Financial Projections and Plan Sources and Uses for the Reorganized Debtors are attached as Exhibit C to the Disclosure Statement.

6.3    <u>Directors and Officers / Management of Reorganized Debtors.</u> The Officers and Directors of the Debtor are authorized to continue as Officers and Directors of the Reorganized Debtors from and after the Effective Date of the Plan. Lucky Chopra will continue to serve as the sole member of Midtown Scouts Square, LLC and the sole limited partner of Midtown Scouts Square Property, LP. The Debtors expect to incur a monthly fee of approximately $3,000 to an affiliated management company to manage the Office Building and Parking Garage. If Option B of Article 6.5 is implemented, an unrelated management company will be retained at a market rate to manage the Office Building and Parking Garage.

6.4    <u>Equity Infusion:</u> Lucky Chopra shall (i) contribute $550,000 to the Reorganized Debtors on or before the Effective Date, (ii) agree to contribute an additional $150,000 to the Reorganized Debtors within sixth months of the Effective Date, (iii) agree to convert to equity his pre-petition unsecured claim of $260,624.36, and (iv) agree to convert to equity all amounts advanced to the Reorganized Debtor under the DIP Facility. Detail regarding the Equity Contribution, the Financial Projections and Plan Sources and Uses are attached as Exhibit C to the Disclosure Statement.

6.5    If a court having jurisdiction over the Richey Litigation issues a final non-appealable judgment that the Richey Parties own a 27% equity interest in Midtown Scouts Square Property, LP, the Reorganized Debtors shall cause to be issued limited partnership interest to the Richey Parties as follows:

| Name | Equity Percentage |
|---|---|
| Richey Family Limited Partnership, Ltd: | 17% |
| L.E. Richey | 5% |
| Todd Richey | 5% |

The conditions precedents for issuance of the foregoing 27% limited partnership interest are as follows:

i.    The Richey Parties shall execute personal guarantees of the SBA Loan in a form substantially similar to the guarantee agreements executed by the Guarantors on January 31, 2011 for the benefit of Mercantile Capital Corporation, and acceptable to the SBA;

ii.    To the extent required by the Bank of Houston, the Richey Parties shall execute personal guarantees of the two Bank of Houston promissory notes in a form substantially similar to the guarantee agreements executed by the Guarantors.

iii.    The Richey Parties shall provide the SBA personal financial statements,tax returns, and other financial reporting as required by the SBA for guarantors.

iv.    To the extent required by the Bank of Houston, the Richey Parties shall provide the Bank of Houston personal financial statements,tax returns, and other financial reporting as required by Bank of Houston for guarantors

> v. The Richey Parties waive all ownership rights to Midtown GP.
> vi. The Richey Parties shall contribute on a pro-rata basis cash to Midtown Scouts Square Property, LP, in an amount totaling 27% of the total Equity Infusion contributed by Lucky Chopra as described in Article 6.4.
> vii. To the extent the Richey Parties fail to contribute additional equity as described herein, their 27% equity interest may be treated as set forth in Section 4.2(c) of the Agreement of Limited Partnership of Midtown Scouts Square Property, LP, dated December 13, 2010.[1] Service of the Confirmation Order by US Mail upon the Richey Parties shall constitute the required notice for additional capital contributions required by the Richey Parties.
> viii. The SBA approves the inclusion of the Richey Parties as equity holders.

To be clear, if Article 6.5 is implemented, the Class 7 unsecured Claim of the Richey Family Limited Partnership, Ltd., in the amount of $1.4 million will be converted to equity.

6.6 _Restated Agreement of Limited Partnership and Company Agreement._ At the Reorganized Debtors' option, the Company Agreement of Midtown Scouts Square, LLC, and the Agreement of Limited Partnership of Midtown Scouts Square Property, LP, may be modified to prohibit the issuance of non-voting equity security to the extent required by Code § 1123(a)(6) and such other modifications as may be approved in the Confirmation Order.

If Article 6. 5 is implemented, the Agreement of Limited Partnership will be Amended and Restated. The proposed Amended and Restated Partnership Agreement is attached hereto as Exhibit B.[2] The Richey Parties shall be required to sign the Amended and Restated Partnership Agreement ("Restated LP Agreement)".

6.7 _Amended and Restated Master Lease._ On the Effective Date, the Debtors will execute an amended and restated master lease with Advanced Diagnostics Management, LLP, Chopra Imaging Center, Inc., Chopra & Associates, X-Ray X-Press Corporation and Landmark Houston Hospitality Group, LLC (collectively, "Advanced Diagnostics Healthcare") for the Office Building pursuant to the requirements of the SBA debenture guarantee agreement. Advanced Diagnostics Healthcare shall be the Operating Company under the SBA 504 Loan Guarantee Agreement.

6.8 _Disbursing Agent._ The Reorganized Debtors shall act as the Disbursing Agent. If the Reorganized Debtors choose not to act as the Disbursing Agent, then they shall designate a substitute.

6.9 _Treatment of Litigation Claims Against Debtors._ Litigation claims against Debtors shall be treated in this Plan as follows:

_Case No.2012-55272; Hicham Nafaa, Ali Bendella, and Neptunes Restaurant, LLC v. Atul Lucky Chopra, Midtown Scouts Square Property, LP, et., al._ pending in the 152nd Harris County Court: To the extent this claim, or any part thereto, become an Allowed

---

[1] A copy of the Limited Partnership Agreement may be obtained by making a written request to counsel for the Debtors.
[2] To be supplemented and filed with the Bankruptcy Court.

Claim under the terms of the Plan, it shall be treated as a Class 6 General Unsecured claim.

*Adversary Proceeding No. 13-13108 Richey Family Limited Partnership, Ltd., L.E. Richey and Todd Richey v. Midtown Scouts Square Property, LP, et. al.,* pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (removed Case No. 12-DCV-196262) formerly pending in the 268th Judicial District of Fort Bend County, Texas (the "Richey Litigation"). As described in Article 4.7 above, Richey Family Limited Partnership has an unsecured Class 7 Claim in the amount of $1.4 million, which will be paid over 60 months at 5% interest. Until the Richey Litigation is resolved with a final determination as to the Richey Parties claims of ownership of 27% of the Equity Interest in Midtown Scouts Square Property, LP, the payments on the Class 7 claim of Richey Family Limited Partnership, Ltd., shall be held in the Disputed Claim Reserve.

6.10    Exclusive Rights and Duties of the Disbursing Agent.    The duties of the Disbursing Agent shall be as follows:

      6.10.1    Distribution to Creditors with Administrative Claims.    In accordance with Article 3 the Disbursing Agent shall pay the Administrative and Priority Claims first out of Cash on hand generated from operations.

      6.10.2    Distributions to Creditors with Allowed Claims.    The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article 4.

6.11    Powers of the Disbursing Agent.    The Disbursing Agent shall have full power and authority to do the following.

      6.11.1    The Disbursing Agent shall be authorized to make disbursements to Administrative and Priority Creditors in accordance with Article 3 and other Creditors in accordance with Article 4.

      6.11.2    The Disbursing Agent shall be authorized to file all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estate.

      6.11.3    The Disbursing Agent shall be authorized to take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.

      6.11.4    The Disbursing Agent shall be authorized to employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance with such coverage and limits as

are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

6.11.5      The Disbursing Agent may suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

6.11.6      Execute any loan documents and other SBA approval documents necessary to effectuate the terms of this Plan.

6.12    <u>Presumption of Disbursing Agent's Authority</u>. In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of its engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

6.13    <u>Limitation on Disbursing Agent's Liability</u>.

6.13.1      Except gross negligence or willful misconduct, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

6.13.2      The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful default or misconduct of the Disbursing Agent.

6.14    Establishment and Maintenance of Disputed Claims Reserve:

    6.14.1    Distributions made in respect of any Disputed Claims shall not be distributed, but shall instead be deposited by the Disbursing Agent into an interest-bearing account styled "Disputed Claims Reserve". The funds in this account shall be held in trust for the benefit of the Holders of all Disputed Claims.

    6.14.2    Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any Disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the Holders of Allowed Claims and to be reserved for Disputed Claims shall be made as if all Disputed Claims were Allowed Claims in the full amount claimed by the Holders thereof. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

    6.14.3    At such time as a Disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the Debtor (including the Pro Rata share of any dividends or interest earned in respect of such distributions) shall be released from the account and paid by the Debtor to the Holder of such Allowed Claim.

    6.14.4    At such time as any Disputed Claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and returned to Debtor.

    6.14.5    The Disbursing Agent shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been Disallowed by a Final Order of the Bankruptcy Court as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Court's order of disallowance has been stayed.

6.15    Delivery of Distributions. Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

6.16    Time Bar for Cash Payments.  Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

6.17    Unclaimed Property.  If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account.  If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person.  If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to the respective Debtor and such Person shall have waived and forfeited his right to such distributions.  Nothing contained in this Plan shall require the Debtor or the Disbursing Agent to attempt to locate such Person.  It is the obligation of each Person claiming rights under the Plan to keep the Debtor and/or the Disbursing Agent advised of current address by sending written notice of any changes to the Debtor and/or the Disbursing Agent.

6.18    Fractional Dollars.  Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.19    Minimum Payment.  The minimum amount of any distribution shall be $25.  If a payment is due in an amount less than $20, then such payments is hereby waived and the funds shall be retained by the Reorganized Debtors.

6.20    Distribution Dates.  Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.  The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

6.21    Orders Respecting Claims Distribution.  After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

6.22    Avoidance Actions.  The Reorganized Debtor retains any Avoidance Actions and is authorized, but not required, to prosecute them after the Confirmation Date.  The Net Proceeds of Avoidance Actions will be distributed to Holders of Allowed Class 4 Claims (as set forth above), but compromises of Avoidance Actions may also benefit the Reorganized Debtor or

Debtor or Holders of Claims of other Classes. The Debtor does not anticipate filing any Avoidance Actions.

6.23 <u>Agreements, Instruments and Documents</u>. All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

6.24 <u>Further Authorization</u>. The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan. The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

## ARTICLE 7
### CRAMDOWN AND CLAIMS ALLOWANCE

7.1 In the event any Class rejects the Plan, the Debtors will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTORS WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES. THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

7.2 <u>Allowance of Claims under the Plan</u>. Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtors, if the parties cannot agree upon such allowance. It is expected that the Debtors and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan. The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

7.3 <u>Objection Deadline</u>. As soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

7.4 <u>Prosecution of Objections</u>. On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim may be made by the Debtor and/or Disbursing Agents.

## ARTICLE 8
## DEFAULT

8.1    If any of the following events occur, the Debtors will be in breach of this Plan ("Default"):

  8.1.1 Failure to pay any amount due under the Plan when due; or

  8.1.2 Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

8.2    Should the Debtors be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Debtors fail to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Debtors fail to make when due, at its option, may declare that the Debtors are in default of this Plan.

## ARTICLE 9
## EXECUTORY CONTRACTS AND LEASES

9.1    The Debtors hereby assumes the executory contracts and leases set forth in Exhibit A listed as "assumed" and reject all executory contracts listed as "reject."  If an executory contract is not listed on Exhibit A it shall be deemed rejected.

9.2    Any Claims arising from rejection of an executory contract or lease must be filed on or before 20 days from the Effective Date.  Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan.  Any Claims arising from rejection, if timely filed and allowed, will be paid as General Unsecured Claims.

9.3    The Debtors shall pay all cure claims in the amount listed on Exhibit A on or before 30 days after the Administrative Claims Bar Date set in paragraph 3.1, unless a Claim is filed before the Administrative Claims Bar Date in an amount different from that set forth on Exhibit A, in which case the cure claim will be paid when and if allowed by Final Order of the Bankruptcy Court.

## ARTICLE 10
## MODIFICATION OF THE PLAN

10.1    The Debtors may propose amendments and modifications of this Plan through the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice.  After the Confirmation Date, the Reorganized Debtors may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan.  After the Confirmation Date, the Debtors may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such

Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure. With respect to all proposed modifications to the Plan both before and after confirmation, the Debtors shall comply with the requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE 11
### CONDITIONS PRECEDENT

11.1  Conditions to Confirmation.  Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to the Debtors shall have been satisfied.  In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

11.2  Waiver and Nonfulfillment of Conditions to Confirmation.  Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtors.  In the event the Debtors determine that the conditions to the Plan's confirmation which they may waive cannot be satisfied and should not, in their discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

11.3  Confirmation Order Provisions for Pre-Effective Date Actions.  The Confirmation Order shall empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

11.4  Conditions to the Effective Date.  The following are conditions precedent to the effectiveness of the Plan:  (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) Debtors do not withdraw the Plan at any time prior to the Effective Date; and (iii) the Reorganized Debtors shall have sufficient Cash on hand to make the initial payments and distributions required under the Plan.

11.5  Waiver and Nonfulfillment of Conditions to Effective Date.  Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Debtors.  In the event that the Debtors determine that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in their sole discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

## ARTICLE 12
## JURISDICTION OF THE BANKRUPTCY COURT

12.1    Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

12.1.1    To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

12.1.2    To estimate, liquidate, classify or determine any Claim against the Debtor, including claims for compensation or reimbursement;

12.1.3    To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtor and any other entity having rights under the Plan as may be necessary to implement the Plan;

12.1.4    To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

12.1.5    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

12.1.6    To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

12.1.7    To adjudicate all Claims to any lien on any of the Debtors' assets;

12.1.8    To hear and determine matters concerning state, local and federal taxes pursuant to the Bankruptcy Code, including (but not limited to) sections 346, 505 and 1146 thereof and to enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtor, whether before or after confirmation, including to determine any and all tax effects of the Plan;

12.1.9    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

12.1.10     To determine all questions and disputes regarding title to assets and shares of the Debtors, Reorganized Debtors or of the Bankruptcy Estate, as may be necessary to implement the Plan;

12.1.11     To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

12.1.12     To fix the value of collateral in connection with determining Claims;

12.1.13     To enter a final decree closing the case and making such final administrative provisions for the case as may be necessary or appropriate.

