UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **MIDTOWN SCOUTS SQUARE** | § | Case 13-32920 (Docket Here) |
| **PROPERTY, LP, et. al.** | § | Case 13-32924 |
| *Debtor* | § | (Chapter 11) |
| | § | Jointly Administered |

---

### LIQUIDATING PLAN OF REORGANIZATION FILED BY
### RICHEY FAMILY LIMITED PARTNERSHIP, LTD.

---

In accordance with 11 U.S.C. §1121(c) **Richey Family Limited Partnership, LTD ("Richey")** files this Liquidating Plan of Reorganization as follows:

## 1.    INTRODUCTION

On May 13, 2014, Debtors Midtown Scouts Square Property, LP, and Midtown Scouts Square, LLC (the "Debtors"), filed their Chapter 11 Joint Plan of Reorganization ("Debtors Plan").  Prior to the filing of petitions, the Debtors had incurred substantial indebtedness, which they have not paid.  The Debtors had attempted to arrange payment to some, but not all, of the creditors to whom they were indebted.  The Debtors filed a petition for relief under chapter 11 of the bankruptcy code as result of this inability to come to terms with all of their creditors.  Since the filing of the Chapter 11 petition the Debtors have continued to manage their own affairs as debtors in possession under the restrictions of the bankruptcy code and of certain court orders.

On September 10, 2014, the United States bankruptcy court extended the Debtors exclusive period to confirm the Debtors Plan to October 31, 2014 at 5 PM.  There have been no other extensions granted.  The Debtors exclusive right to propose and confirm a plan has now terminated.

Richey is a party-in-interest in these Chapter 11 proceedings for the reason that it holds a claim or interest.  Richey objected to the confirmation of the Debtors Plan for the reason, among others, that Lucky Chopra, the purported 100% owner of the equity in the Debtors, was attempting to use the Debtors Plan to benefit himself at the expense of the claims of Richey that were being litigated in a State Court proceeding that the bankruptcy court earlier remanded to the 268th District Court of Fort Bend County, Texas to the extent required for the parties to prosecute such case to final judgment[1]. *[See Docket #61].*

On October 28, 2014, the Debtors Plan came on for confirmation and, after objection to confirmation by Richey, **on December 12, 2014 the Court denied confirmation of the Debtors Plan.** [*See Docket Entry #223].*

In view of the foregoing and pursuant to 11 U.S.C. §1121(c), Richey proposes this Liquidating Plan of Reorganization:

---

[1]  This case includes a claim by related Richey parties that Lucky Chopra accepted $1.4 million dollars in exchange for 27% of the ownership of the Debtors.  Chopra denies that he is required to assign 27% of his ownership to the Richey parties.

---

**2.    DEFINITIONS**

For purposes of this Plan of Reorganization, the following terms and definitions shall have the following meanings unless the context clearly indicates otherwise:

2.1.    **"Administrative Expenses"** shall mean those expenses described in §503 of the Bankruptcy Code.

2.2.    **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

2.3.    **"Allowed Claim" or "Allowed Interest"** means, respectively, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or Interest, proof of which was timely and properly Filed or, if no proof of claim or proof of interest was filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

2.3.1.    no objection to the allowance thereof has been interposed on or before the later of: (i) the thirtieth (30th) day after the Effective Date, or (ii) such other applicable period for objection as may be fixed or extended by the Court; or

2.3.2.    any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Court, an "Allowed Claim" shall not include any interest, fees, costs or other charges on such Claim accruing after the Petition Date.

2.4.    **"Allowed Unsecured Claim"** means an Allowed Claim that is not an Administrative Claim, a Secured Claim, or a Priority Claim.

2.5.    **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, and (b) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

2.6.    **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.1.    **"Cash"** means cash or cash equivalents.

1.2.    **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered by the Court.

1.3.    **"Confirmation Hearing"** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

1.4.    **"Debtor in Possession"** means the Debtors between the Petition Date and the Effective Date when acting in the capacity of representative of its Estate in the Reorganization Case.

1.5.    **"Court**" shall mean the United States Bankruptcy Court for the  Southern District of Texas, Houston Division, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.6.     **"Creditors"** shall mean all creditors of the Debtor holding claims for debts, liabilities, or demands of any character whatsoever, as defined in §101(10) of the Bankruptcy Code.

1.7.    **"Debtors**" shall mean Midtown Scouts Square  Property,  LP,  and Midtown Scouts Square, LLC, collectively.

1.8.    **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.9.    **"Disallowed Interest"** means an Equity Interest or any portion thereof that has been disallowed by a Final Order or a settlement.

1.10.    **"Disclosure Statement"** means the Disclosure Statement for the Debtors filed by the Debtors, including amendments thereto, in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan as supplemented by the Supplemental Disclosure Statement.

1.11.    **"Disputed Claim" and "Disputed Interest",** mean any Claim or Interest, that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a Disallowed Interest, as the case may be.

1.12.    **"Effective Date**" shall mean  the first business day 30 days after the Confirmation Order is entered by the Court.

1.13.    **"Equity"** shall mean the interest owners of the Debtors.

1.14.    **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

1.15.    **"File" or "Filed"** means properly and timely filed with the Bankruptcy Court in the Reorganization Case, as reflected on the official docket of the Court for the Reorganization Case and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or Order of the Court.

1.16. "**Final Order**" means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; provided however that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

1.17. "**Insider**" shall have that meaning defined by 11 U.S.C.§ 101(31).

