UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **MIDTOWN SCOUTS SQUARE** | § | **Case 13-32920 (Docket Here)** |
| **PROPERTY, LP, et. al.** | § | **Case 13-32924** |
| **Debtor** | § | **(Chapter 11)** |
| | § | Jointly Administered |

---

**SUPPLEMENT TO APPROVED DISCLOSURE STATEMENT FILED
BY RICHEY FAMILY LIMITED PARTNERSHIP, LTD. IN SUPPORT OF
LIQUIDATING PLAN OF REORGANIZATION**

---

## TABLE OF CONTENTS

1.INTRODUCTION ...................................................................................................3
    1.1.    Purpose of Chapter 11 .................................................................5
    1.2.    Source of Information in Disclosure Statement ..............................5

2.    BACKGROUND OF THE DEBTOR.....................................................................5
    2.1.    The Formation of the Debtor and Operational History.....................5
    2.2.    The Operational History .................................................................6

3.    ANTICIPATED FUTURE OF DEBTORS............................................................7
    3.1.    Effect of Reorganization .................................................................7

4.    OVERVIEW OF THE PLAN ...............................................................................7
    4.1.    Effect of the Plan on the Debtor .......................................................7
    4.2.    Means for Implementing the Plan ....................................................7
    4.3.    Claims to be Served by Plan.............................................................7
        4.3.1.    Administrative Claims .........................................................7
        4.3.2.    Priority Claims .....................................................................8
        4.3.3.    Claims Of Creditors That Hold Collateral To Secure Repayment Of Their Claims ...............8
        4.3.4.    Unsecured Claim Treatment ................................................8
        4.3.5.    The Equity Partners of the Debtor ......................................8
    4.4.    Modification or Revocation of the Plan ...........................................8

5.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................9

6.    ACCEPTANCE AND CONFIRMATION OF THE PLAN .............................9
    6.1.    Acceptance of the Plan......................................................................9
    6.2.    Impairment of Claims........................................................................9
    6.3.    Best Interest of Creditors..................................................................10
    6.4.    Voting Procedures ............................................................................11
    6.5.    Chapter 7 Liquidation Analysis ......................................................12

6.6.    Feasibility of the Plan .................................................................................12
6.7.    Alternatives to the Plan...............................................................................12
6.8.    Risk to Creditors if Plan is Approved.........................................................12

7.    RICHEY LITIGATION ...............................................................13

8.    GOVERNMENTAL REGULATION .............................................13

9.    SELECTED FINANCIAL DATA...................................................13
9.1.    Method of Accounting Used by Debtor........................................................13

10.    PREFERENCES AND RECOVERABLE TRANSFERS...............14

11.    AFFILIATES OF THE DEBTOR..................................................14

12.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES............15
12.1.    Tax Generally ............................................................................................15
12.2.    Federal Income Tax Consequences to Claimholders ......................................15
12.3.    Information Reporting and Backup Withholding ...........................................15

13.    NO DISCHARGE TO BE GRANTED ...........................................16

**ATTACHMENTS TO SUPPLEMENT:**

**Liquidating Plan of Reorganization** ......................................................................"A"

**Chapter 11 Plan Estimated Distribution** .............................................................."B"

**Debtors' Liquidation Summary from Disclosure Statement** ..............................."C"

**Debtors' Monthly Operating Statement** .............................................................."D"

"

1.      **INTRODUCTION**

Richey Family Limited Partnership, LTD ("Richey")  submits this Supplement to the Debtors Original Disclosure Statement [Docket #148] in Support of the Liquidating Plan of Reorganization ("Plan") filed herewith under Chapter 11 of the United States Bankruptcy Code (the "Supplement") in connection with its solicitation of acceptances of the Plan under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is enclosed herewith and attached as Exhibit "A" for your review.

On May 13, 2014, Debtors Midtown Scouts Square Property, LP, and Midtown Scouts Square, LLC (the "Debtors"), filed their Chapter 11 Joint Plan of Reorganization ("Debtors Plan").   Prior to the filing of petitions, the Debtors had incurred substantial indebtedness, which they have not paid.  The Debtors had attempted to arrange payment to some, but not all, of the creditors to whom they were indebted.  The Debtors filed a petition for relief under chapter 11 of the bankruptcy code as result of this inability to come to terms with all of their creditors.  Since the filing of the Chapter 11 petition the Debtors have continued to manage their own affairs as debtors in possession under the restrictions of the bankruptcy code and of certain court orders.

On September 10, 2014, the United States bankruptcy court extended the Debtors exclusive period to confirm the Debtors Plan to October 31, 2014 at 5 PM.  There have been no other extensions granted.  The Debtors exclusive right to propose and confirm a plan has now terminated.

Richey is a party-in-interest in these Chapter 11 proceedings for the reason that it holds a claim or interest.  Richey objected to the confirmation of the Debtors Plan for the reason, among others, that Lucky Chopra, the purported 100% owner of the equity in the Debtors, was attempting to use the Debtors Plan to benefit himself at the expense of the claims of Richey that were being litigated in a State Court proceeding that the bankruptcy court earlier remanded to the 268th District Court of Fort Bend County, Texas to the extent required for the parties to prosecute such case to final judgment1. [See Docket #61].