12.1.14     To, (even after entry of a final decree), hear any cases enforcing Bankruptcy Code section 525.

12.2    Failure of the Bankruptcy Court to Exercise Jurisdiction. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE 13**
EFFECT OF CONFIRMATION

13.1    Binding Effect. As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, any entity acquiring property under the Plan and any Creditor, Equity Holder of the Debtor, whether or not the Claim or Interest of such Creditor or Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan, and the United States and any licensing authority. After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be. This Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 13.1.

13.2    Satisfaction of Claims and Interests. Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

13.3    Vesting of Property. Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Property of the Bankruptcy Estate shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders. Except as otherwise expressly provided in the Plan or the Confirmation Order, all assets of the Bankruptcy Estate shall vest in the Reorganized Debtors free and clear of all Claims, liens, and encumbrances. Moreover, all licenses and permits held by the Debtor shall be held by the

Reorganized Debtor. All licenses or permits held by the Debtors or the Bankruptcy Estate will be retained by the Reorganized Debtors.

13.4 <u>Discharge</u>. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtors shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

13.5 **<u>Injunction</u>. <u>The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan. All Holders of Claims shall be prohibited from asserting against the Debtors, Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim. Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan. This injunction also permits the Reorganized Debtors to enforce 11 U.S.C. §525(a) upon improper revocation or restriction of licenses.</u>**

13.6 <u>Preservation of Setoff Rights</u>. In the event that the Debtor have a Claim of any nature whatsoever against the Holders of Claims, the Debtor smay, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors of any Claim that the Debtors have against the Holder of Claims. Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right shall not be permitted unless the Creditor provides the Debtor with written notice of the intent to affect such setoff or recoupment. If the Debtors or the Disbursing Agent, as applicable, objects in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court. In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the Claim held by the Bankruptcy Estate.

13.7 <u>Releases</u>. **On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtors, and to the maximum extent provided by law, its agents, release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:**

13.7.1 **Atul Lucky Chopra, his agents, attorneys and representatives ("Insider Released Parties"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtors or the Bankruptcy Estates and/or on account of the Debtors' Cases. The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date.**

13.7.2 **The Debtors' Professionals will be released from any and all claims and liabilities other than willful misconduct or if the release is otherwise restricted by the Texas Disciplinary Rules of Professional Conduct.**

13.8  Guarantors.  Nothing herein shall be deemed to release the liability of any non-debtor guarantor to a Creditor; provided, however, that so long as the Reorganized Debtors are current with respect to all of its obligations under this Plan and the Confirmation Order Creditors may not pursue collection of their Claims from any guarantor.  If the Reorganized Debtors commit an uncured default in their obligations hereunder, including covenant defaults, then and only then may Creditors seek relief against guarantors.

13.9  Lawsuits.  On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against the Debtor except proof of Claim and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to the Debtor.  Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan.  **All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.**  All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtors or any entity proceeding in the name of or for the benefit of the Debtors against a person shall remain in place only with respect to the claim(s) asserted by the Debtors or such other entity, and shall become property of the Post-Confirmation Reorganized Debtors to prosecute, settle or dismiss as it sees fit.

13.10  Insurance.  Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtors or Reorganized Debtors in which the Debtors or any of the Debtors' representatives or agents is or was the insured party; the Reorganized Debtors shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order.  Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

13.11  U.S. Trustee Fees.  The Debtors shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismisses the case.  After confirmation, the Reorganized Debtors shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct

statement of all disbursements made by the Debtors for each month or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

13.12   Term of Stays.  Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

**ARTICLE 14**
MISCELLANEOUS PROVISIONS

14.1   Corporate/Partnership Authority.  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further partnership, board or member resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of the Debtors, all Interest Holders, and all current directors, limited partners or managers of the Debtors.

14.2   Documentation.  The Debtors, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan.  The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order.  On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by the Debtors, and Creditors, as the case may be.  All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

14.3   Integration Clause.  This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, Creditors, Equity Interests and the parties-in-interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

14.4   Primacy of the Plan and Confirmation Order.  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

14.5   Severability.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan in accordance with Article 12 hereof so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.6   No Admission.  Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtors of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the

Effective Date, be or be deemed to be a waiver of any rights which the Debtors may possess against any other party. In the event that the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtors' cases.

14.7    Bankruptcy Restrictions. From and after the Effective Date, the Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines. The Disbursing Agent may, on behalf of the Debtors, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

14.8    Governing Law. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

14.9    Closing of Case.  As soon as the Debtor has either obtained substantial consummation or otherwise performed their obligations under the Plan the Reorganized Debtor shall seek the entry of an Order of the Court closing this case.

14.10    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.11    Notices. All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

>            Midtown Scouts Square Property, LP
>            c/o Atul Lucky Chopra
>            8305 Knight Road
>            Houston, Texas 77054

with copies to:

>            Edward L. Rothberg
>            Hoover Slovacek, LLP
>            5847 San Felipe, Suite 2200
>            Houston, Texas  77057

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in

the case.  Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtors.

14.12    Validity and Enforceability.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

14.13    Plan Supplement.  Any and all exhibits or schedules not filed with the Plan shall be contained in a Plan Supplement to be filed within ten (10) days of the Confirmation Hearing.

Respectfully submitted this 12th day of May, 2012.

**MIDTOWN SCOUTS SQUARE PROPERTY, LP**

By its general partner:
Midtown Scouts Square, LLC

By:_____
     Atul Lucky Chopra, its sole member

**MIDTOWN SCOUTS SQUARE, LLC**

By:_____
     Atul Lucky Chopra, its sole member.

## EXHIBIT A – UNEXPIRE LEASES AND EXUTORY CONTRACTS

| Counter-Party | Description | Assumed / Rejected | Cure Amount |
|---|---|---|---|
| Advanced Diagnostics Management, LLP | Building Management Agreement for Office Building and Parking Garage | Assumed. However, if Article 6.5 is implemented, it will be rejected and an unrelated third party will be retained. | None. |
| Operating Company (see Article 6.7) | Master Lease for 1911 Bagby. | Debtor will execute Amended and Restated Master Lease. | None. |
| Blackfinn | Retail space at 1910 Bagby | Assumed. | N/A |
| City of Houston | Water meter easement on .3587 acre tract. | Assumed. | N/A |
| City of Houston c/o Director of Public Works | Use and Occupancy of Public Street Right of Way | Assumed. | None. |
| Houston Technology Center | Parking garage lease for 20 spaces | Assumed. | None. |
| Landmark Houston Hospitality Group (Mr. Peeples Steak + Seafood) | 1st and 2nd floor of 1911 Bagby. By agreement, will be terminated and incorporated into Amended and Restate Master Lease Agreement with Operating Company. | Rejected. | None. |
| | | | |

**EXHIBIT B – AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT**

TO BE SUPPLEMENTED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MIDTOWN SCOUTS SQUARE** | § | **CASE NO. 13-32920** |
| **PROPERTY, LP** | § | **(Chapter 11)** |
| | § | |
| **MIDTOWN SCOUTS SQUARE, LLC** | § | |
| | § | |
| | § | |
| **DEBTORS.** | § | **Jointly Administered** |
| | § | **Judge Karen K. Brown** |

## NOTICE OF FILING OF SUPPLEMENTAL EXHIBIT "B"
## TO DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION
## [RELATES TO DOCKET #147]

Midtown Scouts Square Property, LP and Midtown Scouts Square, LLC ("Debtors" or

"Midtown Scouts"), Debtors in these jointly administered Chapter 11 cases, hereby file their

supplement to the Joint Chapter 11 Plan of Reorganization [Docket #147] with the attached

Exhibit "B", more particularly entitled as follows:

### EXHIBIT B: AMENDED AND RESTATED AGREEMENT OF LIMITED
### PARTNERSHIP OF MIDTOWN SCOUTS SQUARE PROPERTY, L.P.

DATED:     September 8, 2014

Respectfully submitted,

HOOVER SLOVACEK LLP

By: ___/s/ T. Josh Judd_____
     EDWARD L. ROTHBERG
     State Bar No. 17313990
     T. JOSH JUDD
     State Bar No. 24036866
     5847 San Felipe, Suite 2200
     Houston, Texas 77057
     Telephone: 713.977.8686
     Facsimile: 713.977.5395
ATTORNEYS FOR MIDTOWN SCOUTS SQUARE
PROPERTY, LP AND MIDTOWN SCOUTS SQUARE,
LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2014, a true and correct copy of the foregoing Notice of Filing of Supplemental Exhibit "B" to Debtors' Joint Chapter 11 Plan of Reorganization has been served via the Court's ECF notification system by electronic mail to the parties listed below and/or by U.S. first class mail, postage prepaid, to the parties listed on the attached Service List.

        /s/ T. Josh Judd_____
        T. JOSH JUDD

**13-32920 Notice will be electronically mailed to:**

Annie E Catmull on behalf of Counter-Claimant Midtown Scouts Square Property, LP
catmull@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,catmullannie@gmail.com,ray@hooverslovacek.com

Annie E Catmull on behalf of Counter-Claimant Midtown Scouts Square, LLC
catmull@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,catmullannie@gmail.com,ray@hooverslovacek.com

Annie E Catmull on behalf of Debtor Midtown Scouts Square Property, LP
catmull@hooverslovacek.com,

bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,catmullannie@gmail.com,ray
@hooverslovacek.com

Annie E Catmull on behalf of Debtor Midtown Scouts Square, LLC
catmull@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,catmullannie@gmail.com,ray
@hooverslovacek.com

Annie E Catmull on behalf of Defendant Midtown Scouts Square, LLC
catmull@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,catmullannie@gmail.com,ray
@hooverslovacek.com

Annie E Catmull on behalf of Plaintiff Midtown Scouts Square Property, LP
catmull@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,catmullannie@gmail.com,ray
@hooverslovacek.com

Tara L Grundemeier on behalf of Creditor Harris County
houston_bankruptcy@publicans.com

Lisa M Hedrick on behalf of Creditor Bank Of Houston
lisa.hedrick@arlaw.com, vicki.owens@arlaw.com;craig.wilcox@arlaw.com

Lisa M Hedrick on behalf of Defendant Bank Of Houston
lisa.hedrick@arlaw.com, vicki.owens@arlaw.com;craig.wilcox@arlaw.com

Ellen Maresh Hickman on behalf of U.S. Trustee US Trustee
ellen.hickman@usdoj.gov

Jennine Hovell-Cox on behalf of Creditor AmeriPower, LLC
hovellcoxlaw@hotmail.com, hovellcox@aol.com

Yolanda M Humphrey on behalf of Creditor Midtown Management District
houbank@pbfcm.com, tpope@pbfcm.com;yhumphrey@ecf.inforuptcy.com

Peter Johnson on behalf of Interested Party Richey Family Limited Partnership, Ltd.
pjohnson@pjlaw.com, msawyer@pjlaw.com

Peter Johnson on behalf of Plaintiff Richey Family Limited Partnership, Ltd.
pjohnson@pjlaw.com, msawyer@pjlaw.com

Peter Johnson on behalf of Plaintiff L.E. Richey
pjohnson@pjlaw.com, msawyer@pjlaw.com

Peter Johnson on behalf of Plaintiff Todd Richey

{851181-00004 KJM 9/8/2014 00902082.DOCX 1}

pjohnson@pjlaw.com, msawyer@pjlaw.com

T. Josh Judd on behalf of Debtor Midtown Scouts Square Property, LP
judd@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,welborn@hooverslovacek.com

T. Josh Judd on behalf of Debtor Midtown Scouts Square, LLC
judd@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,welborn@hooverslovacek.com

T. Josh Judd on behalf of Defendant Midtown Scouts Square, LLC
judd@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,welborn@hooverslovacek.com

T. Josh Judd on behalf of Plaintiff Midtown Scouts Square Property, LP
judd@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com,welborn@hooverslovacek.com

Mazelle Sara Krasoff on behalf of Debtor Midtown Scouts Square Property, LP
krasoff@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mkrasoffbank@gmail.com,ray@hooverslovacek.com

Mazelle Sara Krasoff on behalf of Debtor Midtown Scouts Square, LLC
krasoff@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mkrasoffbank@gmail.com,ray@hooverslovacek.com

Mazelle Sara Krasoff on behalf of Defendant Midtown Scouts Square, LLC
krasoff@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mkrasoffbank@gmail.com,ray@hooverslovacek.com

Mazelle Sara Krasoff on behalf of Plaintiff Midtown Scouts Square Property, LP
krasoff@hooverslovacek.com,
bankruptcy1@hooverslovacek.com,mkrasoffbank@gmail.com,ray@hooverslovacek.com

John S Mayer on behalf of Creditor Bank Of Houston
jmayer@rossbanks.com

D. John Neese, Jr. on behalf of Counter-Claimant Midtown Scouts Square Property, LP
jneese@hmgllp.com

D. John Neese, Jr. on behalf of Debtor Midtown Scouts Square Property, LP
jneese@hmgllp.com

D. John Neese, Jr. on behalf of Debtor Midtown Scouts Square, LLC
jneese@hmgllp.com

{851181-00004 KJM 9/8/2014 00902082.DOCX 1}

D. John Neese, Jr. on behalf of Defendant Midtown Scouts Square, LLC
jneese@hmgllp.com

D. John Neese, Jr. on behalf of Defendant Atul Lucky Chopra, M.D.
jneese@hmgllp.com

D. John Neese, Jr. on behalf of Plaintiff Midtown Scouts Square Property, LP
jneese@hmgllp.com

Edward L Rothberg on behalf of Debtor Midtown Scouts Square Property, LP
rothberg@hooverslovacek.com,
mayle@hooverslovacek.com,bankruptcy1@hooverslovacek.com;hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Midtown Scouts Square, LLC
rothberg@hooverslovacek.com,
mayle@hooverslovacek.com,bankruptcy1@hooverslovacek.com;hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Defendant Midtown Scouts Square, LLC
rothberg@hooverslovacek.com,
mayle@hooverslovacek.com,bankruptcy1@hooverslovacek.com;hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Midtown Scouts Square Property, LP
rothberg@hooverslovacek.com,
mayle@hooverslovacek.com,bankruptcy1@hooverslovacek.com;hsllpbankruptcy@gmail.com