1.18. "**Office Building**" shall mean the Office Building owned by the Debtors and located 1911 Bagby Street, Houston, Harris County, Texas 77002 and further described in the Schedules filed by the Debtors in the official records of the Court.

1.19. "**Order Confirming Plan**" shall mean the Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to an entry of an Order of Confirmation.

1.20. "**Order For Relief**" shall mean the order entered in this case granting relief under Chapter 11.

1.21. "**Parking Garage**" shall mean the eight level parking garage owned by the Debtors located at 1910 Bagby Street, Houston, Harris County, Texas 77002 and further described in the Schedules filed by the Debtors in the official records of the Court.

1.22. "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

1.23. "**Pro Rata** " shall mean the amount which is the result of multiplying the funds available to a named class of creditors by the fraction in which the numerator is the allowed amount of a particular claim in the named class, and the denominator is a total of the allowed amounts of all claims of the named class, to be recalculated at the time of each disbursement.

1.24.   **"Plan**" shall mean this Liquidating Plan of Reorganization in its present form, or  as it may be amended or supplemented from time to time.

1.25.   **"Priority Claim"** means shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection but excluding Property Tax Claims.

1.26.   **"Property Tax Claim"** means any tax claim held by a Governmental Unit secured by a lien against Estate Property.

1.27.   **"Reorganization Case"** means this bankruptcy case under chapter 11 of the Bankruptcy Code.

1.28.   **"Retained Claims and Causes of Action"** means any and all Claims, causes of action, demands, defenses, suits, judgments, choses in action, licenses, privileges, agreements and all other rights and remedies (legal or equitable) of the Debtor and the Estate, for or on behalf of Creditors and/or the Debtor and/or the Estate, including but not limited to any and all claims and/or causes of action by the Estate and/or the Debtor, against any and all Creditors or other Persons, of every kind or nature, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity, and whether or not brought as of the Effective Date, including but not limited to those for (i) damages, (ii) the recovery of monies, (iii) lien avoidance, subordination, surcharge, recharacterization, setoff, counterclaim, contribution or recoupment, (iv) tax refunds, (v) claims and defenses such as fraud, mistake, duress and usury, (vi) claims on contracts or for breaches of duties imposed by law, (vii) injunctive, equitable or other relief, (viii) claims and causes of action that may be asserted derivately on behalf of the Debtor, the Estate or the Trustee, (ix) claims and causes of action pursuant to section 362 of the Bankruptcy Code and (x) all Avoidance Actions, including but not limited to those provided by §544, §545, §547, §548, §549, §550, §551, and §553 of the Bankruptcy Code.

1.29.   **"Scheduled"** means set forth on the Schedules.

1.30.   **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

1.31.    **"Secured Claim"** means any claim that is secured by a valid, perfected and unavoidable lien on property in which the Estate has an interest as determined under section 506 of the Bankruptcy Code.

1.32.   **"Supplemental Disclosure Statement"** shall mean the supplement to the Disclosure Statement filed herewith addressing the changes in this Plan from the Debtors' Plan that was denied confirmation by the court.

1.33.   **"Term of Plan"** shall mean the period ending eighteen (18) months after the entry of the Confirmation Order.

1.34.   **"Trustee"** shall mean the trustee appointed pursuant to this Plan to effectuate the consummation of this Plan by selling assets of the Debtors and administering the Funds provided for in this Plan.

1.35.   **"Unsecured Claim"** means any claim that is not an Administrative Claim, Priority Claim, Property Tax Claim or Secured Claim.

## 2.   GENERAL TERMS AND CONDITIONS

2.1.   The following general terms and conditions apply to this Plan:

2.1.1.   Various types of claims are defined in this Plan.  This Plan is intended to deal with all claims against the Debtors of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to §502(a) of the Bankruptcy Code.  However, only those claims allowed pursuant to §502(a) of the Bankruptcy Code will receive treatment afforded by the Plan.

2.1.2.   **Rules of Interpretation**. Any term used in this Plan that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2.1.3.   **Rules Of Construction**. For purposes of this Plan:

Whenever from the context it is appropriate, each term whether stated in the singular or the plural shall include both the singular and the plural;

Any reference in the Plan to a contract, instrument, indenture, release, or other agreement or document being in a particular form or on particular terms and conditions means that such documents shall be substantially in such forms or substantially on such terms and conditions;

Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented through and including the Confirmation Date;

Unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan;

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only a particular portion of the Plan;

Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

All Exhibits to this Plan are incorporated herein, regardless of whether or when those Exhibits are Filed; and

The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

2.1.4. **Time Periods**. In computing any time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.1.5. **Substantial Consummation** shall occur at the time the Trustee files the Final Report of disposition of assets.

## 3. CLASSIFICATION OF CLAIMS AND INTERESTS

The following is a designation of the classes of claims and interests under this Plan. Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in a different class to the extent that any remainder of the claim or interest qualifies within the description of such different class

### 3.1. SECURED CLAIMS

#### 3.1.1. Class 1 – (Claim of Taxing Authorities)

Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for the year 2012, 2013 and 2014 any prior years secured by a lien on all of the Debtors' assets.

#### 3.1.2. Class 2 – (Claim of Bank of Houston on Office Building)

Class 2 consists of the Allowed Secured Claim of Bank of Houston, secured by liens on the Office Building.

#### 3.1.3. Class 3 – (Claim of Bank of Houston on Parking Garage)

Class 3 consists of the Allowed Secured Claim of Bank of Houston, secured by liens on the Parking Garage.