On October 28, 2014, the Debtors Plan came on for confirmation and considering the objection to confirmation by Richey and the evidence presented at trial, **on December 12, 2014 the Court denied confirmation of the Debtors Plan. [See Docket Entry #223].**

Because the Debtors no longer have the exclusive right to file a Plan, pursuant to *11 U.S.C. §1121(c)*, Richey  as a party-in-interest is now permitted to propose a Plan. Richey believes that the assets owned by the Debtors have significant value and will pay all claimants in full.  Richey has filed a Liquidating Plan of Reorganization to avoid a fire sale disposition of those assets and under this Plan will replace the Debtors bankruptcy management with a Trustee vested with the power to engage competent brokerage services and methodically market and sell

---

[1] This case includes a claim by related Richey parties that Lucky Chopra accepted $1.4 million dollars in exchange for 27% of the ownership of the Debtors.  Chopra denies that he is required to assign 27% of his ownership to the Richey parties.

the property to pay all creditors.  Of course, Richey believes that after payment of creditors, a surplus will be available to return to the equity holders of the Debtors.

Since the Debtors Disclosure Statement was previously approved by the Court ("Disclosure Statement"), Richey files this Supplement to allow you to make an informed decision regarding your vote on the Richey Plan.

This Supplement is being provided in order to disclose important and necessary information to allow a reasonably informed decision by creditors receiving distribution under the Plan to exercise its rights to vote on the Plan.  The purpose of this summary is to answer questions, which are most often asked by a party receiving a Disclosure Statement.

In addition to reviewing this Supplement, all persons receiving this Supplement are urged to review fully the provisions of the Plan and the Debtors Disclosure Statement previously approved by the Court.  **[FILING OF THIS SUPPLEMENT DOES NOT ASSUME THAT RICHEY AGREES OR SUPPORTS ALL STATEMENTS IN THE DEBTORS DISCLOSURE STATEMENT EARLIER APPROVED BY THE COURT.  FURTHER, BY APPROVING THE PRIOR DEBTORS' DISCLOSURE STATEMENT, THE COURT DID NOT AFFIRM THE VERACITY OF THE INFORMATION CONTAINED THEREIN, ONLY THAT THE INFORMATION WAS SUFFICIENT TO ALLOW FOR A VOTE ON THE PRIOR PLAN THAT WAS DENIED CONFIRMATION].**

This Disclosure Statement is not intended to replace careful review and analysis of the Plan.  Rather, it is submitted as an aid and supplement in your review of the Plan and in an effort to explain the terms and implications of the Plan on file with the Bankruptcy Court.  Every effort has been made to explain fully the various aspects of the Plan as it may affect all creditors and holders of interest.  If you have any questions, you to contact Richey's legal counsel and every effort will be made to assist you.

Creditors should read this Supplement in its entirety prior to voting on the Plan.  No solicitation of votes on the Plan may be made, except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code.  No other party has been authorized to utilize any information concerning the Debtors or their affairs, other than the information contained in this Disclosure Statement, to solicit votes on the Plan.  Creditors and holders of equity interest should not rely on any information relating to the Debtors, other than that contained in this Supplement, the Debtors Disclosure Statement and the exhibits attached hereto.

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE ATTACHMENTS,  NO REPRESENTATIONS CONCERNING THE DEBTOR, THE ASSETS, THE PAST OPERATIONS OF THE DEBTOR, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR RICHEY.**
**EXCEPT AS SPECIFICALLY NOTED, THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS**

**DISCLOSURE STATEMENT. RICHEY IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. THE FACTUAL INFORMATION REGARDING THE DEBTORS, INCLUDING THE ASSETS AND LIABILITIES OF THE DEBTORS, HAS BEEN DERIVED FROM NUMEROUS SOURCES, INCLUDING, BUT NOT LIMITED TO, DEBTORS' SCHEDULES AND DOCUMENTS OBTAINED BY RICHEY IN LITIGATION WITH THE DEBTORS, BANK OF HOUSTON AND LUCKY CHOPRA.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS SUPPLEMENT TO THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTY OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**IF THE REQUISITE VOTE IS ACHIEVED AND THE PLAN IS SUBSEQUENTLY CONFIRMED BY THE BANKRUPTCY COURT, ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN), WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

### 1.1.   Purpose of Chapter 11

Chapter 11 is the principal reorganization Chapter of the Bankruptcy Code. Under Chapter 11, a debtor in possession attempts to reorganize its affairs. The formulation of a plan of reorganization or a plan of liquidation is the principal purpose of a Chapter 11 case. This Plan sets forth the means for satisfying the holders of claims against the Debtor through selling the assets of the Debtor.

Confirmation of a plan is necessary for a Debtor in Chapter 11 to provide the court-approved treatment to its creditors under its plan. In the event of a conflict or difference between the definitions used, and provisions contained in the Disclosure Statement and the Plan, the definitions in the Plan shall control.