Carl O Sandin on behalf of Creditor Midtown Management District
csandin@pbfcm.com, tpope@pbfcm.com;csandin@ecf.inforuptcy.com

Owen Mark Sonik on behalf of Creditor Midtown Management District
osonik@pbfcm.com, tpope@pbfcm.com;osonik@ecf.inforuptcy.com;houbank@pbfcm.com

Richard L Tate on behalf of Counter-Defendant Richey Family Limited Partnership, Ltd.
rltate@tate-law.com, beben@tate-law.com;tdavey@tate-law.com;cboden@tate-law.com;kreis@tate-law.com;svida@tate-law.com

Richard L Tate on behalf of Counter-Defendant L.E. Richey
rltate@tate-law.com, beben@tate-law.com;tdavey@tate-law.com;cboden@tate-law.com;kreis@tate-law.com;svida@tate-law.com

Richard L Tate on behalf of Counter-Defendant Todd Richey
rltate@tate-law.com, beben@tate-law.com;tdavey@tate-law.com;cboden@tate-law.com;kreis@tate-law.com;svida@tate-law.com

Richard L Tate on behalf of Interested Party Richey Family Limited Partnership, Ltd.
rltate@tate-law.com, beben@tate-law.com;tdavey@tate-law.com;cboden@tate-law.com;kreis@tate-law.com;svida@tate-law.com

Richard L Tate on behalf of Plaintiff Richey Family Limited Partnership, Ltd.
rltate@tate-law.com, beben@tate-law.com;tdavey@tate-law.com;cboden@tate-law.com;kreis@tate-law.com;svida@tate-law.com

Richard L Tate on behalf of Plaintiff L.E. Richey
rltate@tate-law.com, beben@tate-law.com;tdavey@tate-law.com;cboden@tate-law.com;kreis@tate-law.com;svida@tate-law.com

Richard L Tate on behalf of Plaintiff Todd Richey
rltate@tate-law.com, beben@tate-law.com;tdavey@tate-law.com;cboden@tate-law.com;kreis@tate-law.com;svida@tate-law.com

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Midtown Scouts Square Property, LP
Midtown Scouts Square, LLC
Jointly Administered Case #13-32920
JOINT FULL SERVICE LIST
(Excluding Master Service List)

002 Magazine
1824 Spring Street, Studio #002
Houston, TX 77007

1911 Entertainment
8305 Knight Road
Houston, TX 77054

Advanced Diagnostic Management, LLP
8305 Knight Road
Houston, TX 77054

Boss and Hughes
7525 South Freeway
Houston, TX 77021-5928

Business FlooringSpecialists
1234 N. Post Oak, Suite 190
Houston, TX 77055

Chopra & Associates
8305 Knight Road
Houston, TX 77054

Chopra Imaging Centers, Inc.
8305 Knight Road
Houston, TX 77054

City of Houston
PO Box 1562
Houston, TX 77251

City of Houston Mechl Section - Boilers
P O Box 2688
Houston, TX 77252-2688

Daniel D. Horowitz, III
Abraham, Watkins, Nichols,
Sorrels, Agosto & Friend
800 Commerce Street
Houston, TX 77002-1776

Director of Public Works & Engineering
City of Houston
Attn: Richard P. Smith, Managing Eng.
P O Box 1562
Houston, TX 77251

Enterprise Commercial Paving
10 Stokes Street
Houston, TX 77002

Grille 5115
8305 Knight Road
Houston, TX 77054

Hearsay
8305 Knight Road
Houston, TX 77054

Hicham Nafaa, Ali Bendella, and
Neptunes Restaurant, LLC
c/o Daniel D. Horowitz, III
800 Commerce Street
Houston, TX 77002-1776

Houston Technology Center
410 Pierce Street
Houston, TX 77002

D. E. Harvey Builders
P O Box 42008
Houston, TX 77242

Interventional Vascular Diagnostics
8305 Knight Road
Houston, TX 77054

L. Chopra M.D. P.A.
8305 Knight Road
Houston, TX 77054

Lucky A. Chopra
8305 Knight Road
Houston, TX 77054

Schindler Elevator Corporation
1530 Timberwolf Dr.
Holland, OH 43528

Mighty Works Signage
7016 Hemlock
Houston, TX 77087

MLN Service Company
3931 Ann Arbor Drive
Houston, TX 77063-6301

Mr. Peeples Steak + Seafood
16 Crestwood
Houston, TX 77007

New High End Finishes
2500 Summer Street
Houston, TX 77007

Newbart Products
10424 Rockley Road
Houston, TX 77099

Nova Vision
524 East Woodland Circle
Bowling Green, OH 43402

Securities & Exchange Commission
Attn: Angela Dodd
175 W. Jackson Blvd.
Suite 900
Chicago, IL 60604-2908

Smith Mackinnon, PA
Attn Robert O. Marks
P O Box 2254
Orlando, FL 32802-2254

SOSA, Inc.
8305 Knight Road
Houston, TX 77054

Southeast Fire Protection, LP
PO Box 87728
Houston, TX 77287

Twenty Two Global Transport LP
P O Box 62588
Houston, TX 77205

X-Ray X-Press Corporation
8305 Knight Road
Houston, TX 77054

AT&T U-Verse
P O Box 5014
Carol Stream, IL 60197-5014

AT&T U-Verse
Corporate Headquarters, Legal Dept.
208 South Akard Street
Dallas, TX 75202

Dynamic Cleaning Service
958 Neptune Lane
Houston, TX 77062

Facility Solutions Group
5115 Steadmont
Houston, TX 77040

Holste & Associates, Inc.
6671 Southwest Fwy
Houston, TX 77074

Houston Downtown Management District
909 Fannin Suite 1650
Houston, TX 77010

Schindler Elevator Corporation
1530 Timberwolf Dr
Holland, Oh 43528

The Roberts Law Firm
2555 N MacGregor Way
Houston, TX 77004

Bagby Development, LLC
6300 Carmel Road, Suite 110B
Charlotte, NC 28226

Group R Sales
3421 Casablanca Way
Fallbrook, CA 92028

Ulrich Engineers, Inc
2901 Wilcrest Dr
Suite 200
Houston, TX 77042

**Midtown Scouts Square Property, LP**
**Midtown Scouts Square, LLC**
**Jointly Administered Case #13-32920**
**JOINT MASTER SERVICE LIST**

Midtown Scouts Square Property, LP
Midtown Scouts Square, LLC
8305 Knight Road
Houston, TX 77054

Ellen M. Hickman
Office of the United States Trustee
515 Rusk Room 3516
Houston, TX 77002

Eric Mundinger
Bridge Capital Corporation
2365 Rice, Suite 201
Houston, TX 77005

Harris County, et al.
Tax Assessor-Collector
P O Box 4622
Houston, TX 77210-4622

Harris County, et al.
c/o Tara L.Grundemeier
Linebarger Goggan Blair & Sampson
P O Box 3064
Houston, TX 77253-3503

Internal Revenue Service
P O Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Insolvency Section
1919 Smith MAIL STOP HOU 5022
Houston, TX 77002

Texas Comptroller of Public Accounts
Revenue Accounting Division
Bankruptcy Section
P O Box 12548
Austin, TX 78711-2548

Midtown Management District
P. O. Box 73109
Houston, Texas 77273

**Secured Creditors:**

Bank of Houston
750 Bering Drive, Suite 100
Houston, TX 77057

Mercantile Capital Corporation
60 North Court Avenue
Suite 200
Orlando, FL 32801

**20 Largest Unsecured Creditors:**

Allied Waste Services
P O Box 78829
Phoenix, AZ 85062-8829

Associated Time & Parking Controls
904 Diplomacy Row
Dallas, TX 75247

AWP Services
11410 Larkdale Drive
Houston, TX 77099

Belknap Concrete Cutting and Drilling
9030 Solon Road
Houston, TX 77064

BlackFinn
c/o 1910 Bagby, LLC
6300 Carmel Road, Suite 110B
Charlotte, NC 28226

Cueto, James
2500 Summer Street
Houston, TX 77007

Discovery Construction
701 N. Post Oak Rd. Suite 340
Houston, TX 77024

Greenberg Traurig
Attn: Neil Verma
1000 Louisiana Street, Suite 1700
Houston, TX 77002

Harrell Architects
9575 Katy Freeway, Suite 200
Houston, TX 77024

Hicham Nafaa, Ali Bendella, and
Neptunes Restaurant, LLC
c/o Daniel D. Horowitz, III
800 Commerce Street
Houston, TX 77002-1776

Krenek Architects, Inc.
7115 S. Mason Road, Suite 314
Richmond, TX 77407

Lone Star Advantage
5222 FM 1960 West, Suite 175
Houston, TX 77069

Pyrotex Systems, Inc.
P O Box 1639
Alvin, TX 77512

Richey Family Limited Partnership
PO Box 2569
Stafford, TX 77497

Scott Youngblood CPA
4512 Broadway Road
Pearland, TX 77581

State Parking Services, Inc.
1001 Texas Avenue
Houston, TX 77002

Summit Landscaping Services, Inc.
12452 Cutten Road
Houston, TX 77002

Trio Electric Ltd.
c/o Haynes and Boone, LLP
Attn: Karl Burrer
1221 McKinney Street, Suite 2100
Houston, Texas 77010

US Canvas & Awning Corporation
8331 Northern Street
Houston, TX 77071

Wholesale Restaurant Supply
1949 Bingle Road
Houston, TX 77055

Office of the Attorney General
Bankruptcy – Collection Division
P O Box 12548
Austin, Texas 78711-2548

AmeriPower, LLC
PO Box 16206
Sugar Land, TX 77496

**Parties Requesting Notice:**

Midtown Management District
c/o Carl Sandin, Owen Sonik, Yolanda Humphrey
Perdue Brandon Fielder Collins & Mott LLP
1235 North Loop West, Suite 600
Houston, TX 77008

Bank of Houston
c/o John Mayer
Ross Banks May Cron & Cavin PC
2 Riverway Suite 700
Houston, TX 77056

Mercantile Capital Corporation
c/o Eyal Berger and Brett Marks
Akerman Senterfitt, P.A.
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301

AmeriPower, LLC
c/o Jennine Hovell-Cox
Law Offices of Jennine Hovell-Cox
P O Box 16276
Sugar Land, TX 77496-6276

Richey Family Limited Partnership
c/o Peter Johnson
Law Office of Peter Johnson
P. O. Box 980877
Houston, Texas 77098-0877

Atul Lucky Chopra, M.D
c/o D. John Neese, Jr.
Hawash Meade Gaston Neese & Cicack, LLP
1221 McKinney Street, Suite 3150
Houston, TX 77056

Bank Of Houston
c/o Stephen Craig Wilcox
Adams Reese LLP
1221 McKinney St, Ste 4400
Houston, TX 77010

Harris County
c/o Tara L. Grundemeier
Linebarger Goggan Blair & Sampson, LLP
P. O. Box 3064
Houston, Texas 77253-3064

Bank of Houston
c/o Lisa M. Hedrick and Stephen Craig Wilcox
ADAMS AND REESE, LLP
4500 One Shell Square
701 Poydrass Street, Suite 4500
New Orleans, LA 70139

Midtown Management District
Carl O. Sandin, Owen Mark Sonik, and
Yolanda M. Humphrey
Perdue Brandon Fielder Collins & Mott, LLP
1235 N. Loop W, Suite 600
Houston, Texas 77008

Smith Mackinnon, PA
Attn: Robert O. Marks
P.O. Box 2254
Orlando, FL 32802-2254

# AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP

## OF

## MIDTOWN SCOUTS SQUARE PROPERTY, L.P.

### A Texas limited partnership

#### DATED EFFECTIVE AS OF



THE LIMITED PARTNERSHIP INTERESTS REPRESENTED HEREBY HAVE BEEN ACQUIRED FOR INVESTMENT AND WERE ISSUED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933 ("ACT"), OR THE SECURITIES LAWS OF ANY STATE, PURSUANT TO APPLICABLE EXEMPTIONS FROM SUCH REGISTRATION. THESE INTERESTS MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED AT ANY TIME EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS CONTAINED IN THIS INSTRUMENT, AND PURSUANT TO EITHER AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS, OR THE RECEIPT BY THE GENERAL PARTNER OF AN OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO IT THAT SUCH TRANSFER DOES NOT REQUIRE REGISTRATION UNDER ANY APPLICABLE LAWS.

## AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP

### OF

### MIDTOWN SCOUTS SQUARE PROPERTY, L.P.

THIS AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP OF MIDTOWN SCOUTS SQUARE PROPERTY, L.P. (this "**Agreement**"), dated effective as of _____ (the "**Effective Date**"), is hereby duly agreed upon, adopted, approved, ratified, and confirmed as the Agreement of Limited Partnership Agreement of Midtown Scouts Square Property, L.P., a Texas limited partnership (the "**Partnership**"), by and among the parties executing this Agreement as the Partners (as defined below) of the Partnership.