#### 3.1.4. Class 4 – (Claim of Mercantile Capital Corporation)

Class 4 consists of the Allowed Secured Claim of Mercantile Capital Corporation, secured by liens on the Office Building.

### 3.2. UNSECURED CLAIMS.

#### 3.2.1. Class 5 – (General Non-Insider Unsecured Claims)

Class 5 consists of Non-Insider Unsecured Claims.

### 3.2.2.  Class 6 – (Insider Unsecured Claims)

Class 6 consists of Insider Unsecured Claims

### 3.3.  INTERESTS.

### 3.3.1.  Class 7 – (Partnership Claims)

Class 7 consists of all Interests held by the Partners.

## 4.  TREATMENT  OF  UNCLASSIFIED CLAIMS

### 4.1.  ADMINISTRATIVE CLAIMS

4.1.1.  **Generally.** Subject to the bar date provisions herein, the Trustee shall pay each holder of an Allowed Administrative Claim against the Debtor on account of and in full satisfaction of such Allowed Administrative Claim, Cash from the Debtors operating revenue and then from the Net Proceeds equal to the amount of the Allowed Administrative Claim, on the later of: (a) the Effective Date; (b) the date such Administrative Claim becomes an Allowed Administrative Claim (c) when funds become available from sale of assets; or (c) as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment.

4.1.2.  **Payment of Statutory Fees.** The Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).  Any fees due as of the date of confirmation of the Plan will be paid in full from the Net Proceeds on the Effective Date of the Plan. After confirmation, the Trustee shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court as a part of wind down of the Debtor Partnership. The Trustee shall file with the Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) the case remains open in a format prescribed by the United States Trustee.

### 4.1.3.  Bar Date For Administrative Claims.

4.1.3.1. **General Provisions.** Except as provided below for professionals and non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims by the Debtor must be filed no later than thirty (30) days after the Confirmation Date. Holders of Allowed Administrative Claims shall not be entitled to interest on their Administrative Claims.

4.1.3.2. **Professionals.**    All professionals or other entities requesting compensation or reimbursement of expenses from the Debtor under

---

sections 327, 328, 330, 331, 503(b), 506 and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional for any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Trustee an application for final allowance of compensation and reimbursement of expenses no later than thirty days after the Effective Date.

4.1.3.3. **Ordinary Course Liabilities.** Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtor in Possession prior to the Effective Date and governmental units that hold claims for taxes or claims and/or penalties related to such taxes shall not be required to File any request for payment of such claims. Such Administrative Claims shall be assumed and paid from the Net Proceeds by the Trustee in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

## 5.   MEANS FOR EXECUTION OF THE PLAN

5.1.1.   The Debtors presently own assets, including the Office Building and Parking Garage, having a substantial value. The present fair market value of these assets is scheduled by the Debtor as being significantly greater than the indebtedness owed by the Debtors. The terms of the Plan shall be implemented by the prompt sale of such of Debtors' assets, including the Office Building and Parking Garage as are required to satisfy all Administrative Claims, Secured Claims, Priority Claims, and General Unsecured Claims.   The balance after payment of these claims will be divided between the owners.

5.1.2.   Notwithstanding the foregoing, the Trustee shall have the discretion to determine the highest and best price to offer the Office Building and Parking Garage for sale, as well as the terms for such sale to achieve such highest and best price.   Provided, all sales must be concluded within the Term of the Plan.

5.1.3.   In order that the Plan may be implemented and consummated, the Court shall appoint a Trustee with all of the powers and duties of a trustee specified in section 1106 of the Bankruptcy Code, excepting only the duties specified in paragraphs (3) and (4) of subsection (b) of such section and further directed by the provisions of this Plan where applicable.   In any conflict between Section 1106 of the Bankruptcy Code and the provisions contained in the Plan relating to the Trustee, the Plan provisions shall prevail.

**5.2.    CREDITORS FUND**

5.2.1.  The Debtors presently own the Office Building and Parking Garage and the cash proceeds realized from the sale of the Debtors assets, shall be deposited in the Creditors' Fund, which shall be administered by the Trustee. There shall also be deposited in the Creditors' Fund all monthly revenue derived from the Debtor's assets, which are subject to sale. On the Effective Date of the Plan, such cash proceeds deposited in the Creditors' Fund shall be disbursed by the Trustee and the interest of each class as defined above shall be satisfied in the following manner and order of priority:

5.2.1.1. All Allowed Administrative Claims; then

5.2.1.2. The claim of each Secured Creditor (Classes 1 through 4) shall be paid out of the proceeds of the sale of its collateral as much as is required to satisfy its claim on such collateral in full. If any portion of a Secured Claim is not satisfied in full out of the proceeds of the collateral securing it, any deficiency shall be treated as, and paid as, a Class 5 general unsecured claim; then

5.2.1.3. The claim of each Unsecured Creditor in Class 5 to be paid within thirty (30) days from the closing of the last to sell of the Office Building and Parking Garage; then

5.2.1.4. Within thirty (30) days after the payment of Class 5, the claim of each Insider Unsecured Creditor in Class 6 shall be paid. Provided, the Plan payment to the Richey Family Limited Partnership will be deposited into the Disputed Claim Reserve until the Richey Litigation is resolved by agreement or by final court order/judgment;

5.2.1.5. Any surplus remaining in the Creditors' Fund after distribution to Classes 1, 2, 3, 4, 5 and 6 shall be distributed to the Equity holders in an amount equal to their proportional Partnership Interest, along with any item, which may remain in the Contingent Fund. Provided, twenty-seven (27%) percent of the distribution for Equity holders, less the escrowed claim of the Richey Family Limited Partnership held in the Disputed Claim Reserve, shall be held by the Trustee until a final judgment of the Richey Litigation. If the Richey Litigation determines that Richey is entitled to 27% of the equity, such escrowed funds together with the escrowed Class 6 dividend shall be paid to Richey. In the event that the Richey Litigation determines that Richey is not entitled to any equity in the Debtors, the Class 6 escrowed dividend shall be paid to Richey and the Class 7 escrowed funds shall be paid to the non-Richey equity holders.