Unlike some reorganization plans, this Plan seeks the orderly liquidation of the Debtors' assets in a manner that will reap the highest and best value for all creditors. The proceeds will then be delivered to creditors in accordance with the priorities described in the Plan.

### 1.2.   Source of Information in Disclosure Statement

The information contained in this supplement to the Disclosure Statement was collected from numerous sources, including, but not limited to, debtor's schedules and documents obtained by Richey in litigation with the Debtors, Bank of Houston and Lucky Chopra**.**

### 2.   BACKGROUND OF THE DEBTOR

### 2.1.   The Formation of the Debtor and Operational History

Midtown Scouts is a  limited partnership that owns the mixed use office building located 1911 Bagby Street, Houston, Texas 77002 (the "Office Building") and the eight story parking

garage located at 1910 Bagby Street (the "Parking Garage). The Parking Garage has approximately 9,522 square feet of retail space on the first floor. Midtown GP is the general partner of Midtown Scouts. The properties are located at the East corner of Bagby and Pierce Avenue in Houston. Texas. This location is an area of the city known as Midtown. Midtown is Houston's pedestrian oriented urban community uniquely positioned on the near/southwest side of the Houston central business district.

On or about July 30, 2004, Advanced Diagnostic Management, LLP, an entity associated with Atul Lucky Chopra ("Chopra"), the principal of Debtors, purchased certain real estate located at 1910 and 1911 Bagby in Midtown, Houston, Texas.  The real estate was later transferred to Debtor Midtown Scouts Square Property, LP ("Midtown, LP"). Midtown, LP then built a new structure on 1910  Bagby and remodeled and add to an existing structure at 1911 Bagby Street, Houston, Texas.

To that end, on or about August 2010, Chopra approached the Richeys about investing in what he referred to as the "Scouts Square Project" (the "Project").  Chopra agreed to share ownership with the Richeys who committed to invest $1,400,000.00 in the Project in exchange for transfer from Chopra's 100% ownership, a cumulative total of 27% ownership.   Chopra arranged financing on the Project and then advised Richey that he would not honor the agreement and attempted to return the $1.4 million investment.  As a result of ongoing disputes, construction delays and the insufficient cash flows, Midtown, LP and its general partner filed bankruptcy.

## 2.2.    The Operational History

The Office Building was originally constructed in 1975 and consisted of a two story 25,549 square foot building and renovations of the Office Building to included a third floor containing an additional I0,923 square feet of additional office space.

The ground floor of the Office Building has been renovated as a restaurant space and the second floor is banquet and event center space. Construction was completed on the Office Building in July 2013. A restaurant currently leases and occupies the ground floor and the second floor space. The third floor is be leased and occupied by Advanced Diagnostics Healthcare, an affiliate of the Debtors. The Office Building also has a 9,849 square foot basement that is leased by Advanced Diagnostics Healthcare.

When the Debtors' purchased 1910 Bagby Street it was unimproved land. As part of the purchase, the Debtors obtained financing from Bank of Houston for the construction of the Parking Garage. The Parking Garage was completed in 2012. The Parking Garage has 238 total spaces. The retail space at the location is leased to and occupied by *Blackfinn American Grill[2]*. There is very little parking in the immediate area to serve the local restaurants and businesses and the garage is favorably located. The Parking  Garage  generates approximately $22,000 a month in revenues from parking charges. Market rate in the area for parking is approximately $6.00 per  day  per  spot. Valet service has potential of adding additional revenues to the Parking Garage.

---

[2]   On information and belief, this restaurant has closed, but continues to pay rent.

The Debtors' day to day operations are currently under the supervision of Erich Mundinger with Bridge Capital Corporation.  Chopra is the Managing  Member  of Midtown GP and prior to the bankruptcy filing appointed Mr. Mundinger as the President of Midtown GP. Mr. Mundinger has served as what the Debtors describe as the Chief Restructuring Officer during the pendency of the bankruptcy case.  Mr. Mundinger will be replaced by the Trustee under the proposed Plan.

## 3.    ANTICIPATED FUTURE OF DEBTORS

### 3.1.    Effect of Reorganization

When implemented, the Plan provides for the sale of the Office Building and Parking Garage by an appointed trustee over a period not to exceed eighteen months and payment of all claims.  After completion of the sale and distribution to creditors, the Trustee will wind down the partnership and it will cease to exist.

## 4.    OVERVIEW OF THE PLAN

### 4.1.    Effect of the Plan on the Debtor

The Plan provides for the sale of all assets and 100%  payment of allowed claims within 18 months from the Effective Date of the Plan.  A copy of the proposed Plan is enclosed with this Disclosure Statement. The provisions of that Plan will control over and conflict with the following summary.  Please see the Plan, a copy of which is attached as Exhibit "A' to this Supplement.  The terms of the Plan prevail over any conflict with the following.

### 4.2.    Means for Implementing the Plan

The Plan provides for appointment of a Trustee and the marketing of the Office Building and Parking Garage in a controlled manner to reap the highest and best value for the creditors.