WHEREAS, the Company was formed as a Texas limited liability company by the filing of a Certificate of Formation with the Office of the Secretary of State of Texas effective September 23, 2010;

"**Effective Date**" means _____.

WHEREAS, the initial Partners of the Company have executed that certain Agreement of Limited Partnership Agreement of Midtown Scouts Square Property, L.P. dated effective as of December 1, 2010 (the "**Original Agreement**");

WHEREAS, on May 9, 2013, the Partnership filed a voluntary petition under Chapter 11 of the United States Code (the "Bankruptcy Case");

WHEREAS, on May 13, 2014, Partnership filed a Joint Chapter 11 Plan of Reorganization (the "Plan") in the Bankruptcy Case, that provides, among other things, for the admission of new Persons being admitted as Limited Partners in the Partnership;

WHEREAS, pursuant to the Plan, Atul Lucky Chopra has/will contribute the following additional equity to the Partnership:

$260,624.36 (pre-petition claim)
$299,500.00 (Bankruptcy Court approved DIP Financing through August 31, 2014

$550,000.00 on or before the Effective Date of the Plan

$150,000.00 within six months of the Effective Date of the Plan

TOTAL:    $1,260,124.36 (referred to herein as the "Chopra Additional Contribution)

WHEREAS, the parties hereto enter into this Agreement for the purposes of admitting certain new Persons as Limited Partners, issuing Interests in the Partnership to such Persons, and amending and restating the provisions regarding the governance and management of the Partnership.

## WITNESSETH:

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## FORMATION; PARTNERSHIP CERTIFICATE; FILINGS; DEFINITIONS

**1.1    Formation of Limited Partnership.** The Partners hereby enter into and form pursuant to the provisions of the Limited Partnership Act a limited partnership for the purpose and scope set forth herein below. Except as provided to the contrary in this Agreement, the rights, duties, status and liabilities of the Partners, and the formation, administration, dissolution and continuation or termination of the Partnership, shall be as provided in the Limited Partnership Act.

**1.2    Certificate of Limited Partnership.** The General Partner has filed the Certificate of Limited Partnership for the Partnership with the Secretary of State of the State of Texas.

**1.3    Filings.** The General Partner shall promptly execute and deliver such additional documents and perform such additional acts consistent with the terms of this Agreement as may be necessary to comply with the requirements of law for the formation, continuation, qualification and operation of a limited partnership under the laws of the State of Texas, for the qualification or reformation and operation of a limited partnership in each other jurisdiction (if any) in which the Partnership shall conduct business and for the admission of Limited Partners on the Closing Date. Each Limited Partner agrees to execute and deliver any documentation requested by the General Partner for such formation, qualification and continuation.

**1.4    Definitions.** As used in this Agreement, the following terms shall have the respective meanings indicated:

(a)    **"Adjusted Capital Account Deficit"** means, with respect to any Limited Partner, the deficit balance, if any, in such Limited Partner's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:

(i)    credit to such Capital Account any amounts which such Limited Partner is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to Treasury Regulation Section 1.704-2(g)(2); and

(ii)    debit to such Capital Account the items described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5) and

1.704-1(b)(2)(ii)(d)(6).

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Treasury Regulation Section 1.704-l(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(b) **"Additional Contributions"** shall have the meaning set forth in Sections 4.1 and 4.2 of this Agreement.

(c) **"Affiliate"** means, with respect to a Partner, any Person that directly or indirectly, through one or more intermediaries, controls, is controlled by or under common control with such Partner. The term "control," as used in the immediately preceding sentence, means, with respect to a Person that is a corporation, the right to exercise, directly or indirectly, more than ten percent (10%) of the voting rights attributable to the shares of the controlled corporation, and with respect to a Person that is not a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled Person.

(d) **"Agreement"** means this Agreement of Limited Partnership of Midtown Scouts Square Property, L.P.

(e) **"Appraised Value"** means, with respect to the Partnership Property, or any part thereof, the market value of such property as estimated by an independent appraiser selected by the General Partner.

(f) **"Capital Account"** shall have the meaning attributed to it in Article V of this Agreement.

(g) **"Capital Contribution"** means the total contribution to the capital of the Partnership for which a Partner is legally bound and obligated to make, which amount is designated as a Capital Contribution for such Partner pursuant to Article IV of this Agreement.

(h) **"Cash From Refinancing"** means the cash proceeds received by the Partnership from the refinancing of any Partnership indebtedness.

(i) **"Cash From Sales"** means the cash proceeds received by the Partnership from the sale, exchange or other Disposition of any item of Partnership Property.

(j) **"Certificate of Limited Partnership"** means the Certificate of Limited Partnership for this Partnership in the form and substance attached hereto as Schedule C, which was filed by the General Partner to effect the organization of the Partnership or any other certificate of this Partnership filed subsequent thereto which complies with Section 2.01 of the Limited Partnership Act.

(k) **"Closing Date"** means the date on which this Agreement is executed by the General Partner and the Limited Partners.

(l) **"Code"** or **"Internal Revenue Code"** means the Internal Revenue Code

of 1986, as amended from time to time.

(m) **"Dispose," "Disposing" and "Disposition"** mean a sale, assignment, transfer, exchange, mortgage, pledge or other disposition or hypothecation, including, but not limited to, a transfer by reason of death or the filing of voluntary or involuntary bankruptcy. For this purpose, conveyance to a spouse of a Partner in satisfaction of the spouse's community property rights in the Interest, or portion thereof, shall not be considered a gift, but shall be considered a Disposition.

(n) **"Distributable Cash From Operations"** means cash receipts from the day-to-day operations of the Partnership without deduction for depreciation or amortization of intangibles, but after deducting all cash expenses payable in a given year, including reserves established by the General Partner which are deemed to be reasonably required for the proper operation of the business of the Partnership. "Distributable Cash From Operations" does not include Cash From Refinancing or Cash From Sales.

(o) **"General Partner"** means Midtown Scouts Square, LLC, together with each other Person (if any) that subsequently becomes an additional or substituted General Partner in accordance herewith, but excluding any such Person that subsequently ceases to be a General Partner pursuant to the provisions of this Agreement. The term does not include a Person who is the transferee of a General Partner's Interest, or portion thereof, unless such Person becomes a substituted or additional General Partner.

(p) **"Gross Asset Value"** means, with respect to any Partnership Property, the property's adjusted basis for federal income tax purposes, except as follows:

> (i) the initial Gross Asset Value of any property contributed by a Partner to the Partnership shall be the gross fair market value of such property, as determined by the contributing Partner and the Partnership;

> (ii) the Gross Asset Value of all Partnership Property shall be adjusted to equal their respective gross fair market values, as determined by the General Partner as of the following times: (1) the acquisition of an additional Interest in the Partnership by any new or existing Partner in exchange for more than a *de minimis* Capital Contribution, (2) the distribution by the Partnership to a Partner of more than a *de minimis* amount of Partnership Property other than money, whether in connection with a liquidation or otherwise, and (3) the liquidation of the Partnership within the meaning of Treasury Regulation Section 1.704-l(b)(2)(ii)(g); provided, however, that adjustments pursuant to clauses (1) and (2) above shall be made only if the General Partner reasonably determines that .such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners;

> (iii) the Gross Asset Value of any Partnership Property distributed to any Partner shall be the Gross Asset Value of such property on the date of distribution;

(iv)     the Gross Asset Value of Partnership Property shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such property pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Treasury Regulation Section 1.704-I(b)(2)(iv)(m); provided, however, that Gross Asset Value shall not be adjusted pursuant to this Section 1.4(p)(iv) to the extent the General Partner determines that an adjustment pursuant to Section 1.4(p)(ii) hereof is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this Section 1.4(p)(iv); and

(v)     if the Gross Asset Value of Partnership Property has been determined or adjusted pursuant to Sections 1.4(p)(i), (ii) or (iv) hereof such Gross Asset Value shall thereafter be adjusted by the depreciation or depletion taken into account with respect to such asset for purposes of computing Profits and Losses.

(q)     **"Immediate Family"** means, with respect to any individual, the spouse, children, parents, grandparents, parents-in-law, issue, nephews, nieces, brothers, sisters, brothers-in-law, sisters-in-law, children-in-law and grandchildren-in-law of such Person.

(r)     **"Interest" or "Interests"** means the entire ownership interests and rights of a Partner in the Partnership.

(s)     **"Limited Partner" or "Limited Partners"** means each Person that is designated on the signature page hereto and that has executed this Agreement as a Limited Partner, together with each other Person (if any) that subsequently becomes an additional or substituted Limited Partner herein pursuant to Article III, but excluding any such Person that subsequently ceases to be a Limited Partner pursuant to the provisions of this Agreement.

(t)     **"Limited Partnership Act"** means the Texas Revised Limited Partnership Act Article 6132a-I of the Texas Revised Civil Statutes Annotated, as amended from time to time.

(u)     **"Majority-in-Interest"** of the Partners or a class of Partners means those Partners owning more than fifty percent (50%) of the Sharing Ratios owned by all Partners or those Partners of such class, as the case may be.

(v)     **"Major Decision"** shall have the meaning attributable to it in Section 8.1(d) of this Agreement.

(w)     **"Negative Cash Flow"** means the excess of costs, as defined below, incurred with respect to the operation of the Partnership Property over rental income from such property computed on a monthly basis. Costs considered in determining such amount shall be exclusively limited to repairs, maintenance, utilities, including waste disposal, management fees, rental commissions, state and local taxes, debt service, including principal, interest and fees on any mortgage, which are directly related to the Partnership Property. The monthly amount of Negative Cash Flow, if any, shall be

determined by the General Partner pursuant to the parameters set forth above.

(x)     **"Nonrecourse Deductions"** has the meaning set forth in Treasury Regulation Section 1.704-2(c). The amount of Nonrecourse Deductions for a Partnership fiscal year equals the excess, if any, of the net increase, if any, in the amount of Partnership Minimum Gain during that fiscal year over the aggregate amount of any distributions during that fiscal year of proceeds of a Nonrecourse Liability that are allocable to an increase in Partnership Minimum Gain, determined according to the provisions of Treasury Regulation Section 1.704-2.

(y)     **"Nonrecourse Liability"** has the meaning set forth in Treasury Regulation Section 1.704-2(b)(3).

(z)     **"Partner Minimum Gain"** means an amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if such Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulation Section 1.704-2(g).

(aa)    **"'Partner Nonrecourse Debt"** has the meaning set forth in Treasury Regulation Section 1.704-2(b)(4).

(ab)    **"Partner Nonrecourse Deductions"** has the meaning set forth in Treasury Regulation Section 1.704-2(i)(2). The amount of Partner Nonrecourse Deductions with respect to a Partner Nonrecourse Debt for a Partnership fiscal year equals the excess, if any, of the net increase, if any, in the amount of Partner Minimum Gain attributable to such Partner Nonrecourse Debt during that fiscal year over the aggregate amount of any distributions during that fiscal year to the Partner that bears the economic risk of loss for such Partner Nonrecourse Debt to the extent such distributions are from the proceeds of such Partner Nonrecourse Debt and are allocable to an increase in Partner Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with. Treasury Regulation Section 1.704-2(i)(2).

(ac)    **"Partners"** means the General Partner and the Limited Partners.

(ad)    **"Partnership"** has the meaning attributed to it in Section 1.1.

(ae)    **"Partnership Minimum Gain"** has the meaning set forth in Treasury Regulation Sections 1.704-2(b)(2) and 1.704-2(d).

(af)    **"Partnership Property"** means that certain real property described on Schedule A attached hereto, together with all rights, privileges and appurtenances attached thereto, contributed to the capital of the Partnership by the Partners and any other property purchased by the Partnership or contributed by the Partners subsequent to the execution of this Agreement.

(ag)    **"Person"** means an individual, partnership, corporation, trust, unincorporated association, or other entity or association.

(ah)    **"Profit" or "Loss"** of the Partnership shall mean an amount equal to the Partnership's taxable income or loss under Code Section 703(a) and Treasury Regulation Section 1.703-1 for the fiscal year, adjusted as follows:

(i)      all items of income, gain, loss or deduction required to be separately stated pursuant to Code Section 703(a)(1) shall be included;

(ii)      tax-exempt income as described in Code Section 705(a)(1)(B) realized by the Partnership during such fiscal year shall be taken into account as if it were taxable income;

(iii)      expenditures of the Partnership described in Code Section 705(a)(2)(B) for such year, including items treated under Treasury Regulation . Section 1.704-1(b)(2)(iv)(i) as items described in Code Section 705(a)(2)(B), shall be taken into account as if they were deductible items;

(iv)      items that are specially allocated to the Partners under Section 5.3 shall be excluded;

(v)      with respect to property (other than money) which has been contributed to the capital of the Partnership, Profit and Loss shall be computed in accordance with the provisions of Treasury Regulation Section 1.704-l(b)(2)(iv)(g) by computing depreciation, amortization, gain or loss upon the value of such property as reflected on the books of the Partnership;

(vi)      with respect to any property of the Partnership which has been revalued as required or permitted by Treasury Regulations under Code Section 704(b), the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purpose of computing Profits or Losses; and

(vii)      the difference between the adjusted basis for federal income tax purposes and the fair market value of any Partnership Property shall be treated as gain or loss from the disposition of such property in the event (1) any new or existing Partner acquires an additional Interest in the Partnership in exchange for a contribution to capital of the Partnership, and (2) such Partnership Property is distributed to a Partner as consideration for a reduction of such Partner's Interest in the Partnership or in liquidation of such Interest as defined in Treasury Regulation Section 1.704-l(b)(2)(ii)(g).

Interest paid on loans made to the Partnership by a Partner and salaries, fees and other-compensation paid to any Partner shall be deducted in computing Profit and Loss.