5.2.1.6. Payment shall be ProRata for any Class of claims which exceed in amount the available funds for payment.

**5.3.    CONTINGENT FUND**

5.3.1.   In the event the sale of the Debtor's assets does not realize cash proceeds sufficient to pay in full the claims in Classes 1, 2, 3, 4, 5 and 6, then any noncash proceeds realized from the sale of the Debtors' assets shall remain in a trust to be administered by the Trustee. At such time as cash is derived from the noncash proceeds, such cash shall be deposited into the Creditors' Fund and shall be disbursed pursuant to the terms of this Section.

5.3.2.   In the event any noncash proceeds are not on terms and conditions which will allow for the payment of all claims in full within 12 months after the Effective Date of the Plan, then in such event such noncash proceeds as may be needed to pay all claims shall be sold or discounted and the proceeds derived therefrom shall be deposited in the Creditors' Fund and paid pursuant to the terms of this Section.

5.4.    **Sale of Office Building and Parking Garage.**  Unless otherwise directed by Order of the Court entered prior to the Confirmation Date, the Trustee in behalf of the Debtors shall market, sell and convey the Office Building and the Parking Garage, either together or as separate parcels.  The Trustee shall distribute funds required for payment under the Plan at the closing of a sale of a Secured Creditors collateral, including reasonable closing costs, payment of property tax claims, and payment of Secured Creditor Claims as provided hereunder.  The remaining Net Proceeds of the Sale shall be retained by the Trustee to pay the remaining Allowed Administrative Claims of the Estate and the payment of the remaining Claims as required by the terms of the Plan.   The Trustee shall not be limited to expeditious liquidation, but shall engage brokerage with instructions to sell at the highest and best price over a period not to exceed eighteen (18) months.

5.5.    **Operation of the Debtors Pending Sale of Assets.**  Unless otherwise directed by Order of the Court entered prior to the Confirmation Date, the Trustee in the Trustees' sole discretion, may on behalf of the Debtors continue to service the current debt payments to Class 1 through 4, in the same amounts and manner paid by the Debtors prior to Confirmation of the Plan.  **Provided, the Trustee shall not incur further debt for such payments and in the event that the Trustee has insufficient revenue to service such debts, such Trustee shall pay a minimum of the contractual interest on each claim until Collateral for a particular claimant is sold.  SUCH MINIMUM PAYMENT SHALL CONSTITUTE ADEQUATE PROTECTION FOR SUCH CLAIMANT AND SHALL CONTINUE THE AUTOMATIC STAY INJUNCTION FOR THE TERM OF THE PLAN.**

5.6. **Vesting of Property of the Estate in Trustee**. As of the Effective Date, all property of the Estate (including debtor in possession bank accounts, Cash held by any receiver, custodian or similar person or entity, insurance polices, including title insurance, and all rights of the Debtor thereunder, and the Retained Claims and Causes of Action) shall vest in the Trustee free and clear of all claims, liens, encumbrances and other interests except as otherwise provided herein. From and after the Effective Date, the Trustee may operate its business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. On the Effective Date, pursuant to the Plan and the Confirmation Order, any receiver, custodian or similar person or entity appointed prior to the Effective Date for the Debtors or any of their property shall be terminated and discharged from its responsibilities and duties and all property, including Cash of the Debtors held by such receiver, custodian or similar person or entity shall be immediately turned over to the Trustee without setoff or offset.

5.7. **Winding up of Debtors.** The Trustee shall make such changes as are needed to wind up the affairs of the Debtors as required by Texas law, including the filing of final tax returns.

6. **LIQUIDATING TRUSTEE AND DUTIES**

6.1. **Trustee.** Subject to the approval of the Bankruptcy Court, The United States Trustee ("UST") in advance of the Confirmation Hearing with consultation with the parties, shall select the initial Trustee under the Plan and such Trustee shall make all distributions required under the Plan.

6.2. **Powers of Trustee.** Trustee shall have the power to take the actions granted in the Plan, including those provided in this section and any powers reasonably incidental thereto, which the Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Trust, including but not limited to:

6.2.1. Prosecuting, settling, assigning, or otherwise compromising or abandoning for the benefit of the Trust any and all Causes of Action arising in favor of the Debtors, including, without limitation, taking any action with respect to appeals, counterclaims, and defenses of or with respect to such claims and causes of action, including retaining counsel to pursue the Causes of Action;

6.2.2. Exercising all powers provided to the Trustee under the Plan or Confirmation Order, including, without limitation, the right to allow, object to, or reconcile Unsecured Claims, Priority Claims (both tax and non-tax), Administrative Claims and Secured Claims and any other Claims asserted against the Debtors' Estates;

6.2.3. Liquidating, selling or abandoning the Assets or any portion thereof;

6.2.4.   Executing any documents and taking any other actions related to, or in connection with, the liquidation of the Assets and the exercise of the Trustee's powers granted in the Plan and Confirmation Order;