### 4.3.    Claims to be Served by Plan

Richey  believes that the following are claims that are to be served by the Plan:

| CREDITORS | AMOUNT |
|---|---|
| PROPERTY TAX CLAIMS | $474,203 |
| SECURED LENDER CLAIMS | $11,731,232 |
| UNSECURED CLAIMS | $2,244,462 |
| INSIDER UNSECURED CLAIMS | $1,192,669 |
| TOTAL CLAIMS | $15,642,566 |

#### 4.3.1.    Administrative Claims

Obligations incurred by the Debtor during its reorganization process and prior to the confirmation of the Plan will be paid in full and in cash from available operating revenues and then from the Sale of the Office Building and Parking Garage.  These types of claims are not classified for reorganization.

The Debtors shall be required to continue to pay quarterly administrative fees to the office of the United States Trustee until a final decree is entered in the case.  These fees do not require court approval, but are required to be paid by applicable law, which sets the rate.

### 4.3.2.  Priority Claims

On the date of the entry of an order for relief in the case under Chapter 11, taxes were due to the various state and local taxing authorities that are granted priority under the provisions of 11 U.S.C. §507 of the bankruptcy code.  At the Closing of the sale of the Debtors' Property, the Trustee shall pay each holder of an Allowed Claim for tax on the Property in cash including interest at the rate established by applicable non-bankruptcy law for the payment of such claims.

### 4.3.3.  Claims Of Creditors That Hold Collateral To Secure Repayment Of Their Claims

The Trustee will pay all secured claims from the sale of the Office Building and Parking Garage and the accruing interest on each loan will be paid from the operation of the Office Building and Parking Garage until they are sold.

### 4.3.4.  Unsecured Claim Treatment

The unsecured claims will be paid their claims in full, without interest, from the sale of the Office Building and Parking Garage.  Provided, all insider unsecured claims will only be paid after all other claims are satisfied.

### 4.3.5.  The Equity Partners of the Debtor

Under the Plan, the Equity holders will paid the Net Proceeds after payment of all Claims and assessments pursuant to this Plan and other Orders of the Court in an amount equal to their proportional Partnership Interest and then the Debtor partnership shall be terminated.

### 4.4.  Modification or Revocation of the Plan

Richey may, with the consent of the Court and in accordance with the Bankruptcy Code, amend or modify the Plan prior to the date on which the Bankruptcy Court enters the order confirming the Plan (the "Confirmation Date").  Richey may seek to amend or modify the Plan as a result of substantive or technical objections to the Plan filed by holders of claims, as a result of any other matter that may affect the Richey's  ability to obtain confirmation of the Plan, or if for any other reason, such amendment or modification is determined by Richey to be in best interest of the Debtors' estate and creditors.

The potential impact of any such amendment or modification on the holders of claims cannot currently be foreseen, but may include a change in the economic impact of the Plan on some or all of the Classes or a change in the relative rights of such Classes.

If such amendments or modifications are adverse, the Plan, as amended, may be resubmitted and any Class of claims that is adversely affected thereby may be given the opportunity to withdraw any votes for the Plan prior to such modification or amendment.  After the Confirmation Date, inconsistencies in the Plan or in the order of the Bankruptcy Court may be necessary to carry out the purposes and intent of the Plan, so long as the holders of claims are not adversely affected and the Bankruptcy Court approves such correction or reconciliation.

**5.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The bankruptcy law allows the Debtor to assume or reject any pending lease agreements or executory contracts that exist on the date of the order for relief.  The Plan provides that  the Trustee will enforce existing leases and have the exclusive right to determine whether to reject or assume such leases.

**6.      ACCEPTANCE AND CONFIRMATION OF THE PLAN**

**6.1.    Acceptance of the Plan**

Confirmation of a Plan under Chapter 11 requires, among other things, that at least one class of creditors or claimants who are not insiders, vote in favor of the Plan.   This vote is calculated by  counting only those creditors who actually send in a ballot on time.  If two thirds in total dollar amount and a majority in number of claims actually voting in a class approve the Plan, that class of creditors is considered an accepting class. Richey believes that the unsecured creditors will support the Plan when they consider the fact that the assets available to pay their claims consist of asset liquidation that will likely be entirely lost in the event the controlled liquidation under the Plan is unsuccessful.   The failure of confirmation could result in the loss of the the Office Building and Parking Garage to the benefit of the Secured Lender without payment of any dividend to unsecured creditors or equity.

The proponent of a Plan also must meet all other applicable requirements of Section 1129(a) of the Bankruptcy code (except Section 1129(a)(8), if the proponent proposes to seek confirmation of a Plan under Section 1129(b) of the Bankruptcy Code).   These other requirements include, among other things, that the Plan comply with the applicable provisions of Title 11 and other applicable law, that the Plan be proposed in good faith, and that at least one impaired class of creditors vote to accept the Plan.  Richey believes that the Plan satisfies all other applicable requirements of Section 1129(a) of the Bankruptcy Code.  Provided, in the event that a class votes to reject the Plan under 1129(a)(8), Richey believes that the Plan is fair and equitable to all classes and will seek confirmation by cram down.