(ai)      **"Sixty-seven Percent of the Limited Partners"** means Limited Partners owning sixty-seven percent (67%) or more of the Sharing Ratios owned by all Limited Partners.

(aj)      **"Sharing Ratio"** means, at all times, the ratio that such Partner's Interest bears to the Interests of all Partners, and is set forth for such Partner on the Schedule B to this Agreement.

## ARTICLE II
## NAME; PURPOSE; PLACE OF BUSINESS; TERM

**2.1 Name.** The name of the Partnership shall be "Midtown Scouts Square Property, L.P.," and the business of the Partnership shall be conducted under such name or under any other name or names as the General Partner may from time to time determine to be necessary, appropriate or advisable in furtherance of the purposes of the Partnership;

**2.2 Purposes.** The purpose of the Partnership shall be to (a) own the Partnership Property, (b) hold, manage and lease the Partnership Property, (c) when necessary or desirable, dispose of the Partnership Property, and (d) take any and all action reasonably related to the foregoing purposes.

**2.3 Place of Business.** The principal office of the Partnership shall be 1911 Bagby Street, , Houston, Harris County, Texas 77002. The Partnership may, by giving notice thereof to the Limited Partners, move its principal place of business to such other place within the State of Texas as the General Partner may from time to time determine to be necessary, appropriate or advisable.

**2.4 Term.** The Partnership shall commence on the effective date of this Agreement and, unless sooner terminated as herein provided, shall continue until the close of Partnership business on December 31, 2036.

## ARTICLE III
## DISPOSITION OF AN INTEREST

**3.1 Disposition by the General Partner.** The General Partner shall have the right, without the prior consent of any Limited Partner, to effect a Disposition of its Interest in the Partnership (a) to a Person who has acquired, by merger, consolidation or otherwise, substantially all of the General Partner's assets or capital stock and continued its business; (b) to an Affiliate of the General Partner; or (c) to a corporation controlled by the General Partner. Except as provided in the preceding sentence, if the General Partner Disposes of all or any portion of its Interest in the Partnership, the Person to whom the Interest, or portion thereof, has been Disposed shall be admitted as a substituted or additional General Partner only upon the written consent of at least Sixty-seven Percent of the Limited Partners. If a General Partner shall have ceased to own any Interest in this Partnership by reason of a Disposition as described in clause (a), (b) or (c) above, then, in such event, it shall be deemed that the General Partner's successor-in-interest to such Interest in the Partnership shall have succeeded to the position of the General Partner in this Partnership and all rights and obligations of the General Partner and such successor-in-interest shall become a substituted General Partner hereunder

**3.2 Disposition by a Limited Partner.** Except as set forth in this Section 3.2, no Limited Partner shall have the right to effect a Disposition of all or any part of his Interest to any Person without (a) the prior written consent of the General Partner (which may be given or withheld in the sole discretion of the General Partner), and (b) compliance with the provisions of Sections 3.3 and 3.5. Notwithstanding anything in this Agreement to the contrary, a Limited Partner (but not a transferee of a Limited Partner who has not been admitted to the Partnership as a Limited Partner) may transfer by gift his Interest, or a portion thereof, to a member of his Immediate Family or a trust of which members of his Immediate Family are the beneficiaries; or upon death by will or intestate succession without the consent of the General Partner or

compliance with Section 3.3. Any attempted Disposition by a Partner of its Interest in contravention of this Section 3.2 shall be null and void *ab initio*.

    **3.3**    **Legality.** Notwithstanding any provision of this Agreement to the contrary except the provisions contained in Section 3.2 hereof, no Disposition by a Partner shall be effective unless (a) either (i) the Interest in the Partnership subject to such Disposition shall have been registered under the Securities Act of 1933 and any applicable state securities laws or (ii) the General Partner shall have received a favorable opinion of the Partnership's legal counsel, or of legal counsel acceptable to the General Partner, to the effect that such Disposition is exempt from registration under such laws; and (b) the General Partner shall have received a favorable opinion of the Partnership's legal counsel, or of legal counsel acceptable to the General Partner, to the effect that such Disposition would not (i) when added to the total of all other states, assignments or other Dispositions within the preceding twelve (12) months, result in the Partnership being considered to have terminated within the meaning of Code Section 708 or (ii) cause the Partnership to jeopardize its classification as a partnership for federal income tax purposes. Each Disposition shall be effective as of the first day of the calendar month immediately succeeding the month in which the Partnership actually receives the aforesaid notification of Disposition.

    **3.4**    **Status after Disposition.** No Limited Partner shall have the right, without the prior written consent of each General Partner (which consent may be granted or withheld in the sole discretion of the General Partner), to constitute its assignee as a substituted or additional Limited Partner. In addition, no Disposition by a Limited Partner shall release such Limited Partner from any of its obligations under this Agreement without the prior written consent of the General Partner (which consent may be granted or withheld in the sole discretion of the General Partner). A Person who receives an Interest but who is not admitted to the Partnership as a substituted or additional Partner shall not be entitled to vote the Interest of such Person. Such Person shall also not be entitled to Dispose of the Interest without fulfilling the conditions of Section 3.2 to the same extent and in the same manner as any Limited Partner which desires to effect a Disposition of an Interest.

    **3.5**    **Disposition Documents.** The Partnership shall not recognize for any purpose any purported Disposition of all or any portion of a Limited Partner's Interest unless and until the provisions of this Article III shall have been satisfied and there shall have been delivered to the General Partner a dated notification of such Disposition (a) executed, acknowledged and sworn to by both the Limited Partner effecting such Disposition and the Person to whom such Interest is Disposed; (b) if the assignee is to become a substituted Limited Partner pursuant to the provisions of Section 3.2, containing the acceptance by such assignee of all of the terms and provisions of this Agreement (including, without limitation, a grant by such assignee to the General Partner and any successor thereto of the power of attorney set forth in Article XI); and (c) containing a representation that such Disposition was made in accordance with all applicable laws and regulations. Each Disposition shall be effective as of the first day of the calendar month immediately succeeding the month in which the Partnership actually receives the aforesaid notification of Disposition.

    **3.6**    **Community Property Interest of Spouses.**

        (a)    In the event of the death of a Limited Partner's spouse in which the Limited Partner is not to receive by devise, inheritance or bequest his spouse's community property interest in the Partnership, or in the event of divorce from the Limited Partner, the

Limited Partner shall have the exclusive right and option to purchase all or any portion of the Interest to which the Limited Partner's spouse is entitled by virtue of any community property or other marital property laws, or any decree of separation, divorce or property division, upon the following terms:

            (i)     The purchase price to be paid for such Interest, or portion thereof, shall be determined by an appraiser agreed to and appointed by the General Partner, and the price shall be paid upon such terms as the Limited Partner and the spouse may agree, or if they cannot so agree, the terms shall be twenty percent (20%) cash with the remainder evidenced by a negotiable promissory note payable in eight (8) equal quarterly payments of principal plus quarterly interest payments thereon at an annual rate of two percent (2%) above the applicable federal rate as set forth in Code Section 1274.

            (ii)    The Limited Partner's option shall continue for a period of sixty (60) days from the date of entry of a decree of divorce or for a period of sixty (60) days from the date of qualification of the personal representative of the spouse in the event of the spouse's death, as the case may be.

            (iii)   Such option shall be considered as exercised by the Limited Partner when notice in writing thereof has been delivered or mailed, properly addressed, to his spouse or to her personal representative, as the case may be, accompanied by the purchase price.

        (b)     In the event the Limited Partner shall fail to exercise within the above prescribed periods the option provided for in Section 3.6(a) hereof, the spouse or personal representative of the spouse, as the case may be, shall notify the General Partner, who shall notify the other Limited Partners, mid the other Limited Partners and then the General Partner (pro rata in accordance with their interests) shall have the option to purchase the Interest, or portion thereof, to which such spouse is entitled pursuant to the procedures described inth.is Section 3.6(b) upon the terms and for the purchase price described in Section 3.6(a).

        (c)     In the event the Limited Partner, the other Limited Partners and the General Partner do not, within the respective times and in the manner specified, exercise their options as described above, the spouse of the Limited Partner or the personal representative of the spouse, as the case may be, shall be considered a transferee of such Interest, or portion thereof, subject to the terms of this Agreement.

## ARTICLE IV
## CONTRIBUTIONS

    **4.1**    **General Partner's Contribution.**  Prior to the Effective Date, the General Partner has contributed to the capital of the Partnership One Hundred and 00/100 Dollars ($100.00) and an undivided One percent (1%) ownership interest in and to the Partnership Property. In the event the Limited Partners are required to make additional Capital Contributions pursuant to Section 4.2, the general Partner shall also be required to deliver the Partnership an amount of cash or other property required to maintain at least a one percent (1%) sharing ratio.

    **4.2**    **Limited Partners' Contribution.**

        (a)     Pursuant to final, non-appealable court order or judgment, the following

Persons are being admitted as new Limited Partners to the Partnership in the ratio identified herein. Prior to the Effective Date, the following Limited Partners have made the initial contribution set forth opposite their names below:

| Limited Partner | Sharing Ratio | Initial Contibution |
|---|---|---|
| Richey Family Limited Partnership, Ltd. | 17.00% | $880,000.00 |
| L.E. Richey | 5.00% | $260,000.00 |
| Todd Richey | 5.00% $260,000.00 | |

(b) **Additional Contributions.** Upon the Effective Date of this Agreement and to reimburse Chopra on a pro-rata basis for the Chopra Additional Contribution, the above new Limited Partners shall make the following mandatory additional capital contributions to the capital of the Partnership in the amounts set forth opposite their names below:

| Limited Partner | Contribution |
|---|---|
| Richey Family Limited Partnership, Ltd. | $214.221.14 |
| L.E. Richey | $63.006.22 |
| Todd Richey | $63,006.22 |

(c) **Failure to Advance Additional Contributions**

(i) If any Partner should fail to deposit with the General Partner his share of the capital contributions required under this Section 4.2 or as identified in the recital paragraphs within the time required, then any one or more of the other Partners may advance such funds, and the amount so advanced shall be a loan from the Partner or Partners advancing such funds to the Partner so defaulting in his obligation hereunder. Such loan shall bear interest at the rate of ten percent (10%) per annum from the date so advanced until paid. Such loan and interest thereon shall be repaid out of the first disbursements to which the defaulting Partner would otherwise be entitled as provided in Article VI if not sooner repaid by the defaulting Partner, and each Partner hereby authorizes and directs the General Partner to make disbursements to the Partner or Partners advancing such funds in accordance with this Section 4.2, and each Partner hereby releases the General Partner from any and all claims or liability for making such disbursements. If such loan, together with interest thereon, has not been paid within thirty (30) days from the date of said advancement, then the Partner or Partners so advancing such funds shall have the option to purchase from the defaulting Partner the Interest of the defaulting Partner from the Partnership as follows:

(A) The purchase price for such Interest shall be an amount equal to one-half (1/2) of the total of all amounts actually paid an/or contributed by such defaulting Partner to the Partnership (excluding the amount advanced to the Partnership by the

purchasing Partner on behalf of the defaulting Partner as contemplated in this Section 4.2(c)(i)) for his Interest in the Partnership as set forth in this Article IV.

(B)     Such purchase price shall be paid at closing.

(C) .   Such option to purchase may be exercised by giving notice in writing, at any time within three hundred sixty five (365) days after the defaulting Partner fails to repay said advancement, stating that this option is thereby exercised and specifying the place, in the city of Houston, Texas, and the time when such purchase shall be closed.    The closing of such purchase shall be within thirty (30) days after the date of such notice, at the time and place specified in such notice.

(ii)     Each Partner hereby constitutes and appoints each other Partner its agent and attorney-in-fact for the purpose of executing and delivering any and all documents necessary to convey its Interest in the Partnership, and any conveyance so made shall fully divest the Partner whose Interest is so conveyed of all right, title or equity in or to the Partnership and its property. The power of attorney herein granted, being coupled with an interest, is irrevocable and shall not be revoked by the death of any Partner. Each Partner hereby releases the Partner who conveys any Interest in the Partnership as provided in this Article IV from any and all claims or liabilities for so conveying such Interest.

**4.3     Actions to be Taken in Connection with the Partnership Property.** Promptly after the execution of this Agreement, the General Partner shall do all acts and things necessary for the Partnership to fulfill its obligations with respect to the Partnership Property and the assumption of the liabilities associated therewith.

**4.4     Return of Contributions.** Except as may be expressly provided herein, no Partner shall be entitled to the return of its Capital Contribution or any other contribution to the Partnership, nor entitled to be paid interest in respect of either of its Capital Account or any Capital Contribution made by it to the Partnership. No unrepaid Capital Contribution shall be deemed or considered to be a liability of the Partnership or of any Partner. Except as expressly provided herein, no Partner shall be required to contribute or loan any cash or property to the Partnership to enable the Partnership to return any Partner's contributions to the Partnership or to balance Capital Accounts.

## ARTICLE V
## CAPITAL ACCOUNTS AND ALLOCATIONS

**5.1     Capital Accounts.** A Partnership Capital Account shall be established for each Partner and shall be maintained for each Partner in accordance with the following provisions:

(a)     The Capital Account of each Partner shall be (i) credited with the amount of cash and the Gross Asset Value of any property contributed to the Partnership by such Partner and with any profits allocated to such Partner pursuant to Section 5.2 and (ii) debited with the amount of cash and the fair market value of any property distributed to such Partner by the Partnership and with any losses allocated to such Partner pursuant to Section 5.2.

(b)     In the event the Gross Asset Value of Partnership Property is adjusted

pursuant to Code Sections 734(b) or 743(b), the Capital Accounts of all Partners shall be adjusted simultaneously to reflect any adjustment to the adjusted basis of such Partnership Property to the extent provided by Treasury Regulation Section 1.704-1(b)(2)(iv)(m).