6.2.5.   Holding legal title to any and all rights of the Beneficiaries in, to, or arising from the Assets;

6.2.6.   Establishing a reserve for disputed claims (the "Disputed Claims Reserve"), as well as any other required reserves as may be necessary and appropriate for the proper operation of matters incident to the Plan;

6.2.7.   Protecting and enforcing the rights to the Assets vested in the Trustee by the Plan by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

6.2.8.   Making distributions of the Assets to or on behalf of the Beneficiaries in accordance with the Plan and the Confirmation Order;

6.2.9.   Filing any and all tax returns with respect to the Trust and pay taxes properly payable by the Trust, if any; provided, however, that for the avoidance of doubt, neither the Trust nor the Trustee shall have any authority or duty to file any tax returns for any Debtor;

6.2.10.   Making all necessary filings in accordance with any applicable law, statute, or regulation;

6.2.11.   Determining and satisfying from the Assets any and all taxes and ordinary course liabilities, including reasonable professional fees and expenses, incurred by or on behalf of the Debtors' estate;

6.2.12.   Opening and maintaining bank accounts on behalf of or in the name of the Trustee;

6.2.13.   Purchasing customary insurance coverage;

6.2.14.   In reliance upon the official claims register maintained in the Bankruptcy Cases and any applicable court order, maintaining on the Trustee's books and records a register evidencing the beneficial interest held by each Beneficiary;

6.2.15.   Performing such functions and taking such actions as are provided for or permitted in the Plan, the Confirmation Order, or any other agreement executed pursuant to the Plan, or the Confirmation Order; and

6.2.16.   Terminating this Trust and seeking to close the Debtors' Bankruptcy Cases pursuant to § 350(a) of the Bankruptcy Code.

6.3.   **Agents and Professionals.** The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants or other professionals and

employees as the Trustee deems appropriate in the reasonable exercise of his or her discretion, and who the Trustee reasonably determines to have qualifications necessary to assist the Trustee in the proper administration of the Trust. The Trustee may pay the reasonable fees, costs and expenses of such persons (including himself) out of the Assets in the ordinary course of business pursuant to the Plan and Confirmation Order.  It is anticipated that the Trustee will engage a commercial real estate broker to market the Debtors assets in accordance with the foregoing.

6.4.  **Safekeeping of Assets.** All Assets shall, until distributed or paid over as herein provided or in the Plan, be held in trust for the benefit of the Beneficiaries in accordance with the Plan and this Agreement. The Trustee shall be under no liability for interest or producing income on any moneys received by it herein and held for distribution or payment to the Beneficiaries, except as such interest or income shall actually be received by the Trustee.

6.5.  **Limitations on Trustee.** The Trustee shall not at any time, on behalf of the Trust or Beneficiaries, enter into or engage in any trade or business, and no part of the Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Trust in furtherance of any trade or business.

6.6.  **Investment.** The Trustee may only invest funds held in the Trust in Permitted Investments, in a manner consistent with the requirements of the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any of the Assets or any proceeds, revenue, or income therefrom.

6.7.  **Trustee Action.** The Trustee shall hold, collect, conserve, protect, and administer the Trust in accordance with the provisions of the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Plan. Any good faith determination by the Trustee as to what actions are in the best interests of the Trust shall be determinative.

6.8.  **Bankruptcy Court Approval of Trustee Actions.** Except as provided in the Plan or otherwise specified in this Section, the Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. The Trustee shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Trustee may submit to the Bankruptcy Court any question or questions regarding which the Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to betaken by the Trustee with respect to the Assets, the Plan, or the Debtors, including the administration and distribution of the Assets. The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion. In addition, the Trustee shall

have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Asset free and clear of any and all liens, claims, and encumbrances.

6.9.   **United States Trustee Fees and Reports.** After the Effective Date, the Trustee shall pay as an expense of the Trust all fees incurred under *28 U.S.C. § 1930(a)(6)* by reason of the Trust's disbursements as required under the Plan and Confirmation Order until the Debtors' Bankruptcy Cases are closed. After the Confirmation Date, the Trust shall prepare and serve on the Office of the U.S. Trustee such quarterly disbursement reports for the Trust as required by the U.S. Trustee for as long as the Bankruptcy Cases remain open.

6.10.   **Insurance**. The Trustee may use Assets in the Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Trust  or Debtors' Assets.

6.11.   **Parties Dealing With the Trustee.** In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Assets. There is no obligation on any Person dealing with the Trustee to inquire into the validity, expediency, or propriety of any transaction by the Trustee or any agent of the Trustee.

6.12.   **Indemnification**. The Trustee and each of its agents, employees, officers, directors, professionals, attorneys, accountants, advisors and representatives (collectively, the "Indemnified Parties") shall be indemnified and held harmless by the Trust, to the fullest extent permitted by law, solely from the Assets for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of an Indemnified Party solely in its capacity as such; provided, however, that the Trust shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, willful misconduct, fraud, bad faith, self-dealing or breach of the duty of loyalty by such Indemnified Party. Notwithstanding any provision to the contrary, the Indemnified Parties shall be entitled to request advances from the Trust to cover reasonable fees and necessary expenses incurred in connection with defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; provided, however, that the Trustee shall not be required to make any such advances; provided further, however, that any Indemnified Parties receiving such advances shall repay the amounts so advanced to the Trust upon the entry of an order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to any indemnity under the provisions of  this Section. This indemnification shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties, or the termination of

the Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

7.  **SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE**

7.1.  **Initial Trustee.** The United States Trustee in advance of the Confirmation Hearing shall select the initial Trustee.