**6.2.    Impairment of Claims**

A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interest of that class are modified under a plan.  Modification for purposes of determining impairment however, does not include curing defaults and reinstating maturity or cash payment in full.  Classes of claims or interests that are not "impaired" under a plan are conclusively presumed to have accepted the plan and are thus not entitled to vote.  Classes of claims or interests receiving no distribution under a plan are conclusively presumed to have rejected the plan and thus are not entitled to vote.  Acceptances of the Plan are being solicited only from those persons who hold claims in an impaired class entitled to receive a distribution under the Plan.

Under Section 1124 of the Bankruptcy Code, a class of claims or interests is impaired under a plan, **unless**, with respect to each claim or interest of such class, the plan:

    1.      Leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

2.      Notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of its claim or interest after the occurrence of a default:

(a)      Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankrupt Code;

(b)      Reinstates the maturity of such claim or interest, as it existed before the default;

(c)      Compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(d)      Does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or interest; or

3.      Provides that, on the Effective Date the holder of such claim or interest receives, on account of such claim or interest, cash, equal to:

(a)      With respect to a claim, the allowed amount of such claim; or

(b)      With respect to an interest, if applicable, the greater of:

(1)      Any applicable fixed liquidation preference; or

(2)      Any fixed preference at which the Debtor, under the terms of the security, may redeem the security.

All Classes of claims are impaired under the Plan for the reason that they only get paid when the Office Building and Parking Garage are sold.  In the event there are questions regarding whether a person is in an impaired class, the person should assume that his or her claim is impaired and vote.  If the claim is determined to be impaired, the vote will be considered by the Bankruptcy Court.

**IMPAIRED   CREDITORS   ANTICIPATED   TO   RECEIVE   A DISTRIBUTION UNDER THE PLAN ARE BEING SOLICITED TO VOTE.  IF YOU HOLD AN ADMINISTRATIVE CLAIM or UNIMPAIRED CLAIM, THE DEBTOR IS NOT SEEKING YOUR VOTE.**

### 6.3.      Best Interest of Creditors

Even if all classes of claims accept the Plan, the Bankruptcy Court may, nonetheless, still find the Plan unconfirmable.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" test and be feasible.  The "best interests" test generally requires the value of the consideration to be distributed to the holders of claims or interests under the Plan to not be less than those parties would receive if the Debtor were liquidated in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code.  Under the "feasibility" requirement, the Bankruptcy Court must find there is a reasonable probability that the Debtor will be able to meet the obligations created under the Plan, without the need for further financial reorganization.

**THE DEBTOR BELIEVES THAT THE "BEST INTERESTS" TEST AND THE   FEASIBILITY   REQUIREMENTS   OF   SECTION   1129   OF   THE**

BANKRUPTCY CODE CAN BE SATISFIED AT THE CONFIRMATION
HEARING.  SEE "SUMMARY OF THE PLAN."

### 6.4.    Voting Procedures

Any creditor of the Debtor whose claim is **IMPAIRED** under the Plan is entitled to vote,
if either (1) the claim has been scheduled by the Debtor and such claim is not scheduled as
disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim on or before the
last date set by the Bankruptcy Court for such filings, *provided, however*, any claim as to which
an objection has been filed (and such objection is still pending) is not entitled to vote, unless the
Bankruptcy Court temporarily allows the creditor to vote upon motion by such claimant.  Any
such motion must be heard and determined by the Bankruptcy Court prior to the date established
by the Bankruptcy Court to confirm the Plan.  In addition, a creditor's vote may be disregarded if
the Bankruptcy Court determines that the creditor's acceptance or rejection was not solicited or
procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Holders of impaired claims who are entitled to vote and fail to do so will not be counted
as either accepting or rejecting the Plan.  Nevertheless, if the requisite vote is achieved for your
class of impaired claims, you will be bound by the terms of the Plan.

A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure
Statement and mailed to creditors entitled to vote.  A creditor must (1) carefully review the ballot
and the instructions thereon, (2) execute the ballot, and (3) return it to the address indicated
thereon by the deadline to enable the ballot to be considered for voting proposes.

**THE DEADLINE FOR RETURNING YOUR BALLOT IS  STATED
ON THE ENCLOSED BALLOT
(THE "VOTING DEADLINE")**

After completion of the ballot, creditors should return the executed ballot in the self-
addressed envelope to:

**MIDTOWN SCOUTS LIQUIDATING PLAN
C/O PETER JOHNSON, ESQUIRE
P.O.  BOX 980877
HOUSTON, TX  77098-0877**

**VOTING  INFORMATION  AND  INSTRUCTION  FOR  COMPLETING  THE
BALLOT:**

1.    **FOR YOUR VOTE TO BE COUNTED YOU MUST COMPLETE THE
BALLOT, INDICATE ACCEPTANCE OR REJECTION OF THE PLAN
IN THE BOXES INDICATED ON THE BALLOT AND SIGN AND
RETURN THE BALLOT TO THE ADDRESS SET FORTH ON THE PRE-
ADDRESSED ENVELOPE.  IF A BALLOT IS RECEIVED AFTER THE
VOTING DEADLINE, IT WILL NOT BE COUNTED.**

2.    If you hold claims in more than one class under the Plan, you may receive more
than one ballot.  Each ballot you receive votes only your claims for that class.
Please complete and return each ballot you receive.  You must vote all of your
claims within a singe class under the Plan to either accept or reject the Plan.