(c)　　In the event all or a portion of an Interest is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor Partner to the extent it relates to the transferred Interest.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulation Sections 1.704-I(b) and 1.704-1(c) and shall be interpreted and applied in a manner consistent with such Treasury Regulations. In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with such Treasury Regulations, the General Partner may make such modification, provided that it is not likely to have a material affect on the amounts distributable to any Partner upon the dissolution of the Partnership. The General Partner shall also (i) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Partners and the amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes, in accordance with Treasury Regulation Section L704-1(b)(2)(iv)(q), and (ii) make any appropriate modifications in the event unanticipated amounts might otherwise cause this Agreement not to comply with Treasury Regulation Section 1.704-1(b).

**5.2** **Allocation of Profits and Losses.** All Profits and Losses of the Partnership shall be allocated to the Partners in accordance with their respective Sharing Ratios.

**5.3** **Overriding Allocations.** Notwithstanding any other provisions of this Agreement, the following allocations shall be made prior to any other allocations and in the following order of priority:

(a)　　**Minimum Gain Chargeback.** If there is a net decrease in Partnership Minimum Gain during any fiscal year so that an allocation is required by Treasury Regulation Section 1.704-2, items of income and gain shall be allocated to the Partners in the manner and to the extent required by such provision. This provision is intended to comply with the minimum gain chargeback requirement of Treasury Regulation Section 1.704-2(f) and shall be interpreted and applied consistently therewith.

(b)　　**Partner Minimum Gain Chargeback.** If there is a net decrease in the minimum gain attributed to a Partner Nonrecourse Debt during any fiscal year so that an allocation is required by Treasury Regulation Section 1.704-2(i)(4) (minimum gain chargeback attributed to a partner nonrecourse debt), items of income and gain shall be allocated in the manner and to the extent required by such provision.

(c)　　**Qualified Income Offset.** If a Limited Partner unexpectedly receives any adjustment, allocation or distribution, described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) or (6), items of Partnership income and gain shall be specially allocated to such Limited Partner in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Adjusted Capital Account Deficit of such Limited Partner as quickly as possible provided that an allocation pursuant to this Section 5.3(c) shall be made only if: and to the extent that, such Limited Partner would have an Adjusted Capital Account Deficit

after all other allocations provided for in this Article V tentatively have been made as if this Section 5.3(c) was not in the Agreement

(d) **Partner Nonrecourse Deductions.** Any Partner Nonrecourse Deductions shall be allocated to the Partner who bears the economic risk of loss with respect to the loan giving rise to such deductions within the meaning of Treasury Regulation Section 1.752-2.

(e) **Nonrecourse Deductions.** Nonrecourse Deductions for any fiscal year or other period of the Partnership shall be specially allocated one percent (1%) to the General Partner and ninety-nine percent (99%) to the Limited Partners.

### 5.4 Other Allocation Rules.

(a) For purposes of determining the Profits and Losses of the Partnership, Profits and Losses shall be determined on a daily, monthly or other basis, as determined by the General Partner using any permissible method under Code Section 706 and the Treasury Regulations promulgated thereunder.

(b) All allocations to the Partners pursuant to this Article V shall, except as otherwise provided, be divided among them in accordance with their Sharing Ratios.

(c) Solely for purposes of determining a Partner's share of the "excess nonrecourse liabilities" of the Partnership within the meaning of Treasury Regulation Section 1.752-3(a)(3), the Partners intend that they be considered sharing the profits of the Partnership in proportion to their respective Sharing Ratios.

### 5.5 Code Section 704(c) Allocations.
In accordance with Code Section 704(c) and the Treasury Regulations promulgated thereunder, income, gain, loss and deduction with respect to any property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Gross Asset Value (computed in accordance with Section 1.4(p)(i) hereof).

In the event the Gross Asset Value of any property is adjusted pursuant to Section 1.4(p)(ii) hereof, subsequent allocations of income, gain, loss and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as under Code Section 704(c) and the Treasury Regulations promulgated thereunder.

Any elections or other decisions relating to such allocations shall be made by the General Partner in any manner that reasonably reflects the purpose and intention of this Agreement. Allocations pursuant to this Section 5.5 are solely for purposes of federal, state and local taxes and shall not affect., or in any way be taken into account in computing, any Partner's Capital Account or share of Profits, Losses, or other items or distributions pursuant to any provision of this Agreement.

### ARTICLE VI
### DISTRIBUTIONS

**6.1 Distributable Cash From Operations.** The General Partner shall pay or distribute, as soon as is reasonably feasible after the close of each calendar year, all Distributable

Cash From Operations for such calendar year, in the following order of priority:

(a)     to the payment of accrued interest on and principal of any Partnership indebtedness due and payable (other than indebtedness due and payable to Partners);

(b)     to the payment of accrued interest on and principal of any Partnership indebtedness due and payable to Partners;

(c)     to the provision for the repayment of principal and of interest on any Partnership debt.

(d)     to the Partners in an amount as is necessary to cause the Capital Accounts of the Partners to be in the proper ratio to their Sharing Ratios (but not in violation of the terms of the Plan); and

(e)     to the Partners in accordance with their Sharing Ratios (but not in violation of the terms of the Plan).

**6.2     Cash From Sales and Cash From Refinancing.** The General Partner shall pay or distribute, as soon as is reasonably feasible after the sale of any of the property comprising the Partnership Property or any other item of Partnership property, all Cash From Sales received by the Partnership, subject to the establishment of reasonable reserves deemed by the General Partner to be required for any remaining liabilities which cannot reasonably be paid or determined, and all Cash From Refinancing in the following order of priority:

(a)     to the payment of accrued interest on and principal of any Partnership indebtedness due and payable (other than indebtedness due and payable to Partners);

(b)     to the payment of accrued interest on and principal of any Partnership indebtedness due and payable to Partners;

(c)     to the provision for the repayment of principal and of interest on any Partnership debt;

(d)     to the Partners in an amount as is necessary to cause the Capital Accounts of the Partners to be in the proper ratio to their Sharing Ratios (but not in violation of the terms of the Plan); and

(e)     to the Partners in accordance with their Capital Accounts (but not in violation of the terms of the Plan).

**6.3     Allocations and Distributions Among the Limited Partners.** Except as expressly provided otherwise in other sections of this Agreement, all allocations and distributions to the Limited Partners as a group pursuant to this Agreement shall be allocated and distributed to each Limited Partner in the ratio which that Limited Partners Sharing Ratio bears to the aggregate of the Sharing Ratios of all Limited Partners.

**6.4     Amounts Withheld.** All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any payment or distribution to the Partnership, the General Partner or the Limited Partners shall be treated as amounts distributed to the General

Partner and the Limited Partners pursuant to this Article VI for all purposes under this Agreement. The General Partner may allocate any such amounts among the General Partner and the Limited Partners in any manner that is in accordance with applicable law.

## ARTICLE VII
## ADMINISTRATIVE AND TAX MATTERS

**7.1 Books and Records.** The books and records of the Partnership shall be kept, at the expense of the Partnership by the General Partner at the principal office of the Partnership on a year ending December 31st on the cash basis for all purposes, unless the cash basis cannot be used, in which event the accrual basis, and shall reflect all Partnership transactions and be appropriate and adequate for conducting the Partnership business. On or before the due date of the Partnership's federal tax return (including extensions thereof) for each calendar year, there shall be delivered to each Partner a statement setting forth the Partner's distributive share of Partnership income, gain, loss, deduction or credit required to be shown on the Partnership's federal tax return and, to the extent provided for by form or accompanying instructions, any additional information that may be required to apply particular provisions of Subtitle A of the Code to the Partner with respect to items related to the Partnership.

**7.2 Inspection.** Each Partner, or its agents, shall have the right, upon giving ten (10) business days' prior written notice to the General Partner, to inspect the books and records of the Partnership during reasonable business hours at the principal place of business of the Partnership.

**7.3 Bank Accounts.** All funds of the Partnership shall be deposited in its name in an account or accounts maintained in a national bank in the State of Texas having assets in excess of One Hundred Million and No/100 Dollars ($100,000,000.00). The funds of the Partnership shall not be commingled with the funds of any other Person. Checks shall be drawn upon the Partnership account or accounts only for the purposes of the Partnership, and shall be signed by such signatory party or parties as may be designated from time to time by the General Partner.

**7.4 Basis Election.** If there is a distribution of property as described in Code Section 734, or if there is a transfer of a Partnership Interest as described in Code Section 743, the General Partner may, upon the written request of any Partner, file on behalf of the Partnership an election under Code Section 754 to provide for an optional adjustment to the basis of the Partnership Property.

**7.5 Subchapter K Election.** No election shall be made by the Partnership or by any Partner to be excluded from the application of the provisions of Subchapter K of Chapter 1 of Subtitle A of the Code or any similar provisions of applicable state tax laws.

**7.6 Status of Creditor.** No creditor who makes a nonrecourse loan to the Partnership shall have or acquire, at any time as a result of making the loan, any direct or indirect interest in the profits, capital or property of the Partnership other than as a secured creditor.

**7.7 Partnership Level Tax Audits.** The Partners recognize that Midtown Scouts Square, LLC will be treated as the "tax matters partner" of the Partnership pursuant to Code Section 6231(a)(7). Midtown Scouts Square, LLC shall take such action as may be necessary to cause all Partners to become "notice partners" within the meaning of Code Section 6223, *et seq.* Midtown Scouts Square, LLC, shall keep all other Partners informed of all matters which may come to its attention in its capacity as tax matters partner by giving the other Partners notice thereof within thirty (30) days after it becomes informed of any such matter. Midtown Scouts

Square, LLC shall not take any action contemplated by Code Sections 6223 through 6233 unless it has first given the other Partners notice of the contemplated action and received the consent to such contemplated action of a Majority-in-Interest of the Limited Partners. This provision is not intended to authorize Midtown Scouts Square, LLC to take any action which is left to the determination of an individual Partner under Code Sections 6223 through 6233.

## ARTICLE VIII
## MANAGEMENT; LIMITATIONS; MEETINGS; STANDARD OF CARE; INDEMNIFICATION; EXPENSES; COMPENSATION; REMOVAL; OTHER FEES

### 8.1 Management.

(a) Except as provided for Major Decisions or as otherwise expressly provided in this Agreement, all decisions respecting any matter set forth herein or otherwise affecting or arising out of the conduct of the business of the Partnership shall be made by the General Partner, and the General Partner shall have the exclusive right and full authority to manage, conduct and operate the Partnership business. Specifically, but not by way of limitation, the General Partner shall use reasonable efforts:

(i) to obtain permanent financing for the development of the Partnership Property;

(ii) to enter into appropriate contracts to carry on the business of the Partnership;

(iii) to supervise the maintenance and operation of the properties for which the Partnership is responsible in a manner which satisfies in all respects the obligations imposed on the Partnership with respect to such maintenance and operation by this Agreement, by any mortgages encumbering such property from time to time, and by lease or rental agreements pertaining to such property;

(iv) to rent vacant space within rental properties for which the Partnership is responsible;

(v) to collect all rentals, lease payments and other income which become due with respect to rental properties for which the Partnership is responsible;

(vi) to inspect all properties for which the Partnership is responsible at regular intervals, and to be kept informed as to the condition of the same;

(vii) to attend to the making of necessary and proper capital improvements and repairs and the purchasing of supplies necessary for the proper operation, maintenance and repair of all properties for which the Partnership is responsible;

(viii) to obtain and continue in force all policies of insurance required by any mortgage, lease or other agreement relating to all properties for which the Partnership is responsible;

(ix) to pay any and all taxes, charges and assessments that may be

levied, assessed or imposed upon any of the assets of the Partnership, unless the same are contested by the General Partner; and

(x) to pay on or before the due date thereof all amounts due and payable by the Partnership to any Person or entity.

(b) With respect to all of its obligations, powers and responsibilities under this Agreement, the General Partner is authorized to execute and deliver, for and on behalf of the Partnership, such notes and other evidences of indebtedness, contracts, agreements, assignments, leases, loan agreements, mortgages, deeds to secure debt and other security instruments, and deeds and any and all other documents and instruments as it may deem proper, all on such terms and conditions as it deems proper. The General Partner, for and in the name of and on behalf of the Partnership is hereby further authorized to (i) employ such agents, employees, managers, supervisors, architects, engineers, accountants, attorneys, real estate management companies, management service companies, consultants and other persons necessary or appropriate to carry out the business and affairs of the Partnership, and to pay such fees, expenses, salaries, wages and other compensation to such persons as it shall determine;(ii) pay, extend, renew, modify, adjust, submit to arbitration, prosecute, defend or        compromise, upon such terms as it may determine and upon such evidence as it may deem sufficient, any obligation, suit, liability, cause of action or claim, either in favor of or against the Partnership; and (iii) make any and all expenditures which it reasonably deems necessary or appropriate in connection with the management of the affairs of the Partnership and the carrying out of its obligations and responsibilities under this Agreement.

(c) Except as otherwise expressly provided for Major Decisions or as otherwise expressly provided in this Agreement, all decisions respecting any matter set forth herein or otherwise affecting or arising of the conduct of the business of the Partnership may be made by the General Partner, and the General Partner shall have the right and full authority to manage, conduct and operate the Partnership business. Any document or instrument which the General Partner is authorized to execute as herein provided shall be valid and binding on the Partnership and effective for all purposes.