7.2.  **Term of Service.** The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under the Plan; (b) termination of the Trust; or (c) the Trustee's death or dissolution, incapacitation, resignation, or removal.

7.3.  **Compensation and Costs of Administration**. The Trustee may retain and compensate professionals (including himself).  The reasonable fees and actual and necessary expenses of such professionals and the Trustee  shall be paid by the Trustee no more than monthly, upon each monthly submission of a fee statement to be filed with the bankruptcy court, as applicable, in accordance with the following  procedures.  Parties in interest shall have twenty (20) days from the delivery of any invoice or fee statement to give notice of an objection to the fee statement to the professional seeking compensation or reimbursement (including the Trustee himself).  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  The total Trustee fees and Real Estate Commissions shall not exceed six (6%) percent of gross sale amount of the Debtors assets and in no event shall the Trustee be compensated in an amount greater than promulgated in 11 U.S.C. §326.   The Trustee is free to negotiate the division of compensation with the engaged real estate brokerage.

7.4.  **Removal of a Trustee.** Any Person serving as Trustee may be removed at any time and for any reason by the United States Trustee or upon the determination of the Bankruptcy Court on a motion for cause shown. Any Trustee so removed is entitled to payment of reasonable fees and necessary expenses accrued prior to removal subject to the terms of this Agreement.

7.5.  **Resignation of Trustee.** The Trustee may resign at any time by giving the United States Trustee at least thirty (30) days' written notice of the Trustee's intention to do so. In the event of a resignation, the resigning Trustee shall render to the a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee. The resignation shall be effective on the later of (i) the date specified in the notice; (ii) the date that is thirty days (30) after the date the notice is delivered; or (iii) the date the accounting described in the preceding sentence is delivered.

7.6.  **Appointment of Successor Trustee**. Upon the resignation, death, incapacity, or removal of a Trustee, the United States Trustee shall appoint a successor Trustee to fill the vacancy so created. Any successor Trustee so appointed shall consent to and accept in writing the terms of Plan and agree that the provisions

of the Plan shall be binding upon and inure to the benefit of the successor Trustee and all of the successor Trustee's heirs and legal and personal representatives, successors or assigns. In the event that a successor Trustee is not appointed within sixty (60) days of the occurrence or effectiveness, as applicable, of the prior Trustee's resignation, death, incapacity, or removal, any party in interest shall be authorized to move the Bankruptcy Court for the appointment of a successor Trustee.

7.7.  **Powers and Duties of Successor Trustee**. A successor Trustee shall have all the rights, privileges, powers, and duties of the predecessor Trustee under the Plan.

7.8.  **Trust Continuance**. The death, incapacity, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to the Plan or invalidate any action theretofore taken by the Trustee.

8.  **REPORTING AND FILING REQUIREMENTS.**

8.1.  Within 30 days after June 30 and December 31 of each calendar year in which the Trust shall remain in existence, the Trustee shall file a report with the Bankruptcy Court of all Assets received by the Trust, all Available Trust Cash disbursed to Beneficiaries, all Assets held by the Trust, and all fees, income, and expenses related to the Trust during the preceding calendar year. The Trustee's report shall be provided to the creditors and other parties requesting notice filed with the Bankruptcy Court.

8.2.  The Trustee shall also timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the Trust and the Trustee to be in compliance with applicable law.

8.3.  After the Plan is fully administered, the Trustee shall file a final report and account with the Court and shall request entry of a final decree.  The entry of a final decree shall release the Trustee from all further duties under the Plan.

9.  **CLASSES NOT IMPAIRED UNDER THE PLAN**

9.1.  Although this Plan contemplates that all claims will be paid in full, none can be paid until money is raised through the sale of the Debtor's assets with which to pay them. Accordingly, no class is unimpaired under the Plan.

10.  **EXECUTORY CONTRACTS AND LEASES**

10.1.  **Real Property Leases to be Assumed.** The Trustee shall assume and enforce any real property leases that existed on the date of filing of the Case or subsequent thereto.

11.    **PROCEDURES FOR RESOLVING AND TREATING DISPUTED AND CONTINGENT CLAIMS**

11.1.   **Objection Deadline**.  As soon as practicable, but in no event later than thirty (30) days after the Effective Date, objections to claims shall be filed with the Bankruptcy Court and served upon the holders of each of the claims to which objections are made.

11.2.   **Responsibility for Objecting to Claims.**  Pursuant to 11 U.S.C. §502(a) of the Bankruptcy Code, any party-in-interest may object to a claim.   The Trustee may join in an objection filed by another party-in-interest.

11.3.   **No Distributions Pending Allowance**.  Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to any portion of a claim that is a disputed claim unless and until all objections to such disputed claims have been determined by final order.

11.4.   **Allocated Distributions**.   The Trustee shall withhold from the property (inclusive of cash, or other property) to be distributed under the Plan, and shall place in the disputed claim reserve together with interest, the proportion of such property as sufficient to permit distributions to be made to holders of disputed claims if such claim become allowed claim after the Effective Date.  As to any disputed claim, upon  request for an estimate under Bankruptcy Code §502(c), the Bankruptcy Court shall estimate the disputed claim for the purpose of allowing the Trustee to fix the maximum distribution to which such disputed claim will ever be entitled.   As soon as practicable after the Effective Date, the Trustee shall object pursuant to §502(a) of the Bankruptcy Code, or otherwise seek to fix the amount of any unliquidated claim.  If parties elect not to request an estimate from the Bankruptcy Court with respect to any disputed claim, The Trustee shall compute the proportion of property to be placed in the disputed claims reserve based on the amount set forth on the proof of claim filed by the holders of such claim.