Accordingly, a ballot (or multiple ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan will not be counted.

3.    The ballot is for voting purposes only and does not constitute and shall not be deemed a proof of claim or interest or an assertion of a claim.

## 6.5.    Chapter 7 Liquidation Analysis

Richey intends to use the Plan to facilitate the sale of the Office Building and Parking Garage to pay all Creditors in full.  As a result of the foregoing, if the Debtors' liquidated there assets in Chapter 7, unsecured creditors may not be paid in full.  In fact, the Debtors' Disclosure Statement previously approved by the Court, provides that a dividend is unlikely under Chapter 7.  (See attached Exhibit "C").  However, Richey believes that a controlled liquidation with a Trustee that is provided sufficient discretion in marketing the Debtors' assets, will reap a greater dividend and deliver funds to the Creditors significantly quicker than the statutorily controlled Chapter 7 forced liquidation.  Attached as Exhibit "B" is the proponent's Chapter 11 Plan Estimated Distribution.  Only the exposure of the Office Building and Parking Garage to the market will determine the true value of the properties.  However, the proponents have provided parameters that reflect known representations of the Debtors, their bankers and independent appraisals.  The Debtors' prior disclosure statement stated $14.5 million as fair market value ("FMV") of the properties and suggested a 15% discount if forced into liquidation in Chapter 7. However, prior appraisals and sworn testimony of a secured creditor bank reveal that the FMV ranges from $17.5 million up to a value that exceeds $21.0 million.  Any sale over $15.5 million will pay all non-insider claims in full.

## 6.6.    Feasibility of the Plan

The Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, the Bankruptcy Court must determine that consummation of the Plan is not likely to be followed by further liquidation or the need for further financial reorganization of the Debtors.  Richey believes that the Trustee will be able to fulfill the obligations under the Plan and liquidate in an orderly fashion.

## 6.7.    Alternatives to the Plan

Alternatives to confirmation of the Plan include the submission of an alternative plan of reorganization by any party in interest or the conversion of the case and the liquidation of the properties under Chapter 7 of the Bankruptcy Code, as described above (See Chapter 7 Liquidation Analysis). In that event, if the Trustee cannot provide the needed adequate protection, it is unlikely that a dividend would be available to unsecured creditors.

## 6.8.    Risk to Creditors if Plan is Approved

There is no risk to the Creditors if the Plan is approved and consummated by the sale of the Properties for the reason that Creditors will receive the value of the Debtors assets in the order of their priority for payment.

## 7.    RICHEY LITIGATION

At the time of the filing of the case, a lawsuit was pending styled: *Richey Family Limited Partnership, LTD et al vs. Midtown Scouts Square Property, L.P.; Midtown Scouts Square Property, LLC; Atul Lucky Chopra and Bank of Houston, Cause 2011-32275, 268th District Court of Fort Bend County, Texas* (the "State Court Lawsuit").   On or about May 24, 2013 Debtors filed a Notice of Removal [Doc. No. 1 in Adversary No. 13-03108] of the State Court Lawsuit.

On or about May 30, 2013, the Richeys filed a Motion to Remand and Request for Modification of the Automatic Stay [Doc. No. 2 in Adversary Proceeding 13-03108].  Both Debtors and Bank of Houston filed objections to such motion on June 20, 2013 [Doc. Nos. 6 and 7 in Adversary Proceeding 13-03108].

On June 24, 2013, Debtors filed a Motion to Estimate [Doc. No. 50] ("Estimation"), although on Richey Family Partnership, LTD has filed a claim in the bankruptcfy cases.

Hearing was had on the Richeys' Motion to Remand and Request for Modification of the Automatic Stay on June 25, 2013.  This Court denied that motion.  The Richeys filed a Motion for Reconsideration of that denial on July 16, 2013 [Doc. No. 28 in Adversary Proceeding 13-03108].   The Richeys also filed a Motion to Withdraw Reference relating to the adversary proceeding on July 15, 2013 [Doc. No. 26 in Adversary Proceeding 13-03108].

After trial on the Estimation, the Court entered its order on April 21, 2014 allowing the claim of Richey in the amount of $1,400,000 and finding that the Debtors failed to prove entitlement to any offset.  [Docket #142] ("Estimation Order").

In the same Estimation Order, the Court denied the Debtors attempt to estimate the equity claims of the Richey Family Limited Partnership, Ltd., LE Richey and Todd Richey.

On May 13, 2014 the Debtors filed the Joint Chapter 11 Plan of Reorganization.  [Docket #147].

On May 30, 2014 the Court entered its order remanding the Adversary Proceeding to the 268th District Court of Fort Bend County, Texas to the extent required for the parties to prosecute such case to final judgment. [Docket #61].  The Debtors are no longer parties to such State Court Litigation.