(d) Notwithstanding the foregoing provisions, no significant act shall be taken, sum expended, decision made or obligation incurred by the Partnership or any Partner with respect to any matter involving any Major Decision unless such act, sum, decision or obligation has been approved by a Majority-in-Interest of the Partners. The Major Decisions shall include:

(i) acquisition of any land or interest therein;

(ii) all financing of Partnership (except obtaining permanent financing for the development of the Partnership Property, which decision shall be made solely by the General Partner);

(iii) sale, lease or other transfer or mortgaging or the placing or suffering the placing of any encumbrance on the assets of the Partnership or any parts thereof;

(iv) selecting or varying depreciation and accounting methods, changing the fiscal year of the Partnership or making other decisions with respect to treatment of various transactions for bookkeeping or tax purposes;

(v) approval of all construction and architectural contracts and all architectural plans, specifications and drawings prior to the construction of any improvements contemplated thereby;

(vi) approval of each budget;

(viii) determination of the maximum and minimum working capital requirements of the Partnership;

(ix) development of an annual marketing plan for the properties for which the Partnership is responsible, including the advertising program, public relations program and marketing budget; and

(x) any other decision or action which, by the provisions of this Agreement, is required to be approved by all the Partners.

**8.2     Meetings of Partners.** Any matter requiring the consent of the Partners, including any amendment to this Agreement, may be considered at a meeting of the Partners held not less than seven (7) nor more than thirty (30) days after a notice of such meeting, stating the date, time and place where such meeting is to be held and the purposes for which it is called, is delivered to the Partners in accordance with the provisions of Section 12.3. The General Partner, or Limited Partners owning thirty-three and one-third percent (33-1/3%) of the aggregate Sharing Ratios owned by all Limited Partners, may call a meeting. The General Partner shall give the aforementioned notice of meeting upon the written request of Limited Partners owning such thirty-three and one-third percent (33-1/3%) of said Sharing Ratios. The presence at such meeting in person or by proxy of a Majority in-Interest of the Limited Partners shall constitute a quorum for the transaction of business. Except as otherwise expressly provided in this Agreement, all decisions of the Partners pursuant to this Section 8.2 shall be made by the concurring vote of the General Partner and Sixty-seven Percent of the Limited Partners. The Limited Partners do not acquire pursuant to this Section 8.2 or by reason of the calling of any meeting any right herein to determine any matter relating to the Partnership except as expressly elsewhere specifically stated

**8.3     Standard of Care; Conflicts.** In the performance of its duties under this Agreement, the General Partner shall use its best efforts to conduct the business of the Partnership in a good and businesslike manner and in accordance with sound business practice in the industry. The General Partner shall not be held liable or responsible to any Partner or to the Partnership for any losses sustained or liabilities incurred in connection with or attributable to errors in judgment of the General Partner, excluding those which are attributable to a General Partner's gross negligence, bad faith or willful misconduct The Partners acknowledge that the General Partner and its Affiliates are engaged in activities other than the activities of the Partnership, and that the General Partner shall not be required to devote its full time to the management of the Partnership. The Partners also acknowledge that the General Partner may be a general partner of other limited partnerships, each of which may have investment objectives similar to the Partnership, and the General Partner and/or its Affiliates may own or acquire or have interests in other real estate projects which may create certain conflicts of interest between the Partnership and such other ownership, interest and projects, and agree that such activities by the General Partner and its Affiliates, even though in competition with the Partnership, shall not constitute a breach of this Agreement or any duty hereunder.

**8.4     Indemnification of the General Partner.** The General Partner shall be indemnified and held harmless by the Partnership, to the extent that the Partnership assets are

sufficient therefor, from and against any and all claims, demands, liabilities, costs, damages and causes of action arising out of the General Partner's management of the Partnership affairs, except where the claim at issue is based upon gross negligence, bad faith, breach of any material provision of this Agreement or willful misconduct of the General Partner. The indemnification rights herein contained shall be cumulative of, and in addition to, any and all rights, remedies and recourses to which the General Partner shall be entitled. The indemnification authorized by this Section 8.4 shall include the payment of reasonable attorneys' fees and other expenses incurred in settling or defending any claims, threatened action or finally adjudicated legal proceedings. In addition, the indemnification authorized by this Section 8.4 shall be subject to all procedural and other provisions as may now or hereafter be provided by applicable law.

**8.5    Other Permitted Fees and Expenses.** In connection with the conduct, operation and sale of the Partnership Property and the operation of the Partnership, the General Partner, on behalf of the Partnership, shall be authorized to incur such expenses as are in the General Partner's reasonable judgment necessary, appropriate or advisable for such purposes; provided, however, that no such expense shall be incurred other than at a price which reflects a competitive market rate for such expense; and provided further, that no contract or arrangement entered into by the General Partner on behalf of the Partnership with the General Partner or an Affiliate shall be on terms less advantageous to the Partnership than that generally available from an unaffiliated third party.

**8.6    Sale of the Partnership Property; Term Sales; Buyer's Promissory Notes.**

(a)    Subject to the provisions of Section 8.1 hereof, the General Partner shall cause the Partnership to sell the Partnership Property at such times and at such prices as it deems to be in the best interest of the Partnership.

(b)    The General Partner shall not sell any part of the Partnership Property to an Affiliate or to itself at a price less than one hundred percent (100%) of Appraised Value (determined not more than three (3) months prior to such sale).

(c)    The General Partner, if it deems it to be in the best interest of the Partnership, may sell part of the Partnership Property for a consideration which in addition to cash includes a buyer's promissory note ("Buyer's Promissory Note") secured by a mortgage on the sold part of the Partnership Property ("Term Sale"). Any Term Sale may be made only if the Buyer's Promissory Note has an interest rate not lower than two (2) percentage points over the then current yield on United States Treasury Bills having approximately a five (5) year maturity. For purposes of Section 1.4(p), a Buyer's Promissory Note shall be deemed to have a value equivalent to the original principal amount of such note.

(d)    The General Partner may sell the Buyer's Promissory Note as it deems advisable but shall sell such note no later than the date distributions pursuant to Section 10.2 are made. If the General Partner sells the Buyer's Promissory Note pursuant to this Section 8.6(d) but is unable to find a non-Affiliate as a buyer, the General Partner may agree to purchase the Buyer's Promissory Note at the current fair market value as estimated not more than one (1) month prior to the purchase by an independent appraiser selected by the General Partner; provided, however, prior to purchasing such Buyer's Promissory Note, the General Partner will offer to sell the Buyer's Promissory Note to the Limited Partners who will be entitled to purchase such note for cash at a price not less than the price determined by the independent appraiser pursuant to this Section 8.6.

**8.7    Removal of General Partner.** Upon thirty (30) days' prior written notice, and with the written consent of Sixty-seven Percent of the Limited Partners, a General Partner may be removed for any act which constitutes fraud, gross negligence or willful misconduct, provided that the written consent of the Limited Partners designates a substitute General Partner. In the event a General Partner remains after such removal, a substitute General Partner need not be named by the Limited Partners.

Upon removal of the General Partner, a Majority-in-Interest of the Limited Partners shall select an appraiser to value the assets of the Partnership at their then current fair market value and to determine the distribution to which the removed General Partner would be entitled had the property of the Partnership been sold on the date of such removal. The distribution that the removed General Partner would have received on such date shall be reduced by any damages and costs caused to the Limited Partners or the Partnership by reason of any of the foregoing causes for removal and costs of removal. Such amount, without interest, shall be paid to the removed General Partner, if funds are available, in the priority set forth in Section 6.2.

Nevertheless, the removed General Partner may also select an appraiser to value the assets of the Partnership at their then current fair market value and to determine the distribution to which the removed General Partner would be entitled had the property of the Partnership been sold on the date of such removal. If the distribution determined by the Limited Partners' appraiser and the General Partner's appraiser differ by an amount equal to or less than Twenty-five Thousand and No/100 Dollars ($25,000.00), the average of the two (2) shall be used. If the difference exceeds Twenty-five Thousand and No/100 Dollars ($25,000.00) then the Partnership shall be dissolved and its assets distributed pursuant to Article X.

In lieu of electing to continue the business of the Partnership upon removal of a General Partner by designating a successor General Partner, any remaining General Partner and the Limited Partners may dissolve the Partnership pursuant to Section 10.1(d) hereof. Any successor General Partner shall succeed to all the powers, privileges and obligations with respect to the management of the Partnership of the former General Partner.

**8.8    No Right to Withdraw.** Although the General Partner may have the power under the Limited Partnership Act to withdraw from the Partnership at any time, the General Partner shall not have the right to withdraw from the Partnership without the prior designation of a substitute General Partner and the written consent of a Majority-in-Interest of the Limited Partners. Any withdrawal by the General Partner without such consent shall be a breach of this Agreement.

## ARTICLE IX
## STATUS LIABILITY AND REPRESENTATIONS
## OF LIMITED PARTNERS; RELIANCE AND CONSENT

**9.1    General.** Each Limited Partner shall have all of the rights, and be afforded the status, of a limited partner as set forth herein and in the Limited Partnership Act. The Limited Partners shall not take part in the day-to-day management or control of the Partnership business, transact any business for the Partnership, or have the power to sign for or bind the Partnership.

**9.2    Limitation of Liability.** The liability of each Limited Partner shall be limited to (a) the amount which he has contributed and agreed to contribute to the Partnership pursuant to Article IV, and (b) the total amount of all Capital Contributions returned to such Limited Partner together with interest thereon necessary to discharge Partnership liabilities to all creditors who extended credit, or

whose claims arose, before such return.

**9.3     Representations of the Limited Partners.** Each Limited Partner hereby represents and warrants to the Partnership and all other Partners that:

(a)     he has received information concerning the Partnership, has thoroughly read the information and understands the nature of the risks involved in the proposed investment, and has asked any questions of the General Partner which he desires to ask and has received answers or other information from the General Partner with respect to all such questions;

(b)     he understands that no state or federal governmental authority has or will make any finding, determination, recommendation or endorsement relating to the fairness for public investment of the interests in the Partnership offered by the Partnership;

(c)     he understands that the transferability of Interests is restricted and that he cannot expect to be able readily to liquidate his investment in case of emergency and that he may have to continue to bear the risk of holding his Interest for an indefinite period;

(d)     he is making such investment for his own account and not for the account of others, and is not buying with the present intention of reselling, transferring or subdividing all or any portion of the Interests in the Partnership purchased and presently intends to hold the same for the term of the Partnership;

(e)     he understands that in the absence of either an effective registration statement covering the Interests in the Partnership under the Securities Act of 1933 and any applicable state securities laws, or an opinion of counsel satisfactory to the General Partner that registration is not required under Act and securities laws, he may not sell his Interest in the Partnership; and

(f)     he understands that the Internal Revenue Service may disallow some or all of the deductions or losses to be claimed by the Partnership or make other adjustments to the items of Partnership income deduction, gain, loss or credit.

**9.4     Consent and Ratification.** To the extent that any action that the General Partner is entitled to take pursuant to this Agreement requires, pursuant to the Limited Partnership Act, the consent to or ratification of all or any of the Limited Partners (including consent to or ratification of a reconstitution provided for in Article X), the Limited Partners hereby acknowledge that their execution of this Agreement shall conclusively be deemed to be the granting of such consent and ratification.

## ARTICLE X
## DISSOLUTION; WINDING UP

**10.1     Dissolution.** The Partnership shall be dissolved upon the first to occur of the following:

(a)     the expiration of the term provided in Section 2.4;

(b)     the sale of all, or substantially all, of the Partnership Property;

(c)     the General Partner's bankruptcy or dissolution; or

(d)     the written consent of the General Partner and a Majority-in-Interest of the Limited Partners.

Neither the death, dissolution, mental incompetency or bankruptcy of any Limited Partner nor the admission or substitution of a Person as a Partner in accordance with the terms hereof shall dissolve, or be deemed to dissolve, the Partnership or cause any interruption in or affect the continued existence of the Partnership and its business. Upon the occurrence of any event of dissolution referred to hereinabove, the General Partner and a Majority-in-Interest of the Limited Partners may elect to reconstitute the Partnership, with the exception that if such event of dissolution occurs pursuant to Section 10(c) hereof, a Majority-in-Interest of the Limited Partners may elect to reconstitute the Partnership unless such insolvent or bankrupt General Partner was the sole General Partner of the Partnership, in which case all Limited Partners may elect within ninety (90) days of the date of the insolvency or bankruptcy to reconstitute the Partnership. If such remaining Partners so elect, they may continue the business of the Partnership, either alone or with other Persons, without winding up and liquidating the affairs of the Partnership. In the event of such a dissolution and reconstitution, the Partnership shall have no obligation to pay any Partner the value of its Interest with the exception that if such event of dissolution occurs pursuant to Section 10(c) hereof and the Limited Partners elect to reconstitute the Partnership, the bankrupt or insolvent General Partner may be paid in accordance with the provisions for payment set forth in Section 8.7 hereof relating to removal of the General Partner.

**10.2     Distribution of Assets.** If the Partnership is dissolved, an accounting of the Partnership assets, liabilities and operations through the last day of the month in which the dissolution occurs shall be made by independent accountants, and the affairs of the Partnership shall be wound up and terminated. The General Partner shall serve as the liquidating trustee, unless dissolution occurs by reason of Sections 10.1(c) and 10.1(d), in which event the liquidating trustee shall be selected by any remaining General Partner and a Majority-in-Interest of the Limited Partners. The liquidating trustee shall be responsible for winding up and terminating the affairs of the Partnership and shall determine all matters in connection therewith as it deems advisable and proper. The liquidating trustee shall sell for cash as rapidly as is reasonably prudent all Partnership Properties at such prices as the liquidating trustee, in the exercise of its business judgment, deems in the best interests of the Partners. The liquidating trustee may sell the Partnership Property to one(l) or more of the Partners or to an entity with which one (1) or more of the Partners is affiliated, provided that the purchase price offered by such purchaser is at least as favorable to the Partnership as that offered by Persons who are not Affiliates of any Partner. The proceeds of such sales shall be distributed or paid pursuant to the provisions of Section 6.2.