11.5.   **Distribution After Allowance**.  Payment and distributions from the disputed claims reserve to each holder of a disputed claim, to the extent it ultimately becomes an allowed claim, shall be made in accordance with the provision of the Plan governing the class of claims to which the disputed claim belongs.  As soon as practicable after the date of the order or judgment of the Bankruptcy Court allowing such claim becomes a final order, any property in the disputed claim reserve that would have been distributed to the holder of an allowed claim prior to the date on which the disputed claim became an allowed claim shall be distributed, together with all interest or other earnings actually earned thereon to the date such distributions are made.

11.6.   **Distributions After Disallowance**.  Any property placed in the Disputed Claim Reserve in respect to a disputed claim that is disallowed shall be distributed in accordance with the provisions of the Plan governing the class of claims to

which the disputed claim belongs, among the holders of allowed claims in such class, Pro Rata, to accelerate repayment in the amounts provided by the Plan as soon as practicable after the date the order or judgment of the Bankruptcy Court disallowing such claim becomes a final order.  Provided, however, if there are no further claims in such class such funds will retained by the Trustee.

11.7.   **Treatment of Contingent Claims.**  Until a contingent claim becomes  fixed, absolute, and allowed, such claims shall be treated as a disputed claim for the purposes of estimates, allocations, and distributions under the  Plan.

## 12.   ACCEPTANCE OR REJECTION OF PLAN

12.1.   **Classes to Vote.**  Class 1, 2, 3, 4, 5, 6 and Class 7 shall vote separately to accept or reject the Plan.

12.2.   **Acceptance By Class of Creditors.**  An impaired class of claims shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the allowed claims of such class that are voted. For purposes of this Section, a vote shall not be counted if under the Bankruptcy Court rules it should not be counted pursuant to §1126(e), Bankruptcy Rules of Procedure, or other applicable law.

12.3.   **Confirmation Pursuant to §1129(b) of the Bankruptcy Code**.   If any impaired class of claims fails to accept the Plan in accordance with §1126 of the Bankruptcy Code, the proponent of the Plan will request the Bankruptcy Court to confirm the Plan in accordance with §1129(b) of the Bankruptcy Code and hereby so moves the Court for confirmation in accordance therewith and specifically pleads that the Plan is fair and equitable to such class.

## 13.   MAINTENANCE OF CAUSES OF ACTION

13.1.   **General Preservation of Claims by the Debtor.**  Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Reorganization Case: (i) any and all Retained Claims and Causes of Action accruing to the Debtor or the Estate shall remain assets of and vest in the Trustee, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Retained Claims and Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and (ii) neither the Debtor, the Estate, nor the Trustee waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Retained Claims and Causes of Action that constitute property of the Debtor or the Estate: (a) whether or not such Retained Claims and Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not any such Retained Claim and Cause of Action is currently known to the Debtor, and (c)

whether or not a defendant in any litigation relating to any such Retained Claim and Cause of Action Filed a proof of claim or interest in the Reorganization Case, Filed a notice of appearance or any other pleading or notice in the Reorganization Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Retained Claims and Causes of Action, or potential Retained Claims and Causes of Action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's or the Trustee's right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Retained Claims and Causes of Action that the Debtor or its Estate have or may have as of the Effective Date. The Debtor expressly reserves all Retained Claims and Causes of Action for later adjudication by the Trustee, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Retained Claims and Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Trustee expressly reserves the right to pursue or adopt Retained Claims and Causes of Action that are alleged in any lawsuits in which the Debtor is a defendant or an interested party, against any Person, including the plaintiffs or codefendants in such lawsuits.

13.2. **Post-Confirmation Challenge to Claims.** Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtors, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer or transaction may be reviewed by the Debtor or the Trustee subsequent to the Effective Date and maybe the subject of an action after the Effective Date, whether or not: (a) such Person has Filed a proof of Claim or Interest against the Debtor in the Reorganization Case; (b) such Person's proof of Claim or Interest has been objected to by the Debtor; (c) such Person's Claim or Interest was included in the Debtor's Schedules; or (d) such Person's scheduled Claim or Interest has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated or disputed.

13.3. **No Waiver of Claims**. Neither the failure to list a Claim or Interest in the Schedules filed by the Debtor, the failure of the Debtor or any other Person to object to any Claim or Interest for purposes of voting, the failure of the Debtor or any other Person to object to a Claim, Interest or Administrative Claim

before Confirmation or the Effective Date, the failure of any Person to assert a claim or cause of action before Confirmation or the Effective Date, the absence of a proof of Claim or Interest having been filed with respect to a Claim or Interest, nor any action or inaction of the Debtor or any other Person with respect to a Claim, Interest, or Administrative Claim, other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Debtor or the Trustee before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, Interest or Administrative Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any claim or cause of action against the holder of any such Claim or Interest.

13.4.   **Avoidance and Recovery Actions**.  After the Effective Date, the Debtor, to the extent allowed by law, may litigate any avoidance or recovery actions under §544, §545, §547, §548, §549, §550, §551, and §553 of the Bankruptcy Code. Specifically, and not as a limitation, the Debtors hereby preserves under the Plan, any cause of action they may have under the aforesaid provisions.

13.5.   **Other Maintained Causes of Action**.  After the Effective Date, the Debtors, to the extent allowed by law, further retain rights to enforce warranty claims against creditors who have provided service and equipment to the Debtors prior to confirmation of the Plan and to enforce contract rights owned by the Trustee against account Debtors.