As a result of the objection of Richey to the Debtors Joint Chapter 11 Plan of Reorganization, the confirmation of that plan was denied  and the State Court Litigation continues against non-debtor defendants.

## 8.    GOVERNMENTAL REGULATION

There are no extraordinary government regulations that control the operation of the Debtors that is known to Richey.

## 9.    SELECTED FINANCIAL DATA

### 9.1.    Method of Accounting Used by Debtor

According to the Debtors, they have utilized the accrual method of accounting in the preparation of its financial reports and accounting since their inception.  Attached as Exhibit "D" is a copy of the most recent Monthly Operating Report filed with the Court which supports the Trustee's ability to operate the Properties until sale under the Plan.

## 10.    PREFERENCES AND RECOVERABLE TRANSFERS

The provisions of §§544, 545, 546, 547 & 548 of the Bankruptcy Code provide for the recovery of property that was transferred to both existing creditors and other parties during the time period prior to bankruptcy filing ("Transfers").  The purpose of these provisions are to assure each creditor that they will be treated fairly and equal to creditors that have similar claims. For example, it would be unfair to allow a creditor to be paid on an overdue debt just prior to filing of the case when other creditors do not get paid.  The law presumes that a transfer is recoverable if it was made within 90 days prior to bankruptcy filing and the transfer was for the payment of an antecedent or stale debt.

In their original Disclosure Statement, the Debtors state that they believe there are certain transfers voidable under Section 550,  547, 548, 544, or similar provision of the Bankruptcy Code.  Specifically, prior to bankruptcy, the Debtors state that they made certain payments to their lenders.

It is unlikely that such actions will be retained, since all secured creditors will be paid in full under the Plan.  However, if the Plan is not confirmed and a liquidating trustee or Chapter 7 trustee is appointed, it is possible that the trustee's analysis will differ and that other avoidance actions will be commenced against other Creditors of the estate or insiders.

## 11.    AFFILIATES OF THE DEBTOR

The bankruptcy law defines an affiliate of a Debtor to be (1) a party that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the Debtor or (2) a corporation, 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the Debtor, or by a party that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the Debtor.

The Debtors Disclosure Statement reveals the following affiliates:

Landmark Houston Hospitality Group ("Landmark"). Landmark owns and operates Mr. Peeples Steak + Seafood. Landmark currently leases the first and second floors of the Office Building.  Landmark is owned by Lucky Chopra.

Advanced Diagnostics Management, LLP, Chopra Imaging Centers, Chopra Imaging Center, X-Ray X-Press Corporation, Lucky Chopra MD, P.A., and Chopra & Associates are owned (either directly or indirectly by Lucky Chopra), and are guarantors on some or all of the secured bank debt.

Advanced Diagnostics Management, LLP, Chopra Imaging Centers, Chopra Imaging Center, X-Ray X-Press Corporation and Landmark are/will be the Operating Company under the Amended and Restated Master Lease Agreement for the Office Building pursuant to the requirements of the SBA 504 Loan. Pursuant to the Amended and Restated Master Lease Agreement, the Operating Company may sublease up to 49% of the net rentable area of the Office Building.

## 12.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES

### 12.1.    Tax Generally

The tax consequence to any particular creditor may vary depending on their own circumstances and they should consult with their own tax professional for advice regarding the impact on them of their acceptance or rejection of the Plan.  No rulings have been requested from the IRS and no legal opinions have been requested from counsel with respect to any tax consequences of the Plan.

### 12.2.    Federal Income Tax Consequences to Claimholders

Generally, a claimholder holding a Claim that is a debt and that is not evidenced by a debt instrument is entitled to a bad debt deduction under Section 166 of the Tax Code when the debt becomes worthless as a consequence of bankruptcy.  If the Claimholder is a corporation or the debt is not a non-business bad debt, the claimholder is entitled to an ordinary loss deduction and can also take a deduction for the partial worthlessness of the debt.  If the claimholder is not a corporation and the debt is a non-business bad debt, the claimholder is entitled to a short-term capital loss, which can be deducted only in the year the debt becomes wholly worthless. A claimholder is entitled to a loss only to the extent of the claimholder's basis in the debt. Thus, a trade debt held by a cash basis claimholder generally does not give rise to a bad debt deduction because the claimholder has no basis in the debt before payment. On the other hand, an accrual basis trade claimholder is entitled to a bad debt deduction where the amount of the debt previously has been taken into income.

In the case of certain categories of Claims, consideration should be given to the possible availability of a bad debt deduction under Sections 165 and 166 of the Tax Code for a period prior to the Effective Date.  In addition, because a loss will be allowed as a deduction only for the taxable year in which the loss was sustained, a Claimholder that claims a loss in the wrong taxable year risks denial of such loss altogether.  Under certain circumstances, a claimholder may recognize ordinary income to the extent that such holder is deemed on the Effective Date to have received consideration for such Claim that represents a recovery of a prior bad debt or loss deduction, regardless of whether gain or loss would have otherwise been realized or recognized by such holder on consummation of the Plan.  Claimholders who have taken a bad debt or loss deduction with respect to their claims should consult their own tax advisors as to the effect of such deduction in light of their particular circumstances.