Notwithstanding anything to the contrary in this Section 10.2, the liquidating trustee may not sell the Partnership Property without the consent of Sixty-seven Percent of the Limited Partners, except to the extent required to pay creditors of the Partnership or to the extent permitted by Section 8.7 hereof.

**10.3     Termination.** After all of the assets of the Partnership have been distributed, the Partnership shall terminate; but if at any time thereafter any funds in any cash reserve fund are released because the need for such cash reserve fund has ended, such funds shall be distributed and any tax items therefrom shall be allocated to the Partners in the same manner as if such distribution and allocation had been made pursuant to Section 10.2.

## ARTICLE XI
## COVENANTS OF GENERAL PARTNER;

## POWER OF ATTORNEY

**11.1 Covenants of the General Partner.** The General Partner covenants, warrants and represents to the Limited Partners and the Partnership as follows:

(a) upon execution and delivery of this Agreement and the filing of the Certificate of Limited Partnership with the Secretary of State of the State of Texas, the Partnership will be a limited partnership duly organized under the laws of the State of Texas, validly existing as a limited partnership in good standing under such laws, with power and authority to own and operate the Partnership Property;

(b) there is no litigation or governmental proceeding pending or, to the best of its knowledge, threatened against or involving the property or business of the Partnership or the General Partner, or pending or, to the best of its knowledge, threatened against or involving any part of the Partnership Property;

(c) the General Partner is not in violation of this Agreement, and neither the Partnership nor the General Partner is in default in the performance of any obligation, agreement or condition contained in any agreement of the Partnership or in any agreement by which the Partnership or the Partnership Property is bound which would materially adversely affect the Partnership or the Partnership Property or in any agreement of the General Partner by which it or any of its property is bound which would materially adversely affect the Partnership or the Partnership Property;

(d) the execution and delivery of this Agreement, the fulfillment of the terms set forth herein and the consummation of the transactions contemplated herein will not conflict with or constitute a breach of or default under any other agreement, indenture or instrument by which the Partnership or the General Partner are bound; and

(e) the Partnership intends to hold all required permits, licenses, orders or approvals required by any federal, state, local or other regulatory body, and all easements and required utility capacities necessary to carry on its business and to operate the Partnership Property.

**11.2 Grant of Power of Attorney.** Each Partner does hereby irrevocably make, constitute and appoint the General Partner and any successor thereto, each with full power of substitution., its true and lawful attorney and agent, with full power and authority in its name, place and stead, to execute, swear to, acknowledge, deliver, file and record in the appropriate public office (a) all instruments (including, without limitation, the Certificate of Limited Partnership and, at the option of the General Partner, counterparts of this Agreement) and all amendments thereto which the General Partner deems appropriate, necessary or advisable to form, qualify, reform or continue the qualifications of the Partnership as a limited partnership (or a partnership in which the Limited Partners have limited liability) in the jurisdiction in which the Partnership may conduct business; (b) all instruments which the General Partner deems necessary, appropriate or advisable to reflect the use by the Partnership of any name other than that set forth in Section 2.1; (c) all instruments which the General Partner deems necessary, appropriate or advisable to reflect any amendment, change or modification of the Partnership in accordance with the terms of this Agreement; (d) all conveyances and other instruments or documents which the General Partner deems appropriate, necessary or advisable to reflect the dissolution and termination of the Partnership pursuant to the terms of this Agreement; (e) instruments relating to the admission of additional or substituted Partners j:Jursuant to the terms

of this Agreement; and (f) any other documents or instruments which the General Partner deems necessary, appropriate or advisable in connection with the Partnership business, including amendments to the Certificate of Limited Partnership which are of an inconsequential or immaterial nature or are a result of a scrivener's error.

**11.3 Power Declared Irrevocable.** The power of attorney set forth in Section 11.2 is hereby declared to be irrevocable and to be a power coupled with an interest, shall survive the mental incompetency of a Partner and, to the extent permitted by law, shall also survive the death or dissolution of a Partner, and shall extend to such Partner's heirs, representatives, successors and assigns. Each Partner hereby agrees to be bound by any agreement made by the General Partner pursuant to such power of attorney.

## ARTICLE XII
## PROHIBITION REGARDING PARTITION

Each of the parties hereto does hereby permanently waive and relinquish and all rights it may have to cause the Property to be partitioned, it being the intention of the parties to prohibit any party hereto from bringing a suit for partition against the other parties hereto.

## ARTICLE XIII
## MISCELLANEOUS

**13.1 Offset.** In the event that any sum is payable to any Partner pursuant to this Agreement, any amounts owed by said Partner to the Partnership shall be deducted from said sum before payment to said Partner.

**13.2 Choice of Law; Consent to Jurisdiction.** This Agreement shall be subject to and governed by the laws of the State of Texas, excluding any conflicts-of-law rule or principle which might refer the construction or interpretation of this Agreement to the laws of another state.

**13.3 Notices.** All notices, requests or consents provided for or permitted to be given pursuant to this Agreement must be in writing and may be given by depositing same in the United States mail, addressed to the Partner to be notified, postpaid and registered or certified with return receipt requested, or by delivering such notice in person to such Partner (with signed receipt of such obtained). Notices given or served pursuant hereto shall be effective four (4) business days after such deposit or upon receipt by the Partner to be notified, whichever is earlier. All notices to be sent to the Partners shall be sent to or made at the addresses specified for such Partners on Schedule B attached hereto. Each Partner may change its address for notice by the giving of notice thereof to the General Partner in the manner hereinabove stated.

**13.4 Entire Agreement.** This Agreement constitutes the entire agreement of the Partners relating to the matters contained herein, superseding all prior contracts or agreements, whether oral or written.

**13.5 Effect of Waiver or Consent.** No waiver or consent, express or implied, by any Partner to or of any breach or default by any Partner in the performance by such Partner of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such Partner of the same or any other obligations of such Partner hereunder.

**13.6 Amendment or Modification.** This Agreement may be amended or modified

from time to time only with the approval of the General Partner and Sixty-seven Percent of the Limited Partners; provided, however, that without its consent, no amendment to this Agreement shall be made which requires a Partner to make Capital Contributions or otherwise increases its liability in excess of that provided for herein on the date of his admission as a Partner, or alters the order of allocations and distributions set forth in Articles V and VI or Section 10.2 hereof, or changes a Partner's Sharing Ratio; and provided, further, that without the consent of the Limited Partners (and to the extent, if any, that such consent may be required by applicable law, each Limited Partner hereby irrevocably grants such consent), the General Partner may make (and file with the appropriate public officials) such amendments or modifications to this Agreement as may be necessary to effect changes in the Sharing Ratios of the Partners occurring pursuant to the provisions of this Agreement and to make amendments of an inconsequential or immaterial nature or which are a result of a scrivener's error pursuant to Section 11.2. Each such instrument shall be reduced to writing and shall be designated on its face an "Amendment" or an "Addendum" to this Agreement

**13.7** **Binding Effect.** Subject to the restrictions on transfers and encumbrances set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the Partners and their respective heirs, legal representatives, successors and assigns.

**13.8** **Counterparts.** This Agreement may be executed in any number of counterparts with the same effect as if all Partners had signed the same document. All counterparts shall be construed together and shall constitute one and the same instrument.

**13.9** **Severability.** If any provision of this Agreement or the application thereof to any Person or circumstance shall be held invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**13.10** **Headings.** The headings in this Agreement are inserted for convenience and identification only and are not intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof

**13.11** **Terminology.** Whenever the context requires, the gender of all words used in this Agreement shall include the masculine, feminine and neuter, and the number of all words shall include the singular and the plural. All references to section and article numbers refer to sections and articles in this Agreement unless otherwise identified.

**13.12** **Additional Documents.** In connection with this Agreement, as well as all transactions contemplated by this Agreement, each Partner hereto agrees to execute and deliver such additional documents and instruments and to perform such additional acts as may be necessary or appropriate to effectuate, carry out and perform all of the terms, provisions and conditions of this Agreement and all such transactions.

**13.13** **Independent Conduct.** Each of the Partners and its respective Affiliates reserve and retain the right to engage in all businesses and activities of any kind whatsoever (irrespective of whether same may be in competition with the business and activities of the Partnership) and to acquire and own all assets however acquired and wherever situated, and to receive compensation or profit therefrom, for its own respective account and without in any manner being obligated to disclose such business and activities or assets or compensation or profit to the other Partners or to the Partnership.

IN WITNESS WHEREOF, the undersigned, being all of the Partners of the Company, have caused this Agreement to be executed effective as of the Effective Date.

**GENERAL PARTNER:**

**MIDTOWN SCOUTS SQUARE, LLC,**
a Texas limited liability company

By:_____
      Lucky Chopra, Managing Member

**LIMITED PARTNERS:**

_____

**LUCKY CHOPRA**

**RICHEY FAMILY LIMITED PARTNERSHIP, LTD.,**
a Texas limited partnership

By:    RICHEY FLP, INC., a Texas corporation,
       its General Partner

By:_____
      L.E. RICHEY, Director

_____

**L.E. RICHEY**

_____

**TODD RICHEY**

*SIGNATURE PAGE TO*
*AMENDED AND RESTATED COMPANY AGREEMENT*
*OF MIDTOWN SCOUTS SQUARE PROPERTY, L.P.*

# SCHEDULE A

1910 Bagby Street, Houston, Texas 77002, or more particularly described as RES A, BLK 1 EDGE SEC 1

1911 Bagby Street, Houston, Texas 77002, or more particularly described as RES A, BLK 1 OLD SCOUTS PLAZA

.

*SCHEDULE A*

*AMENDED AND RESTATED COMPANY AGREEMENT*
*OF MIDTOWN SCOUTS SQUARE PROPERTY, L.P.*

## SCHEDULE B

| Name, Address and Taxpayer Identification Number | Sharing Ratio | Type of Partner |
|---|---|---|
| Lucky Chopra<br>8305 Knight Rd.<br>Houston, Texas 77054<br>S.S.N.: _____ | 72.0% | Limited Partner |
| Richey Family Limited Partnership, Ltd.<br>4411 Bluebonnet, Suite 109<br>Stafford, TX 77477<br>E.I.N.: _____ | 17.0% | Limited Partner |
| L.E. Richey<br><br>_____<br>_____<br>S.S.N.: _____ | 5.0% | Limited Partner |
| Todd Richey<br><br>_____<br>_____<br>S.S.N.: _____ | 5.0% | Limited Partner |
| Midtown Scouts Square, LLC<br>8305 Knight Rd.<br>Houston, Texas 77054<br>E.I.N.: _____ | 1.0% | General Partner |

*SCHEDULE B TO*
*AMENDED AND RESTATED COMPANY AGREEMENT*
*OF MIDTOWN SCOUTS SQUARE PROPERTY, L.P.*

## SCHEDULE C

See Attached from the State of Texas

*SCHEDULE C TO*
*AMENDED AND RESTATED COMPANY AGREEMENT*
*OF MIDTOWN SCOUTS SQUARE PROPERTY, L.P.*

| Form 207<br>(Revised 07/10)<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br><br>Filing Fee: $750 | **Certificate of Formation**<br>**Limited Partnership** | This space reserved for office use.<br><br>**FILED**<br>**In the Office of the**<br>**Secretary of State of Texas**<br><br>SEP 23 2010<br><br>**Corporations Section** |

### Article 1 – Entity Name and Type

The filing entity being formed is a limited partnership. The name of the entity is:

Midtown Scouts Square Property, LP

The name must contain the words "limited," "limited partnership," or an abbreviation of that word or phrase. The name of a limited partnership that is also a limited liability partnership must also contain the phrase "limited liability partnership" or "limited liability limited partnership" or an abbreviation of one of those phrases.

### Article 2 – Registered Agent and Registered Office
(Select and complete either A or B and complete C)

☐ A. The initial registered agent is an organization (cannot be entity named above) by the name of:

OR

☑ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| Lucky | | Chopra | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C. The business address of the registered agent and the registered office address is:

| 16 Crestwood | Houston | TX | 77002 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

### Article 3—Governing Authority
(Provide the name and address of each general partner.)

The name and address of each general partner are set forth below:

| **GENERAL PARTNER 1** | | | | | |
|---|---|---|---|---|---|
| NAME (Enter the name of either an individual or an organization, but not both.)<br>IF INDIVIDUAL | | | | | |
| First Name | M.I. | Last Name | | | Suffix |
| OR<br>IF ORGANIZATION | | | | | |
| MIDTOWN SCOUTS SQUARE LLC | | | | | |
| *Organization Name* | | | | | |
| ADDRESS | | | | | |
| 8305 Knight Rd | Houston | | TX | USA | 77054 |
| *Street or Mailing Address* | *City* | | *State* | *Country* | *Zip Code* |

Form 207                                    4

---

**GENERAL PARTNER 2**

NAME (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

OR
IF ORGANIZATION

Organization Name
**ADDRESS**

| Street or Mailing Address | City | State | Country | Zip Code |
|---|---|---|---|---|

---

**GENERAL PARTNER 3**

NAME (Enter the name of either an individual or an organization, but not both.)
IF INDIVIDUAL

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|

OR
IF ORGANIZATION

Organization Name
**ADDRESS**

| Street or Mailing Address | City | State | Country | Zip Code |
|---|---|---|---|---|

---

## Article 4—Principal Office

The address of the principal office of the limited partnership in the United States where records are to be kept or made available under section 153.551 of the Texas Business Organizations Code is:

| 8305 A Knight Rd | Houston | TX | USA | 77054 |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Country | Zip Code |

### Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

---

### Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

### Execution

The undersigned general partner affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: Sept. 21, 2010 _____

Signature for each general partner:

_____

LUCKY CHOPRA, MEMBER/MANAGER OF

MIDTOWN SCOUTS SQUARE, LLC