13.6.   **Voting and Failure to Object Shall not be Bar to Action.**   Delivery of a ballot  to accept the Plan or election by a party-in-interest not to challenge the confirmation of the Plan shall not constitute res judicata regarding subsequent objections to claims or actions for recovery pursuant to Chapter 5 of Title 11 of the United States Code.

## 14.   NO DISCHARGE TO BE GRANTED.

The proposed Plan is a liquidating plan and pursuant to *11 U.S.C.§(d)(3)(a)* provides for the liquidation of all or substantially all of the property of the estate; the Debtors will not engage in business after consummation of the plan; and the debtors would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

## 15.   RETENTION OF JURISDICTION

From and after the Confirmation Date  the Court shall retain jurisdiction for the following purposes:

15.1.   to hear and determine any and all objections to the allowance of claims or actions to equitably subordinate claims or any controversy as to the classification of claims;

15.2.   to hear and determine any and all adversary proceedings, applications, and

litigation matters pending on the effective date or brought after the effective date in respect to Debtors causes of action arising before the Effective Date;

15.3.   to hear and determine claims arising from the rejection of executory contracts or leases;

15.4.   to enable the Trustee to commence and prosecute any and all proceedings which may be brought after the Effective Date relating to claims or causes of action which arose prior to the Effective Date or to recover any transfers, assets, properties, or damages to which the Trustee may be entitled under the applicable provisions of the Bankruptcy Code and the Plan;

15.5.    to enter and implement such orders as may be appropriate if confirmation is for any reason stayed, reversed, revoked, modified or vacated;

15.6.    to modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the confirmation order as may be necessary to carry out the purposes and intent of the Plan; and

15.7.   to enter such order which may be necessary or appropriate in the furtherance of confirmation and implementation of the  Plan.

**16.   MISCELLANEOUS PROVISIONS**

16.1.   **Execution of documents in furtherance of the Plan.**  Upon reasonable notice after Effective Date, the Trustee in behalf of the Debtors will cooperate with each class of claimant treated under the Plan by executing documents necessary to acknowledge or memorialize the terms of this Plan as approved by the final order including but not limited to notes, financing statements, and loan agreements.   Provided however, such agreements shall be in substantial compliance with the terms of the Plan and any expense for preparation of same shall be borne by the party requesting compliance with this Section and to the extent provided by the Plan, each claimant shall provide written evidence of release of its Claim when reasonably requested by the Trustee.

16.2.   **Headings** are utilized in the Plan for convenience of reference only, and shall not constitute a part of the Plan for any other purpose.

16.3.   **Defects, omissions, and amendments not material and adverse.**  Richey may with the approval of the Bankruptcy Court and without notice to all holders of claims or interest, insofar as such changes do not materially and adversely effect holders of claims and interests, correct any defect, omission, or inconsistency in the  Plan in such manner as to such extent as may be necessary or desirable.

16.4.   **Amendments, Material and Adverse.**  Material or adverse amendments may be made to the Plan before or after Confirmation in compliance with the Bankruptcy Code.

16.5. **Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by and construed an enforced in accordance with the laws of the State of Texas.

16.6. **Notices.** All notices, request or demands for payments provided for in the Plan shall be in writing and shall be deemed to be given when personally delivered by hand, or deposited in any general or branch post office of the United States Postal Service, or received by telex or telecopier. Notices, request, and demands for payment shall be addressed and sent postage prepaid or delivered, in the case of notices, request, or demands for payments, to: RICHEY LIQUIDATION REORGANIZATION PLAN, C/O PETER JOHNSON, ATTORNEY, 11 Greenway Plaza, Suite 2820, Houston, Texas 77046. Unless advised in writing, all distributions made by the Debtor will be made to the address of the claimant listed in the Debtor's schedules on file with the Bankruptcy Court unless a proof of claim has been filed with a different address. Any notice of change of address shall be effective only upon receipt by the Trustee.

16.7. **Severability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

16.8. **Third Party Payment Credit.** To the extent that any claim provided for by this Plan receives any credits or payments from third parties during the term of the Plan, such credits or payments shall reduce amount of payments required under the Plan to a Claimant receiving such third party credit or payment. In the event that such a Claimant is entitled to payment under the Plan in more than one classification, such credit or payment shall be first applied to Priority Claim payments, next to Secured Claim payments and the balance, if any, to Unsecured Claim payments due from the Trustee.

16.9. **Income Tax Reporting and Withholding.** In connection with the Plan, the Trustee shall comply with all reporting requirements imposed by federal, tax, local and foreign taxing authorities, and all distributions hereunder shall be subject to any withholding and reporting requirements. Creditors may be required to provide certain tax reporting information as a condition to receipt of distributions pursuant to the Plan.

DATED: January 22, 2015

**LAW OFFICES OF PETER JOHNSON**

*/s/Peter Johnson*

By:_____
PETER JOHNSON
SBT #10778400 FB#2475
Eleven Greenway Plaza, Suite 2820
Houston, Texas 77046
Telephone (713) 961-1200
Telefax (713) 961-0940
pjohnson@pjlaw.com
Attorney for Richey Family Limited Partnership, LTD

**TATE MOERER & KING, LLP**

Richard L. Tate
State Bar No. 19664460
Kristin K. Reis
State Bar No. 24060478
206 South Second Street
Richmond, Texas  77469
Telephone (281) 341-0077
Facsimile (281)  341-1003
Of Counsel For Richey Family Limited Partnership, LTD

1/22/2015 9:06 AM: Peter Johnson ex a plan of liquidation 2.0.docx