In the case of Secured Claims, if mortgaged or pledged property is sold, whether to the creditor or another purchaser, for less than the amount of the Secured Claim, and the unsatisfied portion of the Secured Claim is not recovered, the holder of the Secured Claim may be able to deduct such unrecovered portion under Section 166(a) of the Tax Code as a bad debt, to the extent of the adjusted tax basis of such portion.

### 12.3.    Information Reporting and Backup Withholding

Under the Tax Code's backup withholding rules, a Claimholder may be subject to backup withholding at a rate of twenty-eight percent (28%) with respect to distributions or payments made pursuant to the Plan unless that holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer

identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax.  Claimholders may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

### 13.    NO DISCHARGE TO BE GRANTED

It is anticipated that all claims will be paid and satisfied under the Plan.  However, the proposed Plan is a liquidating plan and *11 U.S.C.§(d)(3)(a)* provides that a discharge shall not be granted to a Debtor under Chapter 11 if the plan provides for the liquidation of all or substantially all of the property of the estate; the debtor does not engage in business after consummation of the plan; and the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.  Each of the foregoing conditions apply to this Case.

**THE FOREGOING IS INTENDED ONLY AS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX ASPECTS OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE UNIQUE CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST.**

**DUE TO THE COMPLEX NATURE OF APPLICABLE TAX LAWS, CLAIMANTS SHOULD CONSULT WITH THEIR TAX PROFESSIONAL CONCERNING COMPLIANCE WITH AND THE AFFECT OF BOTH STATE AND FEDERAL TAX LAWS ON THEIR INTEREST BEFORE THEY CAST A BALLOT TO ACCEPT OR REJECT THE PLAN.**

**THE ACCOUNTANTS, ATTORNEYS, AND THE MANAGEMENT OF THE PLAN PROPONENT MAKE NO REPRESENTATIONS HEREIN CONCERNING THE IMPACT OF THE TAX LAW ON ANY INDIVIDUAL TREATED UNDER THE PLAN.**

Dated:  January 22, 2015.

**LAW OFFICE OF PETER JOHNSON**

*/s/ Peter Johnson*

By: _____

Peter Johnson
State Bar No. 10778400
Eleven Greenway Plaza, Suite 2820
Houston, Texas  77046
pjohnson@pjlaw.com
Telephone (713) 961-1200
Facsimile (713)  961-0941
Attorney for Richey Family Limited Partnership, LTD

**TATE MOERER & KING, LLP**

Richard L. Tate
State Bar No. 19664460
Kristin K. Reis
State Bar No. 24060478
206 South Second Street
Richmond, Texas  77469
Telephone (281) 341-0077
Facsimile (281)  341-1003
Of Counsel For Richey Family Limited Partnership, LTD

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Supplement to Disclosure Statement was served the parties required by Bankry Rule 3017(a) and Local Bankruptcy Rule in this case, either by mailing a copy of the same to all parties entitled to notice on the attached service listing  by regular U.S. mail postage prepaid or by electronic notice pursuant to the Local Bankruptcy Rules on January 22, 2015.

*/s/ Peter Johnson*

_____
PETER JOHNSON

## *SERVICE LIST PURSUANT TO LOCAL RULE 3017*

\*indicates electronic service-LBR 1001(b)- (Admin Proc CMF/ECF- III-E)

T. Josh Judd on behalf of Defendant Midtown Scouts Square, LLC and Midtown Scouts Square Property, LP
judd@hooverslovacek.com, bankruptcy1@hooverslovacek.com,mayle@hooverslovacek.com
Edward L Rothberg on behalf of Defendant Midtown Scouts Square, LLC
rothberg@hooverslovacek.com, mayle@hooverslovacek.com,welborn@hooverslovacek.com;hsllpbankruptcy@gmail.com


**ALL OTHER PARTIES REQUESTING NOTICE:**

Ellen Maresh Hickman on behalf of U.S. Trustee US Trustee
ellen.hickman@usdoj.gov
Jennine Hovell-Cox on behalf of Creditor AmeriPower, LLC
hovellcoxlaw@hotmail.com, hovellcox@aol.com
Yolanda M Humphrey on behalf of Creditor Midtown Management District
houbank@pbfcm.com, tpope@pbfcm.com
Carl O Sandin on behalf of Creditor Midtown Management District
csandin@pbfcm.com, tpope@pbfcm.com
Owen Mark Sonik on behalf of Creditor Midtown Management District
osonik@pbfcm.com, tpope@pbfcm.com
US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV
Lisa M Hedrick on behalf of Defendant Bank Of Houston
lisa.hedrick@arlaw.com, vicki.owens@arlaw.com;craig.wilcox@arlaw.com
D. John Neese, Jr. on behalf of Defendant Midtown Scouts Square, LLC, Defendant Atul Lucky Chopra, M.D and Midtown Scouts Square Property, LP
jneese@hmgllp.com

1/22/15:SuppleDiscl 1 .